**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Telephone: (323) 840-1200
Facsimile: (323) 840-1300

Attorneys for Defendants Ye f/k/a KANYE OMARI WEST; GETTING OUT OUR DREAMS, INC.; GETTING OUT OUR DREAMS II, LLC; YEEZY LLC; YEEZY SUPPLY LLC; and OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTIST REVENUE ADVOCATES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>KANYE OMARI WEST a/k/a "YE," *et al.* | Case No.: 2:24-cv-06018 MWC (BFMx)<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S REQUEST FOR RECOUPMENT OF FEES**<br><br>Action Filed: July 17, 2024 |

## RESPONSE TO PLAINTIFF'S REQUEST FOR FEES

Defendants Ye f/k/a Kanye Omari West; Getting Out Our Dreams, Inc.; Getting Out Our Dreams II, LLC; Yeezy LLC; Yeezy Supply LLC; And Ox Paha Inc. f/k/a Mascotte Holdings, Inc. ("Defendants"), by and through the undersigned counsel of record, respectfully submit this response in opposition to Plaintiff's request for $67,612.50 in attorney's fees following the Court's May 19, 2025 Order on Plaintiff's motion to compel (ECF No. 93).

### I.   INTRODUCTION

Discovery sanctions of over $67,000 for a single motion to compel is unheard of. Especially on an initial motion to compel, early on in the case, when drafting counsel themselves have repeatedly conceded that the issues are "straightforward."

Defendants acknowledge the Court's authority to impose sanctions under Rule 37 and take seriously the concerns expressed in the Court's May 19, 2025 Order. Since that ruling, Defendants have continued their investigation in good faith, leading to the beginning of a rolling document production. (*See* Declaration of Eduardo Martorell (hereinafter "Martorell Decl.") at ¶ 2, Ex A.)

However, while sanctions may be warranted in some form, the amount Plaintiff seeks—over $67,000 for a single discovery motion—is excessive and unsupported. For the reasons that follow, Defendants respectfully request that the Court exercise its discretion to substantially reduce the fees awarded.

### II.   PLAINTIFF FAILS TO SHOW THAT ITS RATES ARE REASONABLE

Once a party establishes its entitlement to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983). Courts generally apply the lodestar method to determine the reasonableness of requested attorneys' fees. *Minh Le v. H & S Invs. Grp., LLC*, 2023 WL 4290366, at *2 (C.D. Cal. May 9, 2023)

The fee applicant bears the burden of demonstrating that the hourly rate is consistent with the prevailing market rate "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Minh Le v. H & S Invs. Grp., LLC*, No. EDCV 21-16 JGB (SPX), 2023 WL 4290366, at *2 (C.D. Cal. May 9, 2023); *see also Rolex Watch USA Inc. v. Zeotec Diamonds Inc*., 2021 WL 4786889, at *2 (C.D. Cal. Aug. 24, 2021) (noting that "[t]he reasonable hourly rate is the rate prevailing in the community for similar work," and that "[t]he relevant community is the community in which the court sits".) Further, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiff has not met its burden of establishing that the hourly rates it seeks are reasonable for this District. First, counsel does not even provide the most basic of information for all attorneys. Counsel does not include the years of graduation for any attorneys, nor the law school they graduated from. They do not include what year they were admitted to the State Bar of California and in the case of one attorney (Mr. Warshavsky), do not even provide information regarding his law license, leaving it for Defendants and this Court to seek reference to his *pro hac vice* application to determine he is licensed in New York. (*See* ECF No. 6.) None of the attorneys even clarify if their alleged years of experience relate to civil commercial litigation in private practice or other areas of law.

Additionally, rather than submit affidavits from local practitioners or reference comparable cases in this Court, Plaintiff relies on the findings from the Major Lindsey & Africa 2024 *Partner Compensation Survey*, which reflects self-reported national billing trends across Am Law 200 firms. (*See* Berle Decl. at ¶ 5; *see also* Tomasulo Decl. at ¶ 6.) That report does not constitute evidence of prevailing rates in the Central District of California for a motion on initial discovery requests. Courts have rejected

hourly rates justified solely by national surveys of top law firms where those rates are self-reported, not tied to actual billing data, and fail to reflect firm size, geographic location, or the true market value of services rendered; more reliable indicators include actual billing records and firm-specific factors such as size and practice area. *See Hicks v. Toys "R" Us-Delaware, Inc.,* 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) (finding the National Law Journal survey overstated reasonable rates and relying instead on the Real Rate Report, which accounted for "location, experience, firm size, areas of expertise, and industry as well as the specific practice areas").

Notably, Plaintiff also offers no justification at all for the 25.9 hours billed by senior associate Alexis Cruz at a staggering rate of $1,000 per hour—the lone associate who singlehandedly billed nearly as much time as all three partners combined. (*See* Berle Decl. at ¶¶ 3-4.) Without any evidence tying her rate to prevailing local norms or showing that the work she performed required *senior* associate experience, the Court cannot assess whether the rates sought are reasonable.

