Oren J. Warshavsky (Admitted *Pro Hac Vice*)
owarshavsky@bakerlaw.com
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.847.2849
Facsimile:  212.589.4201

Joelle A. Berle (SBN 252532)
jberle@bakerlaw.com
Alexis B. Cruz (SBN 312842)
acruz@bakerlaw.com
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars
Suite 2700
Los Angeles, California 90067-4301
Telephone:  310.820.8800
Facsimile:  310.820.8859

Michael A. Tomasulo (SBN 179389)
mike@orbitip.com
David A. Randall (SBN 156722)
dave@orbitip.com
**ORBIT IP LLP**
11400 W. Olympic Boulevard
Suite 200
Los Angeles, California 90064
Telephone:  310.887.1333
Facsimile:  310.887.1334

*Attorneys for Plaintiff*
ARTIST REVENUE ADVOCATES, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTIST REVENUE ADVOCATES, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>KANYE OMARI WEST a/k/a "YE," et al.,<br><br>    Defendants. | Case No.: 2:24-CV-06018-MWC-BFM<br><br>**DISCOVERY MATTER**<br><br>**REDACTED NOTICE OF PLAINTIFF'S *EX PARTE* APPLICTION AND *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE RE: SANCTIONS PURSUANT TO FRCP 37**<br><br>*[Concurrently filed with Declarations of Joelle A. Berle and Darla Crain; and [Proposed] Order]*<br><br>Magistrate: Hon. Brianna Fuller Mircheff<br><br>Fact Discovery Cutoff:  October 17, 2025<br><br>Pretrial Conf.:        April 3, 2026<br>Trial:                 April 20, 2026 |

Baker & Hostetler LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, AND ALL PARTIES AND THEIR
ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 26, 37, and Local
Rule 7-19.1, Plaintiff Artist Revenue Advocates, LLC ("Plaintiff") applies *ex parte*
for an order to show cause as to why the Court should not enter the terminating,
evidentiary, issue, and other sanctions detailed below without any further opportunity
for Defendants Kanye Omari West a/k/a "Ye", Getting Out Our Dreams, Inc., Getting
Out Our Dreams II, LLC, Yeezy LLC, Yeezy Supply LLC, and Ox Paha Inc.
(collectively, "West Defendants") to cure by producing documents or information.

1.     **Liability-Related Sanctions:**

a)     An order under Fed. R. Civ. P. 37(b)(2)(A) striking the West
Defendants' Affirmative Defenses and entering default on the issue of copyright
infringement, finding that the West Defendants engaged in copyright infringement
because the works *Hurricane* and *Moon* infringe Plaintiff's copyrighted musical
work (the "Work"); or,

b)     An order under Fed. R. Civ. P. 37(b)(2)(A) designating the following
facts be taken as established for purposes of the action:

i)     the West Defendants had access to the Work;

ii)     the West Defendants copied the Work in connection with creating
and exploiting *Hurricane* and *Moon*;

iii)     substantial similarity exists between the Work on the one hand
and *Hurricane* and *Moon* on the other hand;

iv)     the specific elements of the Work that appear in *Hurricane* and
*Moon* constitute original, protectable expression not available in the prior art;

v)     Plaintiff's copyright to the Work is valid; and

vi)     no facts exist to support the West Defendants' affirmative
defenses of: Laches (Affirmative Defense ("AD") 1); Consent, Waiver,
Acquiescence, and Estoppel (AD 2); Unclean Hands (AD 3); Statute of Limitations

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(AD 4); License (AD 5); Copyright Misuse (AD 6); De Minimis Use/Fair Use (AD 7); Mistake/Fraud (AD 8); First Sale Doctrine (AD 9); Abandonment (AD 10); Scenes a Faire (AD 11); and Merger Doctrine (AD 12).

**2.    Evidentiary Sanctions:**

a)    An order under Fed. R. Civ. P. 37(b)(2)(A) and 37(c)(1) prohibiting the West Defendants from introducing any document, testimony, argument, or analysis—including expert opinions—that either: (i) was responsive to Plaintiff's First Set of Requests for Production (RFP Nos. 1-40, 42-65); or (ii) was required to be disclosed under Fed. R. Civ. P. 26(a)(1)(A)(ii) as "documents...that the disclosing party may use to support its claims or defenses," unless such materials were produced on or before June 12, 2025; and

b)    An order under Fed. R. Civ. P. 37(b)(2)(A) and 37(c)(1) prohibiting the West Defendants from offering evidence or argument that: (i) the West Defendants did not knowingly and intentionally direct, request, approve, and/or ratify the crediting of DJ Khalil, Dan Seeff, Sam Barsh and Josh Mease (the "Artists") as writers—and DJ Khalil as producer—of the tracks *Hurricane* and *Moon*, for all uses, including at Spotify, Apple Music, ASCAP and BMI; (ii) the Artists' credited contributions to *Hurricane* and *Moon* are unoriginal, de minimis, not substantially similar to the Work, constitute common musical elements, or are available in the prior art; or (iii) the West Defendants held any express or implied license, authorization, or permission from Plaintiffs to use the Work in "Hurricane" or "Moon."

**3.    Damages-Related Sanctions:**

a)    An order under Fed. R. Civ. P. 37(b)(2)(A), prohibiting the West Defendants from providing evidence or argument:

i)    contradicting Plaintiff's damages calculations of gross profits, under 17 U.S.C. § 504(b);

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ii)     concerning any deductions or financial apportionment, under 17 U.S.C. § 504(b); and

iii)     challenging industry accepted calculations and third-party data used to demonstrate the West Defendants' profits from infringement.

**4.     No Privilege**:  An order ruling that, with respect to the subject matter for which Plaintiff sought discovery in connection with RFPs 1 through 40 and 42 through 65, the West Defendants' claims of privilege and all objections based on privilege are stricken for failure to produce a privilege log and the West Defendants' June 13, 2025 assertion that they would not be producing a privilege log.

**5.     Spoliation-Related Sanctions**: In light of Milo Yiannopoulos's sworn statement that it "is usual for the entire contents of work email accounts to be purged on a regular basis," (ECF 99, ¶ 17), the West Defendants must show cause why that ongoing purging after their duty to preserve arose does not constitute (a) spoliation of electronically stored information under Fed. R. Civ. P. 37(e) and/or (b) a violation of this Court's May 19, 2025 Order, and why the Court should not impose the most severe sanctions authorized by Rule 37(e)(2) and Rule 37(b)(2), including striking their answers and entering default judgment. Any response shall be supported by one or more sworn declarations from a knowledgeable affiant that, *at a minimum*:

a)     Includes as an exhibit the preservation letter sent by counsel;

b)     Details the steps taken to comply with such preservation letter;

c)     Identifies each individual to whom such preservation letter was sent and the steps taken to ensure compliance;

d)     Identifies all digital media, including desktop and laptop computers, servers, tablets, telephones, and other digital devices subject to the retention letter;

e)     Describes the purging practice—its frequency, method, and start date—and state whether it was suspended or modified at any point during the last five years;

f)     Includes as an exhibit all logs of the "usual purging" testified to by Yiannopoulos and company policy memorandums or documents regarding the same;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

g)  Details all steps taken to preserve, restore, or replace the deleted e-mails, including the status and scope of any backups;

h)  Details all steps not yet taken to preserve, restore, or replace the deleted e-mails, including the status and scope of any backups, including a description of all media that such steps are planned, including the name of a vendor and vendor estimates of costs and time; and

i)  Identifies the custodians, the media, and the time periods affected and explain why the lost ESI cannot be produced from alternative sources.

