1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIST REVENUE ADVOCATES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> KANYE OMARI WEST a/k/a "YE," et al., <br><br> Defendants. | Case No.: 2:24-CV-06018-MWC-BFM <br><br> **DISCOVERY MATTER** <br><br> **[PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE RE: SANCTIONS PURSUANT TO FRCP 37** <br><br> Magistrate: Hon. Brianna Fuller Mircheff <br><br> Fact Discovery Cutoff: October 17, 2025 <br><br> Pretrial Conf.:  April 3, 2026 <br> Trial:           April 20, 2026 |

Plaintiff Artist Revenue Advocates, LLC ("Plaintiff") filed an *ex parte* application for an order to show cause as to why the Court should not enter the terminating, evidentiary, issue, and other sanctions detailed below without any further opportunity for Defendants Kanye Omari West a/k/a "Ye", Getting Out Our Dreams, Inc., Getting Out Our Dreams II, LLC, Yeezy LLC, Yeezy Supply LLC, and Ox Paha Inc. (collectively, "West Defendants") to cure by producing documents ("Application"). After considering all the papers, evidence, and arguments of counsel in connection with this matter, the Court finds that there is good cause to grant the Application.

**IT IS HEREBY ORDERED** that the Application is GRANTED and that the West Defendants are individually and collectively ordered, within seven (7) days, to SHOW CAUSE why the following sanctions should not issue:

**1.      Liability-Related Sanctions:**

a)      An order under Fed. R. Civ. P. 37(b)(2)(A) striking the West Defendants' Affirmative Defenses and entering default on the issue of copyright infringement, finding that the West Defendants engaged in copyright infringement because the works *Hurricane* and *Moon* infringe Plaintiff's copyrighted musical work (the "Work"); or,

b)      An order under Fed. R. Civ. P. 37(b)(2)(A) designating the following facts be taken as established for purposes of the action:

   i)      the West Defendants had access to the Work;

   ii)     the West Defendants copied the Work in connection with creating and exploiting *Hurricane* and *Moon*;

   iii)    substantial similarity exists between the Work on the one hand and *Hurricane* and *Moon* on the other hand;

   iv)    the specific elements of the Work that appear in *Hurricane* and *Moon* constitute original, protectable expression not available in the prior art;

   v)     Plaintiff's copyright to the Work is valid; and

vi) no facts exist to support the West Defendants' affirmative defenses of: Laches (Affirmative Defense ("AD") 1); Consent, Waiver, Acquiescence, and Estoppel (AD 2); Unclean Hands (AD 3); Statute of Limitations (AD 4); License (AD 5); Copyright Misuse (AD 6); De Minimis Use/Fair Use (AD 7); Mistake/Fraud (AD 8); First Sale Doctrine (AD 9); Abandonment (AD 10); Scenes a Faire (AD 11); and Merger Doctrine (AD 12).

**2.    Evidentiary Sanctions:**

a) An order under Fed. R. Civ. P. 37(b)(2)(A) and 37(c)(1) prohibiting the West Defendants from introducing any document, testimony, argument, or analysis—including expert opinions—that either: (i) was responsive to Plaintiff's First Set of Requests for Production (RFP Nos. 1-40, 42-65); or (ii) was required to be disclosed under Fed. R. Civ. P. 26(a)(1)(A)(ii) as "documents...that the disclosing party may use to support its claims or defenses," unless such materials were produced on or before June 12, 2025; and

b) An order under Fed. R. Civ. P. 37(b)(2)(A) and 37(c)(1) prohibiting the West Defendants from offering evidence or argument that: (i) the West Defendants did not knowingly and intentionally direct, request, approve, and/or ratify the crediting of DJ Khalil, Dan Seeff, Sam Barsh and Josh Mease (the "Artists") as writers—and DJ Khalil as producer—of the tracks *Hurricane* and *Moon*, for all uses, including at Spotify, Apple Music, ASCAP and BMI; (ii) the Artists' credited contributions to *Hurricane* and *Moon* are unoriginal, de minimis, not substantially similar to the Work, constitute common musical elements, or are available in the prior art; or (iii) the West Defendants held any express or implied license, authorization, or permission from Plaintiffs to use the Work in *Hurricane* or *Moon*.

**3.    Damages-Related Sanctions:**

a) An order under Fed. R. Civ. P. 37(b)(2)(A) prohibiting the West Defendants from providing evidence or argument:

      i)    contradicting Plaintiff's damages calculations of gross profits, under 17 U.S.C. § 504(b);

      ii)    concerning any deductions or financial apportionment, under 17 U.S.C. § 504(b); and

      iii)    challenging industry accepted calculations and third-party data used to demonstrate the West Defendants' profits from infringement.

    **4.**    **No Privilege**:    An order ruling that with respect to the subject matter for which Plaintiff sought discovery in connection with RFPs 1 through 40 and 42 through 65, the West Defendants' claims of privilege and all objections based on privilege are stricken for failure to produce a privilege log and the West Defendants' June 13, 2025 assertion that they would not be producing a privilege log.

    **IT IS FURTHER ORDERED** that, in light of Milo Yiannopoulos's sworn statement that it "is usual for the entire contents of work email accounts to be purged on a regular basis," (ECF 99, ¶ 17), the West Defendants shall, within seven (7) days, SHOW CAUSE why that ongoing purging after their duty to preserve arose does not constitute (a) spoliation of electronically stored information under Fed. R. Civ. P. 37(e) and/or (b) a violation of this Court's May 19, 2025 Order, and why the Court should not impose the most severe sanctions authorized by Rule 37(e)(2) and Rule 37(b)(2), including striking their answers and entering default judgment.

    Any response shall be supported by one or more sworn declarations from a knowledgeable affiant that, *at a minimum*:

    1.    Includes as an exhibit the preservation letter sent by counsel;

    2.    Details the steps taken to comply with such preservation letter;

    3.    Identifies each individual to whom such preservation letter was sent and the steps taken to ensure compliance;

    4.    Identifies all digital media, including desktop and laptop computers, servers, tablets, telephones, and other digital devices subject to the retention letter;

    5.    Describes the purging practice—its frequency, method, and start date—and state whether it was suspended or modified at any point during the last five years;

    6.    Includes as an exhibit all logs of the "usual purging" testified to by Yiannopoulos and company policy memorandums or documents regarding the same;

    7.    Details all steps taken to preserve, restore, or replace the deleted e-mails, including the status and scope of any backups;

    8.    Details all steps not yet taken to preserve, restore, or replace the deleted e-mails, including the status and scope of any backups, including a description of all media that such steps are planned, including the name of a vendor and vendor estimates of costs and time; and

    9.    Identifies the custodians, the media, and the time periods affected and explain why the lost ESI cannot be produced from alternative sources.

**IT IS SO ORDERED.**

Dated: _____, 2025    _____
    Magistrate Judge Brianna Fuller Mircheff
    United States District Court
    Central District of California