1 | RUSS, AUGUST & KABAT
2 | Irene Y. Lee, State Bar No. 213625
    ilee@raklaw.com
3 | Nathan D. Meyer, State Bar No. 239850
    nmeyer@raklaw.com
4 | Sarah Wang (*admitted pro hac vice*)
    swang@raklaw.com
5 | 12424 Wilshire Boulevard, 12th Floor
    Los Angeles, California 90025
6 | Telephone:  (310) 826-7474
    Facsimile:  (310) 979-8268

7 | Attorneys for Plaintiff
8 | ARTIST REVENUE ADVOCATES, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| ARTIST REVENUE ADVOCATES, LLC, | Case No. 2:24-CV-06018-MWC-BFMx |
|---|---|
| Plaintiff, | [Assigned to The Honorable Michelle W. Court, Courtroom 6A] |
| vs. | **DECLARATION OF JOE BENNETT, PH.D. IN SUPPORT OF PLAINTIFF ARTIST REVENUE ADVOCATES, LLC'S OPPOSITION TO DEFENDANTS YE F/K/A KANYE OMARI WEST; GETTING OUT OUR DREAMS, INC.; GETTING OUT OUR DREAMS II, LLC; YEEZY LLC; YEEZY SUPPLY LLC; AND OX PAHA INC. F/K/A MASCOTTE HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| KANYE OMARI WEST a/k/a "YE;" GETTING OUT OUR DREAMS, INC. a/k/a G.O.O.D. MUSIC, a California corporation; GETTING OUT OUR DREAMS II, LLC, a Delaware limited liability company; YEEZY LLC, a Delaware limited liability company; YEEZY SUPPLY LLC, a Delaware limited liability company; OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC., a California corporation; UMG RECORDINGS, INC., a Delaware corporation; UNIVERSAL MUSIC CORP., a Delaware corporation; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; KANO COMPUTING LIMITED, a United Kingdom private limited company; ALEXANDER NELSON KLEIN, an individual; ASHDUST LLP, a Delaware limited liability partnership; STEMPLAYER LTD, a United Kingdom private limited company; and DOES 1 through 10, | **Hearing**<br>Date: February 27, 2026<br>Time: 1:30 p.m.<br>Courtroom: 6A<br><br>Trial: April 20, 2026<br>Final Pretrial Conf: April 3, 2026<br><br>Original Complaint Filed:<br>July 17, 2024 |
| Defendants. | |

1

I, Joe Bennett, Ph.D., declare as follows:

1. I am a Professor of Music at Berklee College of Music with over thirty years of experience analyzing music professionally, and over fifteen years of experience as a forensic musicologist. I have personal knowledge of the facts herein, and if called as a witness, I could and would testify competently thereto.

2. I have submitted two expert reports in this case. On December 30, 2025, I submitted an opening report on the musical similarity between the original copyrighted work MSD PT2 and various versions of Hurricane and Moon. On January 16, 2026, I submitted a rebuttal to the expert report of Dr. Nathaniel Sloan.

3. I submit this declaration to address some of the issues raised in Defendants' summary judgment motion with respect to the similarity between MSD PT2 and Hurricane and Moon. I have been asked by counsel to prepare this declaration in response to the arguments made by Defendants in their motion and the declaration of Dr. Nathaniel Sloan in support of Defendants' motion.

## Defendants' Motion Is Limited to the Album Version of Hurricane, and Not Other Versions Including Those Played at Listening Parties

4. I understand that Defendants and Dr. Sloan are challenging the musical similarity between only the album version of Hurricane and MSD PT2. I note that they do not appear to challenge, in their motion, the similarity of any other five representative versions of Hurricane. As I demonstrated in my opening report, using spectral analysis, phase nulling, and forensic listening, I determined that Defendants sampled the sound recording of MSD PT2 in the entirety of 80 Degrees (the predecessor to Hurricane), two demo versions of Hurricane, and at the first listening party. Dr. Sloan does not appear to challenge my analysis, and as I note in my rebuttal report, he does not himself perform any analysis of whether the sound recording appeared in 80 Degrees or the first listening party. Therefore, for purposes of my declaration, I will be referring to only the album version of Hurricane (what I call HURRICANE21 in my Opening Report, and from hereon simply *Hurricane*).

2

**Similarity Between MSD PT2 and Hurricane Under the Extrinsic Test**

5.  I understand that Defendants challenge my application of the extrinsic test in comparing MSD PT2 and the album version of Hurricane.

   a.  The extrinsic test is applied throughout my Opening Report, for example p.6 (key, tempo, runtime, instrumentation), pp. 14–15 (analytic dissection and transcription comparing bassline and harmonic structure of MSD PT2 and Hurricane using objective pitch/rhythm/harmony comparison) and pp. 24–27 (quantitative measurement of protectable compositional material from MSD PT2 present in Hurricane by bar count and duration).

   b.  In my forensic musicology practice I always perform the extrinsic test, whether serving as expert for plaintiff or defendant. The first step in any new project is to undertake analytical dissection of the musical works to determine how objectively similar they are. This is part of my due diligence and something I do as a matter of course. Whenever I notice commonplace elements, such as elements that appear in prior art (musical repertoire pre-dating Plaintiff's work), I subtract those out by "filtration" (i.e. omitting them from the comparative transcription). For example, I usually filter out simple drum patterns, or choices of commonplace synthesizer sounds, or performance techniques undertaken by vocalists or instrumentalists. This allows me to focus on the elements of the original composition that are protectable.

   c.  Similarly, I have applied the extrinsic test here in analyzing the first four bars of MSD PT2, which is what was taken and similar to Hurricane and then to Moon. The first four bars of MSD PT2, in my expert opinion as a forensic musicologist, are original, protectable, and do not consist of commonplace elements. It shows creative expression

3

because it contains multiple compositional elements that are, in my opinion, combined in a unique way that is not commonplace.

d.   I conducted a prior art search on MSD PT2, which confirmed that the bass line melody, chord progression, and harmonic rhythm could not be found in combination in any earlier works. As with the initial comparison, I consider a prior art search to be a basic requirement with any new project, to identify objectively what elements of the earlier work are, in fact, original and therefore suitable for comparative analysis. I was unable to find any prior art evidence to support the position that the harmonic and melodic expression in MSD PT2 were commonplace. Therefore the elements I compared and transcribed in my Report (e.g. Fig. 3, p.15) represented pre-filtration of commonplace elements (none found across the four-bar MSD PT2 phrase) and a comparison only of those elements that I would consider to represent protectable expression – i.e. the notes and chords of MSD PT2, as played across the four bar duration in question, in the order they are heard.

e.   I noted in my expert opinion that the protectable elements of MSD PT2 and Hurricane feature significant similarities that could not be ascribed to coincidence or commonplace elements: "the extent of similarity between the works is so significant that it is, in my Opinion, musically impossible that this level of similarity could have arisen through coincidence aka Independent Creation." (Bennett Opening Report, p.15).

f.   There are multiple compositional elements that are shared between MSD PT2 and Hurricane—including but not limited to melody, harmony, rhythm, meter, key, and tempo—that are similar

4

and/or identical, and in combination, supports the conclusion that the two works are substantially similar.

6. Defendants' motion contends that the only protectable elements of MSD PT2 are the "bass walk up" and "chord progression." Motion at 25. To be clear, my opinion is not limited to these two compositional elements. Therefore, I disagree with Dr. Sloan's statement that "Bennett only identifies two purported similarities between 'MSD PT2' and 'Hurricane Final.'" Sloan Decl. ¶ 10. My opening report states that Hurricane "contains a clear interpolation of compositional **elements** from MSD18, **including** the bassline, and harmonic structure, forming the musical foundation of the work." (opening report, p.2 (emphasis added)). My transcription on page 15 does not isolate the bass walk up, as Dr Sloan does; rather it transcribes the complete bass line across the full four bar excerpt, starting with the walkup described, and then following the chords, with the unusual harmonic rhythm described. Neither I nor Dr. Sloan found any Prior Art that exhibits MSD PT2's bass line, harmonic rhythm, and chord progression in isolation or in combination.

7. I analyze various compositional elements throughout the report, including but not limited to melody, harmony, rhythm, tempo, meter, key, and tempo, among other elements.

- Melody – page 14, 15, 16
- Harmony – page 6, 14, 15, 16
- Rhythm – page 14, 15, 16
- Harmonic rhythm, bars, and form – 14, 15, 16, 25, 26, 27
- Tempo – page 6, 24
- Key – page 6, 9, 16

8. Dr. Sloan also, mistakenly in my opinion, state that what he calls the "chord progression" is not protectable. Dr. Sloan did not identify *any* prior art works in his opening report that share the same "chord progression" as MSD PT2. Further, Dr. Sloan purported to identify prior art in his rebuttal report (Sloan rebuttal of

5

Bennett, p.12). But his findings tend to confirm, rather than refute, my opinion (and finding) that there is no prior art sharing the same "chord progression." I set out below the three alleged "prior art" examples from Dr. Sloan's rebuttal report, and explain why each one is inappropriate, inaccurate, or else not in fact prior art.

    a.    "Roses" (Benny Blanco featuring Juice WRLD and Brendon Urie); this work is not, in fact, prior art. It was released on December 5, 2018, several months after MSD PT2 was created, which I understand from counsel to have been in March 2018. Its chord progression is not, in fact, the same as MSD PT2 (Dr. Sloan fails to transcribe the final chord; the correct transcription should be [ i | VI | iv | iv III ]. Moreover, the tempo of "Roses" is around 147 beats per minute, making it a very different application of harmonic rhythm from the near-identical tempos of the works at issue (~78 BPM for MSD PT2 and 80 BPM for HURRICANE).

    b.    "Gone Away" (HER, 2017 (and not 2018 as Dr. Sloan stated)) is a different chord progression from MSD PT2. Dr. Sloan applies a 'rotation' to make the comparison – that is, he *changes the chord progression* in the prior art to find a purported 'match' (it is not). A simple audio comparison of Gone Away and MSD PT2 makes it apparent that there is no objective similarity between their chord progressions.

    c.    "Everlasting" by Nhato (Spotify link) is also not prior art, having been released in 2019. It is not a match for the chord progression of MSD PT2. Dr. Sloan transcribes the excerpt at 1:50 incorrectly as "[ i | VI | iv | bII ]" – it should in fact be "[ i | VI | iv i/v | VI ]". And even allowing for Dr. Sloan's musically incorrect transcription, the progression does not match MSD PT2.

6

9. I suggest that these purported "Prior Art" examples from Dr Sloan's rebuttal are (in two cases) not prior art, because they postdate Plaintiff's work, and none are a musical match for the chord progression in MSD PT2. Prior art, in forensic musicology, is used *either* to support an argument of "no access" by demonstrating the plausibility of composers doing similar things independently of each other (presumably irrelevant in this case, given that Defendants used MSD PT2), *or* it is used to identify commonplace tropes in music, that should be subject to filtration as part of the extrinsic test. Dr. Sloan's use of purported "Prior Art" in his rebuttal achieves neither of these goals, and does not in my view serve to demonstrate to the finders of fact whether the MSD PT2 chord progression is commonplace (in my view it is not). Dr. Sloan and I agree that we were both unable to find a single musical work predating MSD PT2 that has an identical chord progression, still less one with that chord progression combined with the other elements (e.g. bass walkup).

10. Dr. Sloan also fails to address whether what he calls the "bass walk up" and "chord progression" together are protectable. It is my contention that MSD PT2 comprises an original combination of chords, harmonic rhythm and bassline melody; Dr. Sloan has not provided any evidence – in his Opening Report, or in his rebuttal – that refutes this.

11. Defendants also states that the Bennett Opening Report somehow "shows no rhythmic similarity exists between the two four-measure loops in *MSD PT2* and *Hurricane*." Motion at 26. I submit that this is a misunderstanding of my report. As I wrote in my opening report, "the extent of similarity between the works [MSD PT2 and album version of Hurricane] is **so significant** that it is, in my Opinion, musically impossible that this level of similarity could have arisen through coincidence aka Independent Creation." Bennett Opening Report, page 15. Dr. Sloan and I agree that the bass line of Hurricane appears in the introduction of Hurricane *identically* to its statement in MSD PT2 (Sloan Report, paragraph 11: "While the

7

first appearance of the synthesized bassline in "Hurricane" at 00:10 followed the same quarter-note rhythm of "MSD PT2"…). By this statement, referring to the compositionally identical bass line at 0:10 in Hurricane, Dr. Sloan directly contradicts Defendants' statement (Motion at 26) that "no rhythmic similarity exists between the two four-measure loops in *MSD PT2* and *Hurricane*". We also agree that later in Hurricane the bass line varies its rhythm to add syncopation (Bennett Report, p.15 Fig. 3, Hurricane21 transcription bar 1). I do not consider that this rhythmic variation shows dissimilarity between the two works. Rather, it demonstrates that after copying the MSD PT2 bassline verbatim (0:10 in Hurricane), the copied bass line was later slightly adapted rhythmically. There is nothing in Dr. Sloan's report, his "Prior Art" search, or his Rebuttal, that suggests that the creative source of Hurricane's bass line was anything other than MSD PT2.

12. I have attached audio files to my declaration reflecting the compositional comparison, which are transcribed in Figure 3 of my Opening Report, p. 15, reproduced below.



The audio files assist all parties, particularly those who are not musically trained, to hear the works for themselves (MSD PT2 as created and submitted to the Copyright Office), and to better understand the similarities and differences between them. The audio comparison methodology include:

- MSD PT2 is provided as is, with no edits to the excerpt.
- All excerpts of HURRICANE having the vocals and drums electronically removed for ease of comparison (as the parties agree that MSD PT2 does not contain drums or vocals).

8

- The excerpt of HURRICANE in Fig 3-d is digitally slowed down ~2% (from 80 BPM to 78.5BPM) to enable like for like simultaneous audio comparison.

The audio files based on Figure 3 of my opening report are as follows:

- **Fig3-a MSD PT2 4 bars 78.5 BPM Dm March 2018.wav**
  - The first ~12 seconds of Plaintiff's work MSD PT2, featuring the 4 bars that are sampled/interpolated.
- **Fig3-b HURRICANE21 4 bars 0-43 80 BPM Dm Aug 2021.wav**
  - The excerpt of HURRICANE21 that is transcribed in Fig. 3, with vocals and drums removed (which is also reflected in my transcription).
- **Fig3-c MSD PT2 v HURRICANE21 COMPARISON 4 bars each x 2.wav**
  - MSD PT2, followed by HURRICANE (vocals and drums removed, as reflected in my transcription), played twice for linear comparison.
- **Fig3-d MSD PT2 v HURRICANE21 simultaneous LR protectable elements.wav**
  - MSD PT2 and HURRICANE (vocals and drums removed, as reflected in my transcription), played simultaneously, with ~2% tempo compensation to enable simultaneous playback. MSD PT2 is on the right channel, and HURRICANE is on the left channel. The user can mix between them with the pan control on a stereo hi-fi system, or by lifting one headphone or earbud away at a time.

13. Dr. Sloan also states that "[t]he melodic rhythm of the two compositions is also different, since 'MSD PT2' contains fast melodic motives in its upper voices in the subsequent three measures while 'Hurricane Final' holds sustained whole notes in each of the three subsequent measure." Sloan Decl. ¶ 12. I disagree. What Dr. Sloan is describing is that Hurricane adds additional material (e.g. vocal melodies) played on top of MSD PT2's bass line and chord progression. This is not in dispute. But adding material to Plaintiff's work does not negate the similarities that my analysis identifies.

9

**DECLARATION OF JOE BENNETT, PH.D., IN SUPPORT OF PLAINTIFF ARTIST REVENUE ADVOCATES, LLC'S OPPOSITION TO WEST DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

14. I also disagree with Dr. Sloan's generalization that "[t]he remaining compositional elements in the four-measure phrase … [is] a common harmonic descent that is generic in nature and not musicologically significant." Sloan Decl. ¶ 13. Dr. Sloan does not support these statements with any examples or analysis, and as discussed above, he has not found any prior art.

15. Dr. Sloan misstates that my "analysis of apportionment does not take into consideration the importance of vocal melodies and structure in determining apportionment." Sloan Decl. ¶ 14. Adding vocal melodies does not make a difference as to whether or not the earlier work has been copied, nor the qualitative or quantitative significance of the copied material.

**Similarity Under the Lineage Methodology and Extrinsic Test Between MSD PT2 and Moon (Via Hurricane)**

16. I also disagree with Dr. Sloan's contention that what he calls my "lineage methodology" (Sloan Decl. ¶ 9) is inappropriate in analyzing MSD PT2 and Moon. To the extent that Dr. Sloan suggests that adding "wholly original contributions" (Sloan Decl. ¶ 9) such as "vocal melodies and lyrics" to MSD PT2 makes the works substantially dissimilar, I disagree that merely adding vocal melodies and lyrics would absolve Defendants of showing that the works are dissimilar (i.e., independently created or using only commonplace elements).

17. I understand from counsel that Defendants were not authorized to use MSD PT2 in either Hurricane or Moon. Therefore, because Hurricane, which is unauthorized, is substantially similar to MSD PT2 and Moon is substantially similar to Hurricane, MSD PT2 and Moon are substantially similar.

18. I disagree with Dr. Sloan's framing insofar as he only compares MSD PT2 with Moon (Sloan Decl. ¶ 16), without comparing MSD PT2 with Hurricane and then Hurricane with Moon. As discussed above, I conduct the extrinsic test in comparing the musical similarity between MSD PT2 and Hurricane. I also identify

and analyze the musical similarity between Hurricane and Moon, as discussed in my opening report.

19. I analyze various compositional elements of Moon throughout the report, including but not limited to melody, harmony, rhythm, meter, key, and tempo, among other elements.

- Melody – pp. 20-23
- Harmony – pp. 20-23
- Rhythm – pp. 20-23
- Harmonic rhythm, bars, and form – 19, 20, 21, 26

20. As I found in my report, and as ignored by Dr. Sloan, the melodic material in Moon is present in Hurricane, and the two works are "melodically extremely similar." Bennett Opening Report p. 20.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed this 6th day of February, 2026 at Waltham, Massachusetts.

_____
Joe Bennett, Ph.D.

# CERTIFICATE OF SERVICE

I certify that counsel of record who are deemed to have consented to electronic service are being served on February 6, 2026, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5(a)(3). Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

/s/   Nathan D. Meyer

12

**DECLARATION OF JOE BENNETT, PH.D., IN SUPPORT OF PLAINTIFF ARTIST REVENUE ADVOCATES, LLC'S OPPOSITION TO WEST DEFENDANTS MOTION FOR SUMMARY JUDGMENT**