UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title: Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings: (IN CHAMBERS) Order GRANTING IN PART and DENYING IN PART Defendants' Motion for Summary Judgment (Dkts. [218], [219])**

Before the Court is Defendants Kanye Omari West a/k/a Ye, Getting Out Our Dreams, Inc. a/k/a G.O.O.D. Music, Getting Out Our Dreams II, LLC, Yeezy LLC, Yeezy Supply LLC, and Ox Paha Inc f/k/a Mascotte Holdings, Inc.'s (collectively, "Defendants") motion for summary judgment. *See* Dkt. # 219 ("*Mot.*").[1] Plaintiff Artist Revenue Advocates, LLC ("Plaintiff") opposed, *see* Dkt. # 228 ("*Opp.*"), and Defendants replied, *see* Dkt. # 231 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.

I.  Background

This case arises out of Defendants' alleged copyright infringement through the songs *Hurricane* and *Moon* from Ye's album *Donda*. *See generally* Dkt. # 1 ("*Compl.*"). Plaintiff is Delaware limited liability company. Dkt. # 228-1 ("*UF*") ¶ 1. The sole Class A member of Plaintiff is a "series" of Actio Capital LP. *Id.* ¶ 2. Khalil Abdul Rahman, Sam Barsh, Dan Seeff, and Josh Mease (collectively, the "Artists") are Plaintiff's Class B members, who joined Plaintiff in 2024. *Id.* ¶¶ 3–4. The Artists collaborated on hundreds of jam sessions, *id.* ¶ 5, and on March 14, 2018, created the MSD PT2 musical composition, *id.* ¶ 6. By March 20, 2018, Mr. Rahman had completed the MSD PT2 sound recording.

---

[1] Defendants initially filed an incomplete version of their moving papers on January 9, 2026. *See* Dkt. # 218. Though this Order's ruling applies to both Dkt. 218 and Dkt. 219, the Court understands Dkt. 219 to be Defendants' operative filing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title:   Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

*Id.* ¶ 7.  On March 20, 2018, Mr. Rahman sent a Dropbox folder containing a dozen compositions (including MSD PT2) to Nascent, a producer. *Id.* ¶ 14.  It is possible that Mr. Rahman sent MSD PT2 to other producers, though Mr. Rahman could not recall whether he had done so. *Id.* ¶ 15.

On September 14, 2018, Nascent texted Mr. Rahman a link to Ye's Instagram post of *80 Degrees*, an early demo of *Hurricane*, that used MSD PT2. *Id.* ¶ 16.  Mr. Rahman responded "Sounds dope!" *Id.* ¶ 17.  Mr. Rahman "liked the idea" and the direction the song was taking.  *See* Dkt. # 221-5, 16.  He was also happy about the "placement" since it would help him monetize his music.  *See id.*  On September 19, 2018, Mr. Barsh shared Ye's Instagram post of *80 Degrees* which contained MSD PT2. *UF* ¶ 20.  On September 21, 2018, Mr. Mease did the same. *Id.* ¶ 21.

On July 29, 2020, Jamal Guinn p/k/a BoogzDaBeast ("Boogz"), a producer who works with Ye, texted Mr. Rahman to start the preclearance process for *Donda*, the album on which *Hurricane* and *Moon* would appear. *Id.* ¶ 29.  Mr. Rahman provided Boogz the contact information for his attorney, Debra Wise. *Id.* ¶ 30.  The parties dispute whether Ms. Wise objected to Defendants' use of MSD PT2. *Id.* ¶ 31.  The parties also dispute whether it was common industry practice in hip hop music to settle on all terms for "music splits" prior to release of a record. *Id.* ¶ 33.

On August 29, 2021, Mr. Seeff shared on Instagram a video containing the album-version of *Hurricane*. *Id.* ¶ 22.  On August 20, 2021, November 23, 2021, and January 5, 2022, Mr. Seeff posted to Instagram celebrating his involvement and the success of *Donda*. *See* Dkt. # 221-2, 24–27.  The Artists received formal credits as composers of *Hurricane*, and Mr. Rahman received formal credits as a producer on *Hurricane*. *Id.* ¶ 26.  Mr. Rahman also received formal credits as a producer on *Moon*. *Id.*  The Artists received Grammy nominations related to *Donda*. *Id.* ¶ 27.  The Artists have also received some royalties related to *Hurricane* and *Moon*. *Id.* ¶ 28.

On March 1, 2012, Mr. Rahman and Universal Music Publishing Group ("UMPG") had entered an administration agreement. *Id.* ¶ 37.  The parties extended the terms of that agreement three times, and the agreement is still operative. *Id.* ¶ 38.  The administration agreement governs all musical compositions to the extent they were written, controlled, and / or acquired, prior to and during the term of the agreement, though there are certain limitations on UMPG's rights.  *See* Dkt. # 221-11, 3.  Some of the rights that the agreement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title:  Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

provides are to "[l]icense, and cause others to license, the exploitation of Compositions," to "[a]dminister and grant rights in the Compositions and administer the copyrights therein," and to "[c]ollect all monies [related to the Compositions] earned during the Term and the Retention Period . . . ."  *See id.* 2–3.  Separately from the composition rights of MSD PT2, Mr. Rahman also owned the copyright in the sound recording of MSD PT2, and he transferred his interests in writing to Plaintiff.  *See* UF ¶ 120; Dkt. # 221-12.

On December 14, 2012, Mr. Seeff and HH Music had entered a publishing administration agreement.  UF ¶ 41.  That agreement governed MSD PT2.  *Id.* ¶ 42.  That agreement notes that, during its term, HH Music "shall have the exclusive right to administer and exploit the Compositions throughout the world."  *See* Dkt. # 221-17, 1.  On September 10, 2014, Mr. Barsh and HH Music entered a publishing administration agreement, UF ¶ 44, which ultimately governed MSD PT2, *id.* ¶ 45.  During the term of the agreement, HH Music had the exclusive right to register copyrights, sue and administer and exploit the Compositions throughout the world; to print, publish, sell, use and licenses the performance and use the Compositions throughout the world; and to execute in the Publisher's name any licenses and agreements affecting the Compositions.  *Id.* ¶ 46.

On July 1, 2015, HH Music and PEN Music Group, Inc. ("PEN Music") entered an administration agreement.  *Id.* ¶ 47.  Under that agreement PEN Music had the exclusive right to register copyrights, sue, and to administer and license the use of the Compositions throughout the world, and to execute in its own name any licenses and agreements affecting or respecting the Compositions.  *Id.* ¶ 48.  Rather than using HH Music as an intermediary, Mr. Mease and PEN Music entered an oral agreement concerning the administration of MSD PT2.  *Id.* ¶ 51.  Pursuant to that oral agreement, PEN Music received income on Mr. Mease's behalf related to *Hurricane* and *Moon*, had the right to license MSD PT2 on Mr. Mease's behalf, and had the right to administer MSD PT2 on Mr. Mease's behalf.  *Id.* ¶ 52.  The parties intended that PEN Music's oral agreement with Mr. Mease would mirror PEN Music's written agreements with Mr. Barsh, Mr. Seeff, and HH Music.  *Id.* ¶ 53.

On July 17, 2024, the Artists and Plaintiff executed a copyright assignment agreement.  *Id.* ¶ 34.  PEN Music did not execute the copyright assignment agreement.  *Id.* ¶ 35.  PEN Music did not execute any other written instrument that would have altered its agreements with HH Music or Mr. Mease regarding PEN Music's administration of MSD PT2 on behalf of Mr. Barsh, Mr. Seeff, and Mr. Mease.  *Id.* ¶ 36.  Still, the Artists, HH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   2:24-cv-06018 MWC (BFMx)                                                Date: February 26, 2026

Title:   Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al.

Music, and PEN Music all authorized the copyright administration agreement orally or otherwise. *See id.* ¶ 123.

Plaintiff relies on expert Dr. Joe Bennett, a Professor of Musicology at the Berklee College of Music, who opined that "HURRICANE21 [the album version of *Hurricane*] does not appear to contain a sample of the Sound Recording (SR) of [MSD PT2]." *Id.* ¶ 54. And sample-detection testing for MSD PT2 on *Hurricane* produced a "null" result. *Id.* ¶ 55. Dr. Bennett's report includes analyses of six different versions of *Hurricane*. *Id.* ¶ 63.

Dr. Bennett also determines that *Moon* did not audiosample sections of MSD PT2. *Id.* ¶ 57. His report presents a timeline of *Moon* versions from the first listening party on the work through the official album release. *Id.* ¶ 65. Dr. Bennett concludes that the asserted melodic similarities between "MOON21" (a/k/a "MOON FINAL") and "HURRICANE21" (a/k/a "HURRICANE FINAL") "support the conclusion" that MOON21 is "compositionally derived from HURRICANEV1," and that MOON21 "should be considered a derivative work of HURRICANEV1 and, by extension, of [MSD PT2]." *Id.* ¶ 66. Dr. Bennett offers that his comparison of MOON21 to "all known earlier versions of HURRICANE . . . evidenc[es] a clear compositional lineage . . . through the success HURRICANE versions to MOON21." *Id.* ¶ 67. He opines that HURRICANE21 "contains a clear interpolation of compositional elements from [MSD PT2], including the bassline, and harmonic structure, forming the musical foundation of the work." *Id.* ¶ 85. And Dr. Bennett provides that HURRICANE21 contains a "minimally adapted replay (interpolation) of the first four bars of HURRICANEV1 (and [MSD PT2])" while "maintaining and featuring the same bass notes and chords." *Id.* ¶ 86. He denies a suggestion that the "subtle rhythmic changes in later versions" of the songs "could be significant enough to create a new, unrelated composition . . . ." *Id.* ¶ 90.

Based on Dr. Bennett's conclusion that each *Hurricane* iteration contains "protectable compositional elements of [MSD PT2]," *Moon*'s replication of melodic material common to all *Hurricane* versions "necessarily imports those protectable elements." *Id.* ¶ 68. And he notes that the album version of *Hurricane* has the "same vocal melody" as an earlier version of the song ("HURRICANEV1"). *Id.* ¶ 69. Dr. Bennett concludes that "the source of the melody in HURRICANE 21 is 80DEG18," a/k/a *80 Degrees*. *Id.* ¶ 70. He also highlights melodic similarities between HURRICANE21 and MOON21, finding that the similarity "can only be ascribable to copying." *Id.* ¶¶ 71–72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title: | Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

And each *Hurricane* iteration "contains protectable compositional elements of [MSD PT2]." *Id.* ¶ 76.

As to the songs' lyrics, Dr. Bennett identifies that lyrics from 80DEG18 appear in HURRICANE21, which offer "corroborative evidence" of melodic borrowing. *Id.* ¶ 78. He also compares the vocal toplines of MOON21 and HURRICANE21 and identifies multiple "exact matches of pitch and rhythm" (as well as partial matches) between the vocal phrases. *Id.* ¶ 79.

Defendants' expert, Dr. Nathaniel Sloan—an Assistant Professor of Musicology at the University of Southern California Thornton School of Music—reaches conclusions diverging from those of Dr. Bennett. *See generally* Dkt. # 219-3 ("*Sloan Decl.*"). He finds that MSD PT2 does not contain any lyrics or vocal melodies, and he avers that Dr. Bennett's report does not include a direct analysis comparing the compositional elements of MSD PT2 and *Moon*. UF ¶¶ 81–82. He also attempts to show that the similarities between the works that Dr. Bennett identifies are minor. *See id.* ¶¶ 91–99. Dr. Sloan's own analysis offers that MSD PT2 contains "fast melodic motives" in its upper voices, whereas the album version of *Hurricane* contains "held whole notes," reflecting a difference in the works' melodic rhythm in the upper voices. *Id.* ¶ 102. He states that "MSD PT2 contains no lyrics or vocal melodies," and that the "vocal melodies and lyrics" that are "the most salient aspects" of *Hurricane* and *Moon* are "wholly original contributions by the Defendants." *Id.* ¶ 114. He also recounts that "[a]ll lyrics in [*Moon*] are the original contribution of" Defendants. *Id.* ¶ 116. Ultimately, Dr. Sloan concludes that "there are no elements of MSD PT2 present in *Moon*." *Id.* ¶ 106. Further, he declares that the final versions of *Hurricane* and *Moon* reveal "no similarity in the harmonic elements" of the songs." *Id.* ¶ 117. Even though certain phrases in the vocal aspects of *Hurricane* and *Moon* show "some degree of similarity," Dr. Sloan determines that the songs "diverge . . . in terms of exact pitch content, rhythm, and arrangement." *Id.* ¶ 118.

II.   <u>Legal Standard</u>

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 2:24-cv-06018 MWC (BFMx)          Date: February 26, 2026

Title: Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al.

56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party has the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence must be capable of presentation at trial in a form that would be admissible. *See* Fed. R. Civ. P. 56(c)(2). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001); *see also Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 2001) (stating that "the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment") (internal quotation marks and citation omitted).[2] Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III. Discussion

    A. Failure to Meet and Confer

Plaintiff identifies that Defendants' counsel failed to meet and confer in accordance with Local Rule 7-3. *See Opp.* 8–10. Defendants' reply does not contend that they

---

[2] To the extent that the parties assert evidentiary objections along with their briefing and the Court relies on objected-to evidence, the objections are overruled. *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title:  Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

complied with the Local Rules, only that the Court should not deny the motion for summary judgment because Plaintiff "offers no explanation concerning how it suffered prejudice flowing from these violations." *See Reply* 6.  And Defendants aver that they "substantially complied" by "providing Defendants' grounds in writing immediately after [a] call with counsel . . . ." *See id.*  As an initial matter, Defendants' contention that they complied by utilizing their own preferred method of placing Plaintiff on notice as to the substance of their motion is not compliance at all.  The Local Rules are clear, and Defendants willfully violated them.  Nor is this the first time that Defendants have failed to follow the Court's meet-and-confer requirements.  *See* Dkt. # 138, 2–3.

There is no excuse for Defendants' behavior.  Though the Court will exercise its discretion to consider the merits of Defendants' motion for summary judgment, Defendants' counsel is now on notice and will receive no additional warnings—if any member of Martorell Law APC fails to abide by the Local Rules in any proceeding before this Court, the Court will not only strike Martorell Law APC's filing, but consider imposing other sanctions against the firm.  *See Foster v. Wilson*, 504 F.3d 1046, 1053 (9th Cir. 2007).  The Court **ORDERS** the attorneys of record—Eduardo Martorell, Christopher Rosario, and Evan Miller—to provide all attorneys at Martorell APC a copy of this Order and notification of this warning.

  B. <u>Merits</u>

    i. *Standing*

Defendants argue that Plaintiff does not possess rights in MSD PT2, stripping Plaintiff of standing to bring a copyright infringement claim based on that work.  *See Mot.* 15–17.  For purposes of understanding the Parties' arguments, the Court must analyze the rights to MSD PT2's composition separately from that of its sound recording.

    a. *Composition Rights*

Plaintiff does not dispute that the Copyright Assignment Agreement does not transfer any portion of the musical composition belonging to Mr. Rahman, *see generally Opp.*, so the Court must evaluate whether Mr. Seeff, Mr. Barsh, or Mr. Mease transferred

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title:  Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

their composition interests to Plaintiff.³  The parties do not dispute that HH Music entered into publishing administration agreements with Mr. Seeff and Mr. Barsh, and that this agreement governed the composition of MSD PT2.  *See* UF ¶¶ 41, 44, 45, 46.  Nor do the parties dispute that HH Music and PEN Music subsequently entered an administration agreement that governed the same composition rights.  *See id.* ¶ 47.  And Mr. Mease entered an oral agreement concerning the administration of MSD PT2 directly with PEN Music, and that this agreement would match PEN Music's written agreements with Mr. Barsh, Mr. Seeff, and HH Music.  *See id.* ¶¶ 51–53.

But the parties dispute whether PEN Music ultimately assigned its rights to Plaintiff.  Plaintiff avers that the Artists, HH Music, and PEN Music all authorized the Copyright Assignment Agreement at least orally.  *See id.* ¶ 123.  Defendants argue that PEN Music could not orally waive its exclusive right to enter contracts concerning MSD PT2.  *See Reply* 9.  In response, Plaintiff highlights California Civil Procedure Code § 1698(b), which notes that "[a] contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties."  *See* Cal. Civ. Proc. Code § 1698(b); *see also Miller v. Brown*, 136 Cal. App. 2d 763, 775 (1955) ("But under section 1698 of the Civil Code, an executed oral agreement may alter an agreement in writing, even though, as here, the original contract provides that all changes must be approved in writing.  This is so because the executed oral agreement may alter or modify that provision of the contract as well as other portions." (citation omitted)).

Because federal law prohibits the oral transfer of a copyright, Plaintiff does not have a stake in the musical composition of MSD PT2.  "Copyright owners may transfer '[a]ny exclusive rights comprised in a copyright, including any subdivision of any of the rights specified in [17 U.S.C. § 106],' . . . so long as the transfer is evidenced by a signed writing."  *Corbello v. DeVito*, 777 F.3d 1058, 1062 (9th Cir. 2015) (citing 17 U.S.C. §§ 201(d)(2) and 204(a)); *see Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 760 (E.D. Cal. 2021) (same).  The statutory text leaves no room for disagreement, stating

---

³ Though Defendants initially argued that Plaintiff lacked standing because Mr. Rahman did not transfer his composition rights to Plaintiff, *see Mot.* 16, Defendants' reply does not address that "[w]hen a co-owner transfers his or her interest, which the co-owner need not obtain consent from the other co-owners to do, the transferee stands in the shoes of the transferor, making the transferee a co-owner in the copyright."  *See Tempo Music Invs., LLC v. Cyrus*, No. 2:24-cv-07910-DDP (BFMx), 2025 WL 932967, at *5 (C.D. Cal. Mar. 18, 2025).  Accordingly, Plaintiff would not lack standing just because one of the four owners of MSD PT2 did not transfer his rights to Plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title:  Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

that a "transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). That clarity is why the Ninth Circuit has pronounced that "[S]ection 204 of the Copyright Act invalidates a purported transfer of ownership unless it is in writing." *Effects Assocs. v. Cohen*, 908 F.2d 555, 556 (9th Cir. 1990). Neither California contract law nor the Artists' intent can override the plain language of the statute. *See id.* at 557 ("If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so."); *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) ("Federal courts 'rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy.'" (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989))).

Since there is no writing showing that Plaintiff received the copyrights to the musical composition of MSD PT2, Plaintiff has no ownership of that musical composition. Without ownership of the relevant copyright, Plaintiff lacks standing to sue. *See Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (citing *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991)). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment with respect to Plaintiff's claims for copyright infringement in the musical composition of MSD PT2.

    b.  *Sound Recording Rights*

Defendants do not contend that Plaintiff lacks standing with respect to the sound recording of MSD PT2. *See generally Mot.*; *Reply*. Mr. Rahman owned the copyright in the sound recording of MSD PT2 and transferred his interests in writing to Plaintiff. *See UF* ¶ 120; Dkt. # 221-12. Accordingly, Plaintiff has standing to sue for copyright infringement of the sound recording of MSD PT2.

    ii.  *Implied License*

Next, Defendants argue that they held a nonexclusive, implied license in the sound recording of MSD PT2. "An implied license is granted when '(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work.'" *Credit Bureau Connection, Inc. v. Pardini*, 726

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title: Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

F. Supp. 2d 1107, 1119 (E.D. Cal. 2010) (quoting *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008)). "[T]he Ninth Circuit has explained that the implied license doctrine in copyright cases is to be very narrowly construed." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 3d 1197, 1226 (C.D. Cal. 2007) ("In *Napster*, the Ninth Circuit stated that courts have found implied licenses only in narrow circumstances where one party created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it." (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (internal quotation marks omitted))).

Defendants do not contend that all three elements are present here. *See generally Mot.*; *Reply*. Instead, they argue that this test is not the "exclusive test in the Ninth Circuit," and instead ask the Court to find that the Artists' conduct nonetheless gave rise to an implied license even if the first two elements of the test are absent. *See Reply* 13–16. To be sure, there are cases from district courts in the Ninth Circuit pronouncing that "[w]hile it is undoubtedly true that most cases in which an implied license is found satisfy the three-part test proffered by Plaintiffs, an implied license defense is not precluded in other circumstances." *See Interscope Records v. Time Warner, Inc.*, No. CV 10–1662 SVW (PJWx), 2010 WL 11505708, at *3 (C.D. Cal. June 28, 2010); *see also In re Pandora Media*, No. 2:22-cv-00809-MCS-MAR, 2025 WL 3049880, at *17 (C.D. Cal. July 1, 2025) ("An implied license can be found on the basis of other conduct outside of a work-for-hire context, including in situations where the copyright holder knew of the defendant's use of copyrighted work and failed to object, regardless of what the copyright holder subsequently claims regarding its actual intent of beliefs." (citing *ExperExchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2009 WL 3837275, at *23–24 (N.D. Cal. Nov. 16, 2009))). Some courts have determined that they "should look to the totality of the circumstances surrounding the transaction to determine whether an implied license was granted." *See, e.g.*, *Boot v. Rhapsody Int'l Inc.*, No. C23-0470-KKE, 2024 WL 1973282, at *4 (W.D. Wash. May 3, 2024).

In the face of a clear standard from the Ninth Circuit as to the three factors to consider when evaluating an allegedly implied license, however, the Court cannot depart absent authority allowing it to do so. Though Defendants' reply cites nine different cases on this issue, none of them are cases where both the first and second elements of the implied license test are absent. *See Reply* 13–16; *see generally Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046 (S.D. Cal. 2016); *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164 (E.D. Cal. 2006); *Interscope Records*, 2010 WL 11505708; *Falcon*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   2:24-cv-06018 MWC (BFMx) | Date: February 26, 2026 |
| Title:   Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al. | |

*Enters., Inc. v. Publishers Serv., Inc.*, 438 Fed. Appx. 579 (9th Cir. 2011); *Asset Mktg. Sys.*, 542 F.3d 748; *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996); *Effects Assocs.*, 908 F.2d 555; *In re Pandora Media*, 2025 WL 3049880; *ExperExchange*, 2009 WL 3837275.  Nor are any of these cases pronouncements from the Ninth Circuit stating that the third factor may be so significant as to render the first two irrelevant.  *See id.*

Though Defendants would prefer the Court to conclude otherwise, Defendants' receipt of royalty payments also does not automatically establish the existence of an implied license.  In addition to Defendants relying on limited authority for this proposition, there remain two disputed facts preventing those royalty payments from being dispositive.  First, the parties dispute whether Ms. Wise objected to Defendants' use of MSD PT2.  *Id.* ¶ 31.  Second, the parties dispute whether it was common industry practice in hip hop music to settle on all terms for "music splits" prior to release of the record.  *Id.* ¶ 33.  Thus, a reasonable jury could find that Defendants lacked an implied license to MSD PT2.

For these reasons, the Court cannot grant Defendants' motion for summary judgment based on their implied license defense.

### iii.   *Copyright Infringement*

Because Plaintiff lacks standing as to the composition of MSD PT2, it has standing to claim infringement with respect to only the sound recording of MSD PT2.  *See supra* Section III.B.i.  17 U.S.C. § 106 explains:

> [T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
> 1) to reproduce the copyrighted work in copies or phonorecords;
> 2) to prepare derivative works based upon the copyrighted work;
> 3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> 4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-06018 MWC (BFMx)                                              Date: February 26, 2026

Title:    Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al.

> pictures and other audiovisual works, to perform the copyrighted work publicly;
> 5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> 6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106. Another portion of the Copyright Act, 17 U.S.C. § 114(b), clarifies the limits of those protections with respect to sound recordings, stating in part:

> The exclusive right of the owner of copyright in a sound recording under clause (1) of section 106 is limited to the right to duplicate the sound recording in the form of phonorecords or copies that directly or indirectly recapture the actual sounds fixed in the recording. The exclusive right of the owner of copyright in a sound recording under clause (2) of section 106 is limited to the right to prepare a derivative work in which the actual sounds fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality. **The exclusive rights of the owner of copyright in a sound recording under clauses (1) and (2) of section 106 do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording.**

17 U.S.C. § 114(b) (emphasis added). The legislative history of Copyright Act offers a more explicit limitation on copyright infringement suits related to sound recordings: "Mere imitation of a recorded performance would not constitute a copyright infringement even where one performer deliberately sets out to simulate another's performance as exactly as possible." *See* 17 U.S.C. § 114, H.R. REP. No. 94–1476, at 106, 1976 U.S.C.C.A.N. 5659, 5721. As a result, Plaintiff here does not attempt to rely on compositional elements to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-06018 MWC (BFMx)                                Date: February 26, 2026

Title:     Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al.

show infringement of its sound recording of MSD PT2, nor could it. *See Newton v. Diamond*, 204 F. Supp. 3d 1244, 1258 (C.D. Cal. 2002), *aff'd*, 388 F.3d 1189 (9th Cir. 2004) (distinguishing between elements protected by a musical composition and those attributable to a sound recording); *Gray v. Hudson*, 28 F.4th 87, 99 (9th Cir. 2022) (same).

Plaintiff argues only that the sound recording of MSD PT2 appears in variants of *Hurricane*, not that the sound recording was used in the album version of *Hurricane* or in *Moon*. *See Opp.* 17. Dr. Bennett—Plaintiff's expert—confirmed that "HURRICANE21 [the album version of *Hurricane*] does not appear to contain a sample of the Sound Recording" of MSD PT2. *See UF* ¶ 54; Dkt. # 228-18 ("*Bennett Report*") 14. Moreover, sample detection testing for MSD PT2 on Hurricane produced a null result. *See UF* ¶ 55; *id.* ¶ 56 (noting that the *Hurricane* version on *Donda* does not contain a sample of the audio recording of MSD PT2). Dr. Bennett also noted that *Moon* does not audiosample the sound recording of MSD PT2. *See id.* ¶¶ 57, 103. As a result of these concessions, there is no genuine dispute of material fact as to Plaintiff's copyright infringement claims regarding *Moon* or the album version of *Hurricane*. *See Opp.* 17; *Mot.* 19. To the extent *Moon* and the album version of *Hurricane* form the basis of Plaintiff's copyright infringement claim, the Court **GRANTS** Defendants' motion for summary judgment.

Still, the Court must evaluate Plaintiff's claim with respect to earlier versions of *Hurricane*. Plaintiff argues that "Defendants were paid considerable sums by Apple and others for use of those versions of *Hurricane*." *See Opp.* 17. And Dr. Bennett highlights that MSD PT2's sound recording "was used in all versions of [*80 Degrees*] I have analyzed, and at Listening Party 1." *See Bennett Report* 10. Dr. Sloan—Defendants' expert—does not grapple with this conclusion, *see generally* Dkt. # 219-3, so there is at least a genuine dispute of material fact as to copyright infringement regarding those works. Accordingly, the Court **DENIES** Defendants' motion for summary judgment with respect to Plaintiff's claim of copyright infringement of the sound recording of MSD PT2 based on the following works or events (as listed in Dr. Bennett's rebuttal report, *see* Dkt. # 228-20, 24–25): 80DEG18 and any other versions of *80 Degrees*, HURRICANEV1, HURRICANELP1, 80DEG18V, and Listening Party 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:24-cv-06018 MWC (BFMx)                                      Date: February 26, 2026

Title:        Artist Revenue Advocates v. Kanye Omari West a/k/a "YE" et al.

IV.    Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.[4]  The February 27, 2026, hearing is **VACATED**.

**IT IS SO ORDERED.**

:
**Initials of Preparer**    TJ

---

[4] The Court also **GRANTS** summary judgment on Plaintiff's claims for attorneys' fees and statutory damages since "Plaintiff agrees that the registrations were not sufficiently early to permit an award of such damages, and do[es] not oppose summary judgment on that basis." *See Opp.* 29.