Because Plaintiff has failed to produce satisfactory evidence that the requested hourly rates—especially those for attorney Cruz—reflect the prevailing market rates in this District, and because the rates themselves are grounded in a generic national survey, the Court should not accept the rates as presented. A significant downward adjustment is warranted to reflect reasonable rates supported by reliable, district-specific evidence.

### III. THE MOTION WAS EXCESSIVELY STAFFED WITH PARTNERS

Courts regularly consider whether tasks were appropriately delegated to lower-billing personnel and whether the staffing of a matter was excessive or duplicative. *See Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015) ("Such lopsidedly partner-heavy bills are quite unusual in the context of litigation work*"); Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1021 (9th Cir. 2022) (finding partner billing for simple tasks was unnecessary and warranted fee reduction).

1  Directly pertinent here, "[i]t is common, particularly with respect to discovery and
2  other pretrial tasks, that associates shoulder much of the work, under the active
3  supervision of partners, and that partners take lead roles as to projects for which their
4  expertise adds value." *See Beastie Boys,* 112 F. Supp. 3d at 31, 51.

5  Plaintiff seeks fees for 59.5 total hours for four attorneys across two different
6  law firms to work on a single motion to compel.  This work includes a disproportionate
7  33.6 of those hours billed by *three* different partners across two firms: Joelle Berle
8  (16.3 hours), Oren Warshavsky (4.0), and Michael Tomasulo (13.3).  (*See* Berle Decl.
9  at ¶¶ 3-4; *see also* Tomasulo Decl. at ¶ 8.)  25.9 hours were billed by senior associate
10 Alexis Cruz.  (*See* Berle Decl. at ¶ 4.)  Zero hours were billed by junior or even mid-
11 level associates.

12 The result is an inverted staffing model that deviates from the norm in discovery
13 practice, where associates traditionally shoulder the majority of briefing work,
14 supervised by one or two partners for oversight or strategy.  Especially here, wherein
15 both firms tout their high echelon pedigrees, it seems law firms of their caliber would
16 have very capable junior associates ready to take on the predominant load of filing a
17 <u>single</u> motion to compel.

18 The over-reliance on partners here appears unnecessary, particularly given that
19 Plaintiff routinely staffed multiple partners on this matter—even for tasks like meet-
20 and-confer sessions, which, while apparently not billed here, reflect broader
21 inefficiencies in how the motion was handled, especially when contrasted with
22 Defendants' consistent staffing of only one partner and at most a single associate at
23 any given time. (*See* Martorell Decl. at ¶ 4.).  In other words, this was not David versus
24 Goliath but overstaffing by choice.  Indeed, the Court witnessed firsthand when
25 Plaintiff had <u>four attorneys</u> attend the most recent Informal Discovery Conference
26 against a single attorney on the other side.

27 The Court should not permit the fee award to subsidize inefficient internal
28 staffing choices or extracurricular participation by Plaintiff's attorneys in unrelated

matters. For example, Mr. Tomasulo attended proceedings in state court unrelated to this matter (*See* Martorell Decl. at ¶ 3), while Ms. Berle's (a Partner) entries reflect work better suited for support staff, such as 18 minutes spent confirming whether a shared file had been downloaded. (*See* Berle Decl. at ¶ 9, 04/01/25 billing entry.)

Given the partner-heavy nature of this billing and the routine discovery issues presented, Plaintiff's fee request should be significantly reduced to reflect a reasonable distribution of work and to avoid rewarding inefficient staffing.

## IV. THE DISCOVERY DISPUTE WAS NOT NOVEL OR COMPLEX

In evaluating a reasonable lodestar, the Court considers the novelty and complexity of the legal issues involved. *Machowski v. Jacmar Partners III*, 2021 WL 2980223, at *1 (C.D. Cal. May 27, 2021).

This was a routine motion to compel responses to a single set of Requests for Production—early-stage discovery involving standard objections. Nothing about the issues justified the involvement of three separate partners. Yet Plaintiff's counsel collectively staffed the matter with a senior partner (Warshavsky), a partner (Berle), and a second partner from a different firm (Tomasulo), in addition to a senior associate (Cruz).

Plaintiff's own communications confirm that these discovery issues were not novel or complex. In recent correspondence concerning Defendants' responses to interrogatories and RFAs—responses involving many of the same objections at issue in the motion to compel RFPs—Plaintiff's counsel repeatedly described the disputes as "straightforward" and insisted they warranted only "simple written response[s]":

- "We would also appreciate a written response to our emails as they are straightforward." (May 22, 2025)
- "The conference is not a substitute for the simple written response that the emails call for." (May 23, 2025)
- "Please understand that we do need a straightforward written response to our emails and will look forward to receiving it." (May 26, 2025)

(*See* Martorell Decl. at ¶ 5, Ex. B.)

Plaintiff also asserted—both in correspondence to Defendants and in an email to the Court—that the May 19, 2025 Order resolving the RFP motion should directly inform the parties' handling of Plaintiff's interrogatories and RFAs. (*See* Martorell Decl. ¶ 6, Ex. C.) By urging that the Court's ruling on RFPs applies wholesale to other discovery devices, Plaintiff signaled its own view that these objections involve overlapping, routine issues. Having described the issues as straightforward in communications, Plaintiff cannot now contend that the issues were so complex that they warranted the involvement of three partners, four attorneys, and two law firms to litigate them, with every attorney billing at $1,000, or more. Discovery sanctions should not entitle a party to a billing bonanza.

## V. THE BILLING RECORDS REVEAL DUPLICATIVE EFFORTS ACROSS MULTIPLE ATTORNEYS

Plaintiff's records show excessive duplication of effort, with multiple attorneys billing significant time for overlapping contributions to the same product—namely, the motion and reply brief. Three partners and a senior associate contributed to both the moving papers and reply brief as follows:

- For the motion, Alexis Cruz billed approximately 22 hours between March 31 and April 8, while Michael Tomasulo separately billed 6.2 hours on April 2 for drafting the same motion. (*See* Berle Decl. at ¶ 9; *see also* Tomasulo Decl. at ¶ 9.)
- For the reply, Cruz billed an additional 3.2 hours, Berle billed 5.3 hours over two days, Tomasulo billed 7.1 hours, and Warshavsky added another 2.7 hours—totaling more than 18 hours across four attorneys. (*See Ibid.*)

This layered staffing structure is disproportionate to the task and reflects inefficiencies that are not chargeable to Defendants. It is not reasonable for four senior professionals to contribute materially to both briefs, especially when the work product does not reflect any complexity or novelty to justify such coordination.

The Court should apply a substantial reduction to the claimed fees to account for this unnecessary duplication. These overlapping time entries reflect excessive internal review and revision cycles rather than efficient division of labor.

## VI. BILLING IRREGULARITIES AND NON-COMPENSABLE TASKS FURTHER UNDERMINE THE FEE REQUEST

Numerous entries by Plaintiff's counsel either reflect unclear billing or include tasks that should not be compensated at all. Importantly, clerical work is not compensable. *Bellflower Unified Sch. Dist. v. Arnold*, 586 F. Supp. 3d 1010, 1018 (C.D. Cal. 2022) ("Examples of clerical, non-substantive tasks billed include time entries for organizing and rearranging exhibits.") Mr. Tomasulo's April 20, 2025, entry, for example, bills 4.2 hours for eight distinct activities ranging from "analyzing Defendants' opposition" to "circulat[ing] draft to client." (*See* Tomasulo Decl. at ¶ 9, 4/20/25 billing entry.) Without a breakdown, there is no way to assess how long any one of those tasks took or whether they warranted senior partner involvement.

Additionally, partner Joelle Berle bills time for clerical and ministerial tasks more suited to support staff or junior associates. Her 0.3-hour entry on April 1 for "confirmation of West Defendants' download of music file" is classic non-compensable clerical work. (*See* Berle Decl. at ¶ 9, 04/01/25 billing entry.) More so, her April 8 entry combines substantive work with "preparation of exhibits" and "finalize and prepare the same for filing," activities that a legal assistant or paralegal typically performs. Yet Berle bills all of it at an eye-popping partner rate of $1,130 per hour. (*See* Berle Decl. at ¶ 9, 04/09/25 billing entry.)

These billing practices fail to meet the standard of reasonableness required to justify recovery, especially at the highest billing rates. Accordingly, this deficiency warrants a further downward adjustment of the total fees sought.

## VII. TYPICAL SANCTIONS AWARDS IN LOS ANGELES COURTS ARE MUCH LOWER THAN REQUESTED BY PLAINTIFF HERE AND THE EQUITIES FAVOR A LOWER SANCTIONS AWARD

In lead Defendants' counsel's nearly 20 years of complex commercial litigation experience, he cannot recall having seen a discovery sanction exceed $10,000. (*See* Martorell Decl. at ¶ 7.) The overwhelming majority of discovery sanctions issued by courts in the Los Angeles are issued under $5,000. (*Id.*)

Moreover, as noted within the concurrently filed Declaration of Milo Yiannopoulos (ECF 99), Defendants have been working hard to obtain information – to a large degree it is something that simply does not exist or is very difficult to track down given the various contractors and artists involved, combined with a very unconventional creation process. Nevertheless, it is coming, as Defendants' counsel always represented he believed it would given the clues being found after dozens of hours of searches.

Given both the typical sanctions issued by Los Angeles courts, the good faith efforts being made, and consideration of the overall equities[1], Defendants respectfully request a more typical sanctions aware between $5,000 and $10,000.

## VIII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exercise its discretion to significantly reduce the fees sought by Plaintiff to $5,000 to $10,000.

Dated: June 13, 2025                **MARTORELL LAW APC**

By: */s/* Eduardo Martorell
Eduardo Martorell
*Attorneys for Defendants* Ye f/k/a KANYE OMARI WEST; GETTING OUT OUR DREAMS, INC.; GETTING OUT OUR DREAMS II, LLC; YEEZY LLC; YEEZY SUPPLY LLC; and OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC.

---

[1] As the Court noted in its order, payment of sanctions should be adjusted "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." (ECF No. 93 at 14.)