This application is necessitated by the conduct of the West Defendants and through no fault of Plaintiff, as explained in this Application. Counsel for all appearing parties have been notified of this *ex parte* application pursuant to Local Civil Rule 7-19. *See* Berle Decl., ¶ 19. Plaintiff's *ex parte* application is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Joelle A. Berle and Declaration of Darla Crain, and all other documents, records, and pleadings on file, and any evidence or oral argument presented at the time of hearing on this matter.

Dated: June 20, 2025

**BAKER & HOSTETLER**

By:  */s/ Oren J. Warshavsky*
 Oren J. Warshavsky
 Joelle A. Berle
 Alexis Cruz

and

**ORBIT IP LLP**

Michael A. Tomasulo
David A. Randall

*Attorneys for Plaintiff*
ARTIST REVENUE ADVOCATES, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S *EX PARTE* APPLICATION FOR OSC RE: RULE 37 SANCTIONS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   BRIEF DESCRIPTION OF ACTION ............................................... 3

III.  PROCEDURAL HISTORY ............................................................... 4

IV.   YIANNOPOULOUS'S DECLARATION CONFIRMS NON-
      COMPLIANCE WITH THE ORDER ............................................... 7

      A.    The Search Was Intentionally Limited ................................. 8

      B.    The West Defendants Were Aware of Potential Litigation at All
            Material Times ...................................................................... 9

      C.    The Search Was Deficient, and the West Defendants Intentionally
            Spoliated Evidence ............................................................. 10

V.    THE WEST DEFENDANTS FAILED TO PRODUCE DATA UNDER
      THEIR CONTROL ......................................................................... 12

VI.   TERMINATING AND ISSUE/EVIDENTIARY SANCTIONS ARE
      WARRANTED ................................................................................ 14

      A.    Terminating Sanctions Are Appropriate for Willful or Bad Faith
            Discovery Violations ........................................................... 14

      B.    Terminating Sanctions Are Justified ................................... 16

            1.    The West Defendants Willfully Violated the Order ...... 16

            2.    Plaintiff Has Suffered Concrete Prejudice ................. 17

            3.    Lesser Sanctions Are Inadequate ............................. 18

      C.    Targeted, Non-Terminating Sanctions Are Appropriate Here and
            Tailored to the Misconduct ................................................. 18

VIII. *EX PARTE* RELIEF IS NECESSARY ........................................... 22

      A.    Irreparable Prejudice Looms ............................................... 22

      B.    The Timing Crisis Is Wholly of the West Defendants' Making ........ 22

      C.    Ordinary Motion Practice Would Reward Further Obstruction ......... 23

IX.   CONCLUSION ............................................................................... 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S *EX PARTE* APPLICATION FOR OSC RE: RULE 37 SANCTIONS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. Farber & Partners, Inc. v. Garber*,
  234 F.R.D. 186 (C.D. Cal. 2006) ............................................................. 9, 12, 13

*Adriana Int'l Corp. v. Thoeren*,
  913 F.2d 1406 (9th Cir. 1990) ...................................................................... 15

*Anheuser-Busch, Incorporated v. Natural Beverage Distributors*,
  69 F.3d 337 (9th Cir. 1995) ........................................................................... 17

*Apple Inc. v. Samsung Elecs. Co.*,
  881 F. Supp. 2d 1132 (N.D. Cal. 2012) ........................................................ 11

*Chambers v. NASCO*,
  501 U.S. 32 (1991) ......................................................................................... 16

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) ........................................................... 15, 17, 18

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
  513 F. Supp. 3d 839 (N.D. Ill. 2021) ............................................................ 12

*Henry v. Gill Indus., Inc.*,
  983 F.2d 943 (9th Cir. 1993) ................................................................... 15, 16

*Hoffman v. Constr. Protective Servs., Inc.*,
  541 F.3d 1175 (9th Cir. 2008) ...................................................................... 18

*Horne v. Wells Fargo Bank, N.A.*,
  969 F. Supp. 2d 1203 (C.D. Cal. 2013) ........................................................ 22

*In re Napster, Inc. Copyright Litig.*,
  46 F. Supp. 2d 1060 (N.D. Cal. 2006) .......................................................... 20

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ....................................................................................... 16

*Malone v. U.S. Postal Serv.*,
  833 F.2d 128 (9th Cir. 1987) ................................................................... 15, 18

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995) ............................................................... 22

*N. Am. Watch Corp. v. Princess Ermine Jewels*,
  786 F.2d 1447 (9th Cir. 1986) ...................................................................... 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

PLAINTIFF'S *EX PARTE* APPLICATION FOR OSC RE: RULE 37 SANCTIONS

*Payne v. Exxon Corp.*,
    121 F.3d 503 (9th Cir. 1997)................................................................................................ 15

*R & R Sails, Inc. v. Ins. Co. of Pa.*,
    673 F.3d 1240 (9th Cir. 2012).............................................................................................. 18

*Ramos v. Swatzell*,
    2017 WL 2857523 (C.D. Cal. June 5, 2017) ...................................................................... 11

*Smith v. Smith*,
    145 F.3d 335 (5th Cir. 1998)................................................................................................ 15

*Valley Eng'rs Inc. v. Electric Eng. Co.*,
    158 F.3d 1051 (9th Cir. 1998).............................................................................. 15, 16, 18

*Watkins, et al. v. West*,
    U.S. District Court, W.D. Tenn., Case No. 2:24-cv-2880-JPM-tmp ...................................... 3

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001).............................................................................................. 18

**Rules**

Fed. R. Civ. P. 26(f) ............................................................................................................ 11

Fed. R. Civ. P. 34 ............................................................................................................ 9, 12

Fed. R. Civ. P. 37(b)(2)................................................................ 3, 10, 14, 15, 18, 21

Fed. R. Civ. P. 37(c)(1) ...................................................................................................... 18

Fed. R. Civ. P. 37(e)............................................................................................ 3, 10, 21

**Other Authorities**

*Milo Yiannopoulos*, Wikipedia, https://en.wikipedia.org/wiki/Milo_Yiannopoulos
    (last visited Jun. 19, 2025) .................................................................................................... 1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S *EX PARTE* APPLICATION FOR OSC RE: RULE 37 SANCTIONS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff applies *ex parte* for an Order to show cause why the Court should not issue (i) terminating and issue/evidentiary sanctions for the West Defendants' failure to produce documents and comply with this Court's May 19, 2025 Order (ECF 93) ("Order"), and/or (ii) further sanction the West Defendants' willful spoliation of evidence. The West Defendants' flagrant violation of the Order caps months of disdain for the Court's authority while tacitly admitting to destroying smoking-gun evidence proving willful infringement.

For almost six months, the West Defendants failed to provide a single document or substantively respond to an Interrogatory. Despite numerous attempts by Plaintiff to resolve issues—both before and after informal discovery conferences ("IDC(s)") with this Court—the West Defendants were not forthcoming. That came to a head when this Court issued the Order, requiring that, by June 12, 2025, the West Defendants (i) produce all responsive documents in their possession and (ii) submit a declaration "detailing the specific steps taken to search for responsive documents."

The West Defendants brazenly defied the Order. On June 13, 2025, one day past ordered deadline, the West Defendants produced a single 63-page PDF, without metadata, and a June 13, 2025 declaration of Milo Yiannopoulos, a British political commentator with no apparent legal or discovery training.[1] To explain the absence of documents, Yiannopoulos testifies that instead of imposing a litigation hold, "work email accounts" are "purged on a regular basis"—a clear admission of spoliation. Yiannopoulos's testimony vividly illustrates the West Defendants spoliating on an astonishing scale, destroying nearly every document they encounter, and continuing to do so unabated even after this action commenced. Indeed, Yiannopoulos's testimony paints the picture of related companies doing billions in business while

---

[1] *Milo Yiannopoulos*, Wikipedia, https://en.wikipedia.org/wiki/Milo_Yiannopoulos (last visited Jun. 19, 2025).

somehow maintaining no documents or records in either hard copy or digital form, contrary to the West Defendants' initial disclosures. While Plaintiff doesn't doubt Yiannopoulos's veracity, any recanting would only muddle issues further. Discovery closes in four months and Plaintiff has now been forced to piece together a record from third parties and publicly available evidence, as it has no confidence in the integrity of the West Defendants' production.

An example is instructive. As the Court will recall, Plaintiff claims that the musical recordings *Hurricane* and *Moon* are infringements of the Work. The Artists that created the Work are credited as writers and producers on both *Hurricane* and *Moon*. This credit constitutes an admission that artistically significant portions of the Artists' Work were incorporated into these recordings (without permission)— precisely what Plaintiff must prove to establish infringement. While the West Defendants have repeatedly claimed they possess no documents concerning the Artists—and Yiannopoulos testifies that these credits are a "mystery" to the West Defendants—another party has shown that both the "mystery" and lack of documentation were manufactured for this litigation. As detailed below, the West Defendants settled a lawsuit with UMG Recordings in 2021, and a material term was that West include *Hurricane* on the album *Donda*. A document produced by UMG also shows that it was the West Defendants' counsel that provided the Artists' names and credits to UMG. Yiannopoulos testifies that the West Defendants treat music as a "loss leader" for broader ventures but the West Defendants failed to produce evidence of those ventures, including a contemporaneous billion-dollar deal with The Gap.

Documents concerning this case and the West Defendants' related businesses plainly were within the West Defendants' control and were destroyed (or concealed if Yiannopoulos is being less than candid). The West Defendants' destruction of that data, and the accompanying "mystery" they created, is inexcusable and is a clear attempt to evade liability.

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

PLAINTIFF'S *EX PARTE* APPLICATION FOR OSC RE: RULE 37 SANCTIONS

The West Defendants' defiance of the Court's Order extends to virtually every RFP. They withheld: streaming and royalty data available through their own dashboards; contracts and revenue information from merchandise partners (including The Gap, Balenciaga, and Adidas); and documents concerning other infringement claims, despite being compelled to produce "prior copyright suits and settlements," and at least thirteen such actions and numerous non-litigated disputes.[2] There can be no doubt that such responsive documents are or should be in the West Defendants' possession. Just as telling, as the Order notes, the West Defendants' December 11, 2024, initial disclosures list eight categories of "documents, electronically stored information, and tangible things in Defendants' possession," meaning they knew the type of documents that should be preserved and produced. Now, Yiannopoulos testifies these documents do not exist; and of course, none were produced.

With fact discovery closing this October and expert reports due immediately thereafter, Plaintiff has already been put through the work of trying to obtain documents from third parties. Delay in resolution of these matters and the granting of issue/evidentiary sanctions will prejudice Plaintiff's efforts to build its case and reward the West Defendants' obstruction. The time for incremental remedies has passed, and Plaintiff requests that the Court enter an order entering default judgment, establishing facts, or, in the alternative, precluding the West Defendants from offering evidence challenging facts on the issues of copyright infringement and damages. Plaintiff also requests the Court enter an order to show cause why the West Defendants should not be sanctioned under Rules 37(e)(2) and 37(b)(2) for spoliation. The ongoing purges, coupled with the paltry production, points to willful destruction of responsive documents and data.

## II.    **BRIEF DESCRIPTION OF ACTION**

A description of this action helps contextualize the issues. The Complaint

---

[2] Another court recently entered discovery sanctions in an infringement suit against West where he is represented by the same counsel. *Watkins*, *et al. v. West*, U.S. District Court, W.D. Tenn., Case No. 2:24-cv-2880-JPM-tmp.

PLAINTIFF'S *EX PARTE* APPLICATION FOR OSC RE: RULE 37 SANCTIONS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

alleges four well known musicians, the Artists, wrote and recorded a musical composition (the Work). ECF 1, ¶ 8. Plaintiff alleges the Work was used in the recordings *Hurricane* and *Moon* on the album *Donda*. *See*, *e.g.*, *id*. ¶ 4. The West Defendants sought permission to use the Work, and that permission was denied. *Id.* ¶ 56. Nonetheless, the Artists were credited by the West Defendants as songwriters and producers on *Hurricane* and *Moon;* indeed, they were awarded a Grammy for *Hurricane. Id.* ¶¶ 53-55, 85.

### III.  <u>PROCEDURAL HISTORY</u>

Though much of the procedural history is in the Order (ECF 93), the broader procedural history here is important to demonstrate how the West Defendants have treated these proceedings.

After the Complaint was filed on July 17, 2024, the West Defendants and their various counsel refused to accept service, and after being served—and despite various discussions among counsel—the West Defendants were originally in default. ECF 28-33, 43. Plaintiff joined the West Defendants to set aside their default. ECF 48.

On December 11, 2024, the West Defendants served initial disclosures indicating that each—including West—had evidence concerning Plaintiff's claims and their defenses. *See* ECF 80-1 ("MTC Decl."), Ex. 11 at 2-10. The West Defendants explicitly represented possessing documents relating to (1) the "creation" of *Hurricane* and *Moon*[3]; (2) their "release, promotion, and/or exploitation;" (3) their "performance or distribution;" (4) "notice or lack of notice of [Plaintiff's] underlying work;" (5) "notice or lack of notice of the alleged rights in [Plaintiff's] underlying work;" (6) "the alleged use or licensing of [Plaintiff's] underlying musical work;" (7) "revenues/profits generated by" *Hurricane* and *Moon*; and (8) "clearances obtained" and the "underlying work." *Id.* at 10-11. The West Defendants and their counsel

---

[3] The Initial Disclosures use the term "Subject Tracks" to refer to *Hurricane* and *Moon*.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   represented—under Rule 26(a)(1)(A)(ii)—that these documents and ESI were in
2   their possession, custody, or control. The West Defendants' initial disclosures have
3   not been amended or supplemented.  Berle Decl. ¶ 2.

4       Plaintiff served RFPs on November 27, 2024. MTC Decl. ¶ 2, Ex. 1. After
5   requesting and receiving four extensions, the West Defendants served objection-only
6   responses on February 3, 2025. *Id.* ¶¶ 3-4, 6, 8-9. The West Defendants produced no
7   documents—not even those identified in their initial disclosures. *Id.* ¶ 9. Rather, as
8   this Court is aware, in response to each request, the West Defendants indicated that
9   because they believed there was no infringement, no documents would be relevant to
10  Plaintiff's claim. *Id.*, Ex. 5. They also invoked privilege and contended that the
11  breadth of the requests was disproportionate and "unduly burdensome." *Id.*

12      Following Plaintiff's correspondence, to which the West Defendants did not
13  substantively respond, the Court held an IDC on March 5, 2025. *Id.* ¶¶ 10-15. The
14  Court advised the West Defendants that many of their objections were not well taken;
15  nevertheless, the West Defendants refused to withdraw them. *Id.* ¶ 16. Plaintiff filed
16  its motion to compel on April 14, 2025. ECF 80. The Court's Order granted the
17  motion and rejected the West Defendants' claim that "no responsive documents"
18  exist. The Court found that "Defendants' own actions make clear that responsive
19  documents exist," noting their own initial disclosures admitted the existence of
20  responsive documents, that they necessarily reviewed materials responsive to RFP 1
21  and promised a rolling production—all proof that documents existed. ECF 93 at 4-5.
22  The Order concluded that:

23      [The West] Defendants are ordered to produce all
        responsive documents in their custody, possession, and
24      control to all RFPs except for RFP 41 **no later than June**
        **12, 2025**. [The West] Defendants are also ordered to
25      provide a declaration detailing the specific steps taken to
        search for responsive documents. To the extent that any
26      document is withheld on privilege grounds, [the West]
27      Defendants are ordered to produce a rule-compliant
        privilege log alongside its production.
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5

*Id.* at 13 (emphasis in original). The West Defendants neither objected to nor sought relief from the Order.

On June 4, 2025, the West Defendants produced four music files—two versions each of *Hurricane* and *Moon*. Berle Decl., ¶ 3. These were produced as MP3 files, without any metadata—not the working files one would expect for album production. *Id.*

On June 5, 2025, the parties were before the Court on a separate IDC. ECF 98. At that time, the West Defendants sought until June 13, 2025 to respond to Interrogatories and Requests for Admission ("RFAs"). Berle Decl., ¶ 4. The June 12, 2025 production date was expressly discussed at the hearing. *Id.* During the June 5 IDC, counsel for the West Defendants repeatedly stated that the West Defendants understood the Order and would produce documents and otherwise comply. *Id.*

After nothing was done by June 12, 2025, Plaintiff's counsel wrote to the West Defendants' counsel demanding compliance.[4] *Id.*, ¶¶ 5-6. On June 13, 2025, the West Defendants filed Yiannopoulos's declaration (ECF 99) and served a 63-page PDF, without metadata. ¶¶ 7-8. Feigning a desire to cooperate, Yiannopoulos testified that he would contact third parties for further production. ECF 99, ¶ 2.

Unfortunately, as detailed below, Yiannopoulos's testimony demonstrates the disdain with which the West Defendants hold their discovery obligations. The West Defendants' Interrogatory and Admission responses only reinforce this conclusion.

Plaintiff served Interrogatories on the West Defendants on November 27, 2024. Berle Decl., ¶ 10. The West Defendants failed to provide a single substantive response. *Id.* As with the RFPs, the West Defendants refused to respond in writing to any deficiencies raised by Plaintiff. *Id.* As they did with the RFPs, the West Defendants refused to substantively meet-and-confer prior to Plaintiff's final attempt. *Id.* Worse, until the June 5, 2025 IDC, the West Defendants refused to be guided by the reasoning of the Order. *Id.* ¶ 11.

---

[4] The West Defendants claimed that they made a scheduling error. ECF 100-1, ¶ 8.

PLAINTIFF'S *EX PARTE* APPLICATION FOR OSC RE: RULE 37 SANCTIONS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

At the June 5 IDC, the West Defendants' counsel once again argued against providing discovery on the grounds that the West Defendants supposedly took steps to avoid infringement after their license request was rejected by the Artists. *Id.* ¶ 12. At the IDC, the West Defendants agreed to serve supplemental Interrogatory responses. ECF 98. Yiannopoulos verified those responses for each West Defendant (including West). Berle Decl., ¶ 13, Ex. A. Each Interrogatory response repeats boilerplate objections and states that the West Defendants "lack[] personal knowledge sufficient to answer the interrogatory." *Id.* Each Interrogatory response parrots some excuses from Yiannopoulos's declaration and ultimately states that the West Defendants lack information. *Id.* Notably, the Interrogatory responses do not include the very non-infringement story told eight days earlier at the June 5 IDC. *Id.*

Yiannopoulos's testimony concerning corporate amnesia stands in contrast to the West Defendants' December 2024 initial disclosures, which identify West and the five West Defendants as persons who may have knowledge on all of the subjects covered by the Interrogatories, including the creation and production of *Hurricane* and *Moon*, songwriter and producer credits, access to the Work, promotional uses, copyright notice, and revenues and profits. MTC Decl., Ex. 11 at 2, 4-6. Yiannopoulos now testifies that he will look for information from third parties, none of whom are identified in the West Defendants' initial disclosures or Interrogatory responses.

## IV. <u>YIANNOPOULOUS'S DECLARATION CONFIRMS NON-COMPLIANCE WITH THE ORDER</u>

The Yiannopoulos declaration establish that the West Defendants did not take the Order—or any discovery—seriously. The Order specified that:

> [G]iven the vagueness of [the West] Defendants' assertion that they conducted a "diligent search," and the erroneous claim not to have responsive documents, the Court orders [the West] Defendants to provide Plaintiff with a declaration detailing the specific actions taken to search for responsive documents for each RFP . . . Failure to provide

7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

a sufficiently detailed declaration may result in the Court taking further action.

Order at 5. The Order concluded:

> [The West] Defendants are ordered to produce all responsive documents in their custody, possession, and control to all RFPs except for RFP 41 **no later than June 12, 2025**. Defendants are also ordered to provide a declaration detailing the specific steps taken to search for responsive documents.

*Id.* at 13. But the West Defendants did not search for documents, and Yiannopoulos's declaration amounts to no more than a lame excuse.

## A.    The Search Was Intentionally Limited

Yiannopoulos testifies that he conducted a search only in connection with Defendant Yeezy, LLC. ECF 99, ¶ 23. Yiannopoulos further testifies that he spoke to a few people but does not identify anyone by name nor does he testify to speaking to anyone affiliated with the West Defendants. *Id.* Yiannopoulos's declaration tacitly admits that he did not even speak to West, let alone search West's electronic devices. *Id.*

Instead of speaking with anyone with knowledge, Yiannopoulos claims he has:

> either spoken directly or spoken to persons who have spoken to various third parties whom I believe may have personal knowledge regarding the subject matter of this lawsuit, including: [i] Charles Misodi Njapa a.k.a. 88-Keys, [ii] Nasir Pemberton a.k.a. Digital Nas, [iii] Sal York, [iv] Jahmal Desmond Gwin a.k.a. BoogzDaBeast, [v] Jeff Gandel, [vi] Mark Williams, and [vii] Raul Cubina.

*Id.* ¶ 18. Njapa, Pemberton, and Gwin all are performers who appeared on *Donda*. Berle Decl., ¶ 14. Williams and Cubina are independent songwriters. *Id.* ¶ 15. York and Gandel are music industry professionals, one a manager and another an attorney in New York. *Id.* ¶ 16. None of these third parties are employed by the West Defendants nor are they identified in the West Defendants' initial disclosures. MTC

Decl., Ex. 11. And Yiannopoulos provides no explanation concerning why he (or the intermediaries vaguely referenced) spoke to these individuals, what was sought, or why they would have documents.

Apparently, the West Defendants decided that their obligation to search for and produce documents could be satisfied by Yiannopoulos having conversations with unaffiliated third parties—all of whom, according to his testimony, proved no insight. The West Defendants either destroyed all of their documents or never took their obligations here seriously. *See* Fed. R. Civ. P. 34; *see also A. Farber & Partners, Inc. v. Garber* ("*Farber*"), 234 F.R.D. 186, 189-90 (C.D. Cal. 2006).

**B.**     **The West Defendants Were Aware of Potential Litigation at All Material Times**

The crediting of the Artists as writers and producers on *Hurricane* and *Moon* are clear admissions of infringement. Yiannopoulos tries to navigate that admission: "how [the Artists] came to be credited as songwriter/producers … is a mystery to everyone at Yeezy." ECF 99 ¶ 25. It should be noted that at the June 5 IDC, Martorell, the West Defendants' counsel, relayed his understanding that because the Work was not cleared, it was "re-recorded" and remained an "inspiration." While counsel's statement may not be an admission, it creates a significant tension with Yiannopoulos's testimony.

There is no "mystery" here. Defendant UMG distributed *Donda*, but only as a result of a litigation with West. In 2019, West sued defendant UMG Recordings in a lawsuit, *West v. UMG Recordings & Bravado*, LASC Case No. 19STCV02733. That lawsuit ended with a June 2021 settlement ("Settlement Agreement"). Berle Decl., ¶ 17, Ex. B. UMG produced the Settlement Agreement in this action. *Id.* Under the Settlement Agreement,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

9

1    █████████████████████████████████████████████████████████████████████ *Id.*

2    UMG produced correspondence showing that ████████████████████

3    ████████████████. *Id.* ¶ 18, Exs. C-D. The West Defendants generated and

4    controlled these documents. If Yiannopoulos's testimony is accurate, then these

5    documents were intentionally destroyed. If Yiannopoulos's testimony is false, then

6    the West Defendants withheld documents in violation of the Order—an effort to

7    conceal a key, potentially dispositive fact at the heart of the infringement claim. But

8    the violation extends much wider than ████████████████████; no lawyer's

9    files, notes, or communications relating to his clearance of *Hurricane*, *Moon*, or any

10    of the songs on *Donda* have been produced or logged on a privilege log. Yet such

11    documents are indisputably within the West Defendants' possession and control.

12    Clearly, from the time of the prior lawsuit, the West Defendants knew of the

13    importance of the Work and the potential infringement claims. That is laid bare by

14    the communications of counsel and the position the West Defendants articulated to

15    the Court. The West Defendants have had eleven months since the Complaint and

16    seven months since the RFPs to produce the documents requested here. Their failure

17    to do so—coupled with Yiannopoulos's testimony concerning lack of retention

18    protocols and regular purges—shows that the West Defendants have either destroyed

19    the key documents or are deliberately suppressing them. This is the paradigm for

20    Rule 37(b)(2) and 37(e)(2) sanctions: a party destroyed or concealed dispositive,

21    court-ordered evidence central to liability, damages, and willfulness. The only

22    adequate remedy is default judgment, deeming facts admitted, or, at minimum,

23    barring the West Defendants from offering any evidence or argument as to issues

24    relating to these discovery abuses.

25    **C.    The Search Was Deficient, and the West Defendants Intentionally**

26    **Spoliated Evidence**

27    The West Defendants' purported search was a sham, demonstrating a willful

28    disregard for discovery obligations and the Order. Once litigation is reasonably

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

anticipated, parties must identify potentially relevant ESI, notify custodians to preserve data, suspend routine deletion or alteration of relevant information and use defensible collection methods. *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) (leading case affirming "obligation to identify, locate, and maintain, information that is relevant"); *Ramos v. Swatzell*, 2017 WL 2857523, *6 (C.D. Cal. June 5, 2017), *report and recommendation adopted*, 2017 WL 2841695 (C.D. Cal. Jun. 30, 2017) (endorsing *Apple Inc.*). Parties also are to agree on search terms, custodians, and production formats. Fed. R. Civ. P. 26(f). A producing party is required to use defensible methods to collect data from relevant sources, maintain metadata and chain of custody, and use tools to filter and deduplicate data. *Apple Inc.*, 881 F. Supp. 2d at 1137.

From the earliest meet-and-confers, Plaintiff asked the West Defendants for a list of proposed custodians and salient media being imaged and queried. *See, e.g.*, MTC Decl., ¶ 10, Ex. 6. At the June 5 IDC, the West Defendants suggested this process was underway. If those documents were not destroyed, Yiannopoulos's declaration shows that the West Defendants did not undertake any reasonable efforts.

Regardless of whether relevant documents were destroyed, Yiannopoulos's declaration is a model of a party rejecting discovery obligations. Yiannopoulos identifies no custodians, media, mobile devices, servers, cloud repository, bookkeeping platform, music data, etc., and describes no search terms or forensic protocols.[5] ECF 99. Instead, Yiannopoulos admits that corporate emails are "purged on a regular basis" and tacitly admits that no litigation hold was issued (or abided), no auto-deletion suspended, and no deleted data recovered, and identifies no IT or e-discovery professionals consulted. ECF 99, ¶ 17.

In short, the declaration confirms that the West Defendants have undertaken none of the measures that a reasonable litigant—or this Court—demands.

---

[5] Yiannopoulos does not indicate which—if any—employees or other custodians were asked to search their own files or devices. *See* ECF 99, ¶ 17.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The Order explained that the West Defendants admitted possessing clearance and creation files and other responsive documents, including those for which a rolling production was promised. ECF 93 at 4-5. The Court deemed their "diligent search" claim "unpersuasive" given these known materials. *Id.* at 4. Yet, Yiannopoulos's declaration fails to account for the categories the Court singled out—such as clearance files, studio grade audio files, or licensing emails—or describe any efforts to locate them. He is similarly silent on the ordered royalty and accounting ledgers. His declaration thus entirely disregards the Court's clear directives, offering no concrete steps taken to find the identified documents.

If Yiannopoulos is testifying truthfully, then the West Defendants have destroyed responsive documents. They have no records pertaining to a Grammy-winning, Billboard No. 1 album, the tours concerning that album, the merchandise they sold, and/or the other business ventures about which Yiannopoulos waxes poetic.

The West Defendants apparently left the search only to Yiannopoulos, who is neither counsel nor an e-discovery professional. Courts have repeatedly held that delegating preservation and collection to untrained custodians, without attorney oversight, leads inexorably to spoliation and sanctions. *See, e.g. DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 934–36 (N.D. Ill. 2021). The decision to delegate search responsibilities to Yiannopoulos violates Rule 26(g) and underscores the West Defendants' approach to discovery.

## V.    <u>THE WEST DEFENDANTS FAILED TO PRODUCE DATA UNDER THEIR CONTROL</u>

Rule 34 "extends to all documents the party has the legal right or practical ability to obtain from employees, agents, affiliates, or third-party custodians." *Farber*, 234 F.R.D. at 189. *Farber* illustrates the point: the defendant produced "approximately 666 pages" in response to nearly 200 requests, which the court found de minimis and "astounding[ly]" deficient because it omitted records held by "several

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

12

telecommunications companies, financial institutions, and governmental entities with which he, his various business enterprises, and his counsel have dealings." *Id.*

That scenario is playing out here: the West Defendants were obligated to procure and produce responsive materials not only from their own files, but also from labels, distributors, business managers, accountants, streaming and ticketing platforms, and any other entities under their control or subject to their direction. The West Defendants withheld documents squarely within their control across nearly every RFP. The West Defendants have at all times had control, and the obligation to produce, the streaming, revenue, credit, and registration data and other industry-specific data. As the Declaration of Darla Crain (Crain Decl. ¶¶ 3-10) confirms:

- **Streaming analytics.** Major streaming services—such as Spotify and Apple Music—maintain password-protected dashboards for authorized users to download daily or monthly consumption and estimated royalties. They also provide regular reports, typically monthly or quarterly.

- **Royalty and revenue statements.** Sony Publishing and UMG—the two labels for *Donda*—each host dedicated portals where managers or accountants can log in and obtain data. Recording artists and songwriters customarily receive quarterly or semi-annual royalty statements, and the underlying detail is provided through portals.

- **Credit and registration data.** BMI, ASCAP, and the Mechanical Licensing Collective offer online portals where writers and publishers can retrieve revenue and registration reports. Regular reports are also provided.

These are among the very materials Plaintiff requested: streaming metrics (RFP Nos. 8-13), royalty and revenue data (RFP Nos. 21-28), and writer-credit documentation (RFP Nos. 31-33). The West Defendants have not produced data from the portals or any of the reports they regularly receive, including reports they would have received during this litigation. Berle Decl. ¶ 9. There are two important take-aways. *First*, the West Defendants have access to and control of this data. *Second*, the West

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13

Defendants "purged" the reports sent to them during this litigation. While Plaintiff has requested this information from third parties, third parties are reluctant to produce party discovery and often cite party control as a basis for obtaining discovery from a more convenient source.

This willful noncompliance extends to every RFP. For instance, the West Defendants were compelled to produce: (i) documents from prior copyright suits and settlements—records that clearly were under their control even if they were since destroyed; (ii) contracts, sales figures, etc., for Yeezy collaborations with UMG/Bravado, The Gap, Balenciaga, Adidas, and others—documents and data that the West Defendants possessed and could easily obtain; and (iii) revenue and other information from the *Donda* listening events—evidence that clearly existed. This information was likely to reside with the West Defendants, their prior attorneys, business partners, accountants, and business managers. Plaintiff has already and/or is now subpoenaing those individuals and/or entities whose identity is known. The West Defendants should be precluded from challenging any such documents produced or inferences based thereon.

## VI.    TERMINATING AND ISSUE/EVIDENTIARY SANCTIONS ARE WARRANTED

### A.    Terminating Sanctions Are Appropriate for Willful or Bad Faith Discovery Violations

Rule 37(b)(2)(A) provides courts with broad authority to impose sanctions when a party fails to comply with a discovery order, including entering default judgment, establishing facts and precluding evidence and argument. Fed. R. Civ. P. 37(b)(2)(A). "Belated compliance with discovery orders does not preclude the imposition of sanctions." *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986). Available remedies range from evidentiary and issue-preclusion to the ultimate penalty of striking pleadings and entering default.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

For willful or bad faith violations, the Court has discretion to dismiss the entire action or any part thereof. Fed. R. Civ. P. 37(b)(2)(A)(v). Even a single willful or bad faith violation may suffice depending on the circumstances. *Valley Eng'rs Inc. v. Electric Eng. Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) (affirming dismissal due to dishonest concealment of critical evidence). Demonstrating "willfulness" or "bad faith" only requires "disobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993). And in making this determination, the Court may rely on its understanding of the parties' motivations. It is therefore proper to consider a party's dilatory and obstructive conduct in a related case. *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998).

In addition to a finding of willfulness or bad faith, the Ninth Circuit requires the district court to balance five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) (court may "properly consider all of a party's discovery misconduct … including conduct which has been the subject of earlier sanctions"); *Valley Eng'rs Inc.*, 158 F.3d at 1057 (warning not required where pattern of deception and discovery abuse imperils fair trial); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

Where discovery abuses "make it impossible for a court to be confident that the parties will ever have access to the true facts," striking pleadings or entering default is appropriate. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096-97 (9th Cir. 2007). Even where there is no willfulness or bad faith, courts possess inherent authority to impose sanctions beyond those enumerated in

Rule 37. *Chambers v. NASCO*, 501 U.S. 32, 44 (1991). Sanctions should be proportionate to the misconduct and designed to deter future violations. *Id.*; *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

**B.    Terminating Sanctions Are Justified**

Terminating sanctions are appropriate because the West Defendants' conduct was willful and the five-factor test is easily satisfied.

1.    The West Defendants Willfully Violated the Order

This Court ordered the West Defendants to produce 64 categories of core documents by June 12, 2025. They responded with a 63-page PDF, no privilege log, and a declaration celebrating their lack of formality and resulting ignorance. A discovery abuse is willful when based on "disobedient conduct not shown to be outside the control of the litigant." *Henry*, 983 F.2d at 948. The West Defendants produced no streaming or revenue data from platforms like Spotify, Apple, and YouTube—data that was readily accessible. They produced no documents concerning fourteen copyright lawsuits filed since 2018, several of which settled as recently as 2024. They produced no documents from their own 2023 lawsuit against The Gap that settled in April 2025. Companies with full custody of their own clearance and revenue files cannot claim external impediment; their default is therefore per se willful.

That conclusion is reinforced by deliberate concealment of "smoking-gun" evidence. Yiannopoulos testifies that the West Defendants have no knowledge concerning the Artists credit as writers and producers of *Hurricane*. ECF 99 ¶¶ 22, 25. Yet UMG has produced evidence showing that this was done by the West Defendants. Berle Decl., ¶ 17, Ex. B. Withholding documents that "could well be dispositive" and thereby "makes it impossible … to be confident that the parties will ever have access to the true facts" is exactly the conduct the Ninth Circuit deemed willful in *Valley Engineers Incorporated*, 158 F.3d at 1057-58 (affirming default

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

where party denied existence of key letter later produced by third party), and in *Anheuser-Busch, Incorporated v. Natural Beverage Distributors*, 69 F.3d 337, 348-49 (9th Cir. 1995) (dismissal warranted where executives gave false testimony and hid sales records).

Yiannopoulos's testimony reveals routine e-mail "purges" that continued after suit was filed. Destroying electronically stored information once the duty to preserve has attached is "bad faith"—independently satisfying the willfulness requirement. *Leon*, 464 F.3d at 959-61. The destruction strikes at the heart of liability and damages because the missing messages concern clearance negotiations and revenue allocations.

Finally, four extensions, two IDCs, and fee-shifting have left Defendants unmoved. When lesser sanctions fail, "continued defiance itself" establishes willfulness. *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096-97. A pattern of deception and repeated flouting of court orders, indistinguishable from that condemned in *Anheuser-Busch, Incorporated*, 69 F.3d at 353, confirms that no lesser remedy can secure compliance. The record thus satisfies—indeed surpasses—the willfulness threshold for the full range of Rule 37 sanctions requested.

### 2.   Plaintiff Has Suffered Concrete Prejudice

Prejudice exists where the misconduct "threatens to interfere with the rightful decision of the case." *Id.* at 353. Here, the West Defendants' defiance is not a harmless delay; it strikes at the heart of Plaintiff's ability to prosecute this case. The withheld streaming reports, royalty statements, and merchandising ledgers are significant to damages. Certainly, expert disclosures will require this information. As indicated, Plaintiff is now seeking this information from third parties it is able to identify and employing experts to fill in the gap. But the missing documents handicap liability proof and damages analysis. The only way to navigate this prejudice is by the sanctions sought here.

### 3. Lesser Sanctions Are Inadequate

Lesser sanctions need not be tried if they would be futile or have already failed. *Valley Eng'rs, Inc.*, 158 F.3d at 1057-59. The Court already traveled the gentlest path. This action began with defaults entered against every West Defendant after repeated evasions of service—behavior emblematic of the obstruction now before the Court. Even after monetary sanctions were imposed, the West Defendants still refused to comply with basic discovery obligations. West publicly describes himself as a billionaire, and Yiannopoulos testifies to the same. The West Defendants negotiate eight- and nine-figure deals, as Yiannopoulos testifies. Financial penalties are ineffective deterrents. As the Ninth Circuit observed in *Connecticut General Life Insurance Company*, 482 F.3d at 1096-97, "continued defiance itself" establishes the futility of lesser measures. At this stage, only a recommendation for dispositive sanctions, or, at the absolute minimum, evidentiary sanctions (i.e., fact establishment and evidence preclusion), offer any realistic prospect of preserving the integrity of Plaintiff's case and the Court's schedule.

## C. Targeted, Non-Terminating Sanctions Are Appropriate Here and Tailored to the Misconduct

Rules 37(b)(2)(A) and 37(c)(1) authorize issue, evidentiary, and damages sanctions where a party withholds discovery without substantial justification. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (Rule 37(c)(1) is "self-executing, automatic" sanction); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008). When such a sanction effectively decides a claim or defense, the court must ensure the *Malone* factors are met. *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247-48 (9th Cir. 2012). Those factors are already satisfied, *supra*; thus, the following lesser sanctions are both permitted and proportionate. The relief Plaintiff seeks is calibrated to restore the balance that the West Defendants' calculated non-compliance has upended.

**Liability.** The e-mails and clearance grid the West Defendants hid record

---

18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

West's own lawyers dictating that the Artists be credited as writers and producers of *Hurricane*. That voluntary credit is the ultimate admission: it concedes the Artists' authorship of original material, which the West Defendants copied. Having made that admission, the West Defendants then either destroyed or buried the evidence underlying that admission. Apparently relying on that destruction or concealment, Yiannopoulos testified that the Artist credits were a "mystery." That is textbook bad faith. A recommendation for partial default on infringement—or, at the absolute minimum, an order deeming copying, access, substantial similarity, and absence of license established—simply restores the posture the case would occupy had the West Defendants produced relevant documents, as required by the Federal Rules and emphasized by the Court's Order. That the West Defendants have testified that no documents can be found, the obvious implication is that the documents have been destroyed, and Plaintiff should not be forced to wait further.

**Damages.** By withholding every spreadsheet and portal download that would demonstrate revenues, the West Defendants have forfeited the right to dispute the revenue presumptions Congress built into Section 504. The only just course is to an Order presuming every dollar earned from *Donda*—streaming, physical, and the Yeezy-Gap merchandise marketed with the songs—flows from the infringement, to bar any evidence seeking to undercut that calculation, and to permit Plaintiff to prove damages with non-speculative industry and third-party data to fill in the gaps.

**Collateral relief.** Because no privilege log was served, an order declaring that privilege is waived. And given the glaring gaps in Yiannopoulos's account, the Court should compel West himself to testify under oath within fourteen days regarding document retention and destruction.

Every sanction requested follows directly from a specific discovery breach, is grounded in Rule 37 and the Court's inherent power, and is no broader than necessary to cure the prejudice the West Defendants have engineered and to deter further obstruction.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## VII.   SANCTIONS FOR SPOLIATION OF EVIDENCE ARE WARRANTED

### A.   Preservation Duty Attached No Later Than June 30, 2021, and Certainly No Later Than Early 2024

The obligation to preserve evidence arises when litigation is "reasonably foreseeable." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067-68 (N.D. Cal. 2006). That line was crossed on June 30, 2021, when West and his companies executed the Settlement Agreement. The Settlement Agreement (i) ███████████████████████████████████████████████████████████████ ██████████████████████████████████████. The first substantive provision is ███████████████████████████████████████████████████ ████████████████████████████. That clause acknowledges the very category of copyright claims now before this Court. *Napster* teaches that when parties bargain for contractual protection against infringement suits, litigation is no longer speculative; the duty to preserve evidence "plainly" attaches at that moment. Tellingly, it was the West Defendants' counsel that instructed ██████████████. Indeed, the UMG correspondence shows the West Defendants' counsel ████████████ █████████████████████████████████████████████. Copying outside counsel—and doing so alongside ████████████████████████████— confirms the West Defendants should have contemplated litigation and were obligated to preserve documents, including correspondence, clearance files, drafts, emails, income data, etc.

Context matters. The 2021 settlement itself ███████████████████████ ████, confirming an uninterrupted backdrop of music and merchandise related litigation. By the summer of 2021, West stood at the intersection of (i) ongoing contract litigation, (ii) ████████████████████████████████████████████ █████████████████████████████████. Under any reasonable view, his duty to implement a litigation hold was "crystal-clear" by 2021.

Even if the 2021 triggers are ignored, the West Defendants were indisputably

on notice no later than early 2024, when Plaintiff warned threatened suit. The West Defendants nevertheless committed to no preservation protocols—Yiannopoulos's testimony proudly states that there are none—and continued to purge servers, thereby resulting in a failure to produce documents their own initial disclosures acknowledged previously existed.

**B.    The West Defendants Engaged in Intentional, Widespread, and Ongoing Spoliation**

The preservation duty attached no later than June 30, 2021 (via the Settlement Agreement) and was re-affirmed by Plaintiff's notice in early 2024. Yet Yiannopoulos admits that the West Defendants still "purge[s]" work email "on a regular basis" and never suspended auto-deletion. They have produced virtually no document from the nine categories listed in their initial disclosures—nothing concerning clearance, stem files, or income (*see* Crain Decl., ¶¶ 3-10; Berle Decl. ¶ 9). Their only post-Order production is a 63-page PDF and a declaration that ignoring the details required by the Order. Either relevant documents were destroyed or they are being concealed; both scenarios constitute willful spoliation.

Rule 37(e) governs: after their duty attached, the West Defendants continued routine deletion and flouted the Order, demonstrating an intent to deprive and justifying the full range of Rule 37(e)(2) and 37(b)(2) sanctions.

Plaintiff therefore seeks an Order to Show Cause directing the West Defendants, within seven days, to explain why the continuing purge is not spoliation or a violation of the Order, and why the Court should not:

1.    strike their Answers and enter default on liability;

2.    deem copying, access, substantial similarity, and bar contrary evidence; and

3.    preclude any later produced clearance or financial materials.

Any response shall be supported by one or more sworn declarations from knowledgeable affiant for the nine enumerated categories as set forth in the notice of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

21

Application. Absent a satisfactory showing, the Court should impose the sanctions requested above to cure the prejudice and deter further misconduct.

## VIII. *EX PARTE* RELIEF IS NECESSARY

A court may proceed *ex parte* when (1) the moving party will suffer irreparable prejudice if the motion is heard on the ordinary schedule, and (2) the crisis is not of the moving party's making. *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995); *see also Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013). Both conditions are met here.

### A.    Irreparable Prejudice Looms

Fact discovery closes on October 17, 2025; expert reports follow days later. The West Defendants have ignored a Court order to produce the basic building blocks of the case. Without those materials, Plaintiff is forced to seek information from third parties, which will, at best, be a subset of the universe of relevant documents. Plaintiff has been forced to begin preparing for depositions and work on measures to deal for this willful failure. Plaintiff has begun and will continue working with experts to quantify damages. Waiting for a regularly noticed motion—with a hearing no earlier than mid-July—would consume several usable weeks of discovery and force Plaintiff to forgo the development of evidence from other sources. Such lost time can never be restored; the prejudice is therefore irreparable.

### B.    The Timing Crisis Is Wholly of the West Defendants' Making

Plaintiff served its first RFPs last November, granted four extensions, won a compel order, and still received nothing but a 63-page PDF and a declaration that explaining why the West Defendants will not be making any serious efforts or coming close to fulfilling their discovery obligations. The June 13, 2025, interrogatory answers are copy-and-paste stonewalling: each interrogatory is met with the same non-answer. Plaintiff has done everything the Rules require and more; the present emergency flows solely from the West Defendants' tactical decision to ignore their obligations and try to run out the clock.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C.    Ordinary Motion Practice Would Reward Further Obstruction

The West Defendants have already defaulted, evaded service, and ignored the Order. Their latest gambit shows that they view deadlines and discovery obligations as optional, and Court orders and Rules as suggestions. Proceeding by normal notice would give them exactly what they want: two more months of delay without downside.

Because the discovery is on the back end and soon closing, expert preparation is required, and the harm cannot be cured retroactively, the Court should hear this motion *ex parte* and impose the targeted sanctions detailed below. Anything less would allow the West Defendants' calculated non-compliance to defeat the orderly administration of justice.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its application and request for sanctions.

Dated: June 20, 2025

**BAKER & HOSTETLER**

By:    */s/ Oren J. Warshavsky*
Oren J. Warshavsky
Joelle A. Berle
Alexis Cruz

and

**ORBIT IP LLP**

Michael A. Tomasulo
David A. Randall

*Attorneys for Plaintiff*
ARTIST REVENUE ADVOCATES, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## **L.R. 11-6.1 CERTIFICATION**

2

3

4

   I, Oren J. Warshavsky, counsel of record for Plaintiff Artists Revenue Advocates, LLC, certify that this brief contains 6,945 words, which complies with the word limit of L.R. 11-6.1.

5

6

Dated: June 20, 2025                    */s/ Oren J. Warshavsky*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S *EX PARTE* APPLICATION FOR OSC RE: RULE 37 SANCTIONS