**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Evan Miller, State Bar No. 336473
EMiller@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Telephone: (323) 840-1200
Facsimile: (323) 840-1300

Attorneys for Defendants Ye f/k/a KANYE OMARI WEST; GETTING OUT OUR DREAMS, INC.; GETTING OUT OUR DREAMS II, LLC; YEEZY LLC; YEEZY SUPPLY LLC; and OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIST REVENUE ADVOCATES, LLC,<br><br>       Plaintiff,<br><br>vs.<br><br>KANYE OMARI WEST a/k/a "YE;" *et al.*,<br><br>       Defendants. | Case No.: 2:24-cv-06018 MWC (BFMx)<br><br>Hon. Michelle Williams Court<br><br>**DEFENDANTS' MOTION IN LIMINE NUMBER 1 TO EXCLUDE EVIDENCE OF IRRELEVANT AND SPECULATIVE DAMAGES ("MIL No. 1")**<br><br>FPTC Date:    April 3, 2026<br>Time:        1:30 p.m.<br>Courtroom:  6A<br><br>Action Filed:  July 17, 2024<br>Disc. Cutoff:  December 15, 2025<br>Trial:       April 20, 2026 |

_MARTORELL LAW APC_
_Litigation & Trial Counsel_

---

DEFENDANTS' MOTION IN LIMINE NO. 1

## **MOTION IN LIMINE NUMBER 1**

Defendants KANYE OMARI WEST a/k/a YE, GETTING OUT OUR DREAMS, INC. a/k/a G.O.O.D. MUSIC, GETTING OUT OUR DREAMS II, LLC, YEEZY LLC, YEEZY SUPPLY LLC, and OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC. ("Defendants") respectfully submit this Motion in Limine to Exclude Evidence of Irrelevant and Speculative Damages ("MIL No. 1").

### I.    INTRODUCTION

Following the Court's Order on Defendants' Motion for Summary Judgment (ECF 232, "MSJ Order"), Plaintiff may pursue only its claims (and related damages) concerning versions of *Hurricane* (or *80 Degrees*) that include the sound recording MSD PT2: "80DEG18, and any other versions of *80 Degrees*, HURRICANEV1, HURRICANELP1, 80DEG18V, and Listening Party 1." (*Id.* at 13.)

That short list is further diminished for several reasons.  First, all purported uses of *80 Degrees*, including 80DEG18V and 80DEG18, occurred outside the three-year limitations period.  *See* 17 U.S.C. § 507(b).  The Complaint acknowledges that the track became *Hurricane* by July 19, 2021, and text messages produced by Plaintiff show the change occurred by July 29, 2020.  Notably, in apparent recognition of the statute of limitations, the Complaint contains no allegations concerning *80 Degrees* and Plaintiff's experts do not opine on any damages flowing from *80 Degrees*. Second, 80DEG18 is "audio ripped from a YouTube fan leak."  HURRICANELP1 is audio ripped by Plaintiff from the video Listening Party 1.  Defendants cannot be liable for copies made by Plaintiff or a third party.

Thus, the only potential infringements remaining for trial are: (1) HURRICANEV1 and (2) the performance of *Hurricane* during the July 22, 2021 listening party in Atlanta, Georgia,[1] as recorded in the video Listening Party 1.

---

[1] To match the labeling of Plaintiff's expert, Defendants will refer to this event as the first listening. However, it should be noted that the first alleged listening party occurred on July 19, 2021, in Las Vegas, Nevada.  (ECF 1 ¶ 46.) "The second listening party was held at Mercedes-Benz Stadium, Atlanta, Georgia on July 22, 2021."  (*Id.* ¶ 47.)

**DEFENDANTS' MOTION IN LIMINE NO. 1**

MARTORELL LAW APC

Litigation & Trial Counsel

Plaintiff's expert acknowledges that HURRICANEV1 was unreleased. Like scribbles in a notebook, revenues (and thus profits) cannot be tied to audio that never left the studio. Any so-called evidence of such revenue would be particularly dubious.

Finally, none of Plaintiff's experts offer opinions to establish "a causal link" between MSD PT2 and any revenue purportedly tied to Listening Party 1, or to any alleged infringement for that matter.

Indeed, the opinions of Plaintiff's experts concerning HURRICANEV1 and Listening Party 1 are limited to:

(1) Dr. Joe Bennett identifying the sound recording MSD PT2 in HURRICANEV1 and Listening Party 1, identifying similarities between HURRICANEV1 and Listening Party 1 on the one hand and later versions of *Hurricane* on the other hand, and purportedly apportioning the contribution of MSD PT2 to HURRICANEV1 and HURRICANELP1;[2]

(2) Professor Kevin J. Greene opining that musical works can "generate ancillary revenue streams that fall within the ambit of profits of the infringer under Copyright law," and recognizing that disgorgement of profits is only "available where there is a causal connection between a defendant's unauthorized use of a work and harm suffered by a plaintiff," but stopping short of providing any causal connection analysis;[3]

(3) Doug Bania apportioning ticket sales (paid to a third party) from the first listening party to *Hurricane*, *see* Declaration of Christopher Rosario in support of MIL No. 1 Exh. 1 at 15, apportioning royalties (never paid to

[2] Dr. Bennett's "apportionment" relies on the amount of time he can identify elements of MSD PT2 during various versions of *Hurricane*, regardless of any other elements simultaneously present. To avoid acknowledging that *Hurricane* was only one in a collection of live choreographed performances accompanied by special effects, and that the video Listening Party 1 contains audio not attributable to *Hurricane* or *Moon* and visual elements not attributable to any music, Dr. Bennett chose not to apply his apportionment methodology directly to the video Listening Party 1.

[3] Nothing in Professor Greene's "analysis" examines a purported connection between any potential revue streams and Listening Party 1, *Hurricane*, *80 Degrees*, or MSD PT2.

MARTORELL LAW APC
Litigation & Trial Counsel

Defendants) for merchandise sold during the first listening party generally, *id.* at 17, apportioning supposed payments from Apple (including amounts Apple paid to third parties to market its own event) for the performance of *Hurricane* during the first listening party, *id.* at 19.[4]

However, none of Plaintiff's experts are expected to testify that MSD PT2, *Hurricane*, *Moon*, or *80 Degrees* actually *caused* consumers to purchase tickets to a listening party, to purchase any merchandise at a listening party, to purchase any online merchandise, or *caused* Apple to make any payments to Defendants. Nor is there any opinion that the version of *Hurricane* performed during Listening Party 1 *caused* the profits of other versions of *Hurricane*, or to the royalties, fees, and sales purportedly related to those other versions.

If Plaintiff intends to present evidence merely concerning the proximity in time between revenues and the performance, as it attempted to do in its failed motion to compel adidas and opposition to adidas' motion to quash, then a logically equivalent argument could be made for attributing revenue to the phase of the moon, the temperature in the stadium, and the beginning of the Tokyo Olympics. Plaintiff also fails to consider whether it was the alleged ancillary revenue activities (partnering with brands like Gap, Balenciaga, adidas, and Apple) that *caused* increased demand and sales of *Hurricane* and *Moon*.

According to experts contacted, but not retained in any capacity, by Defendants, a causal connection could be demonstrated directly with consumer interviews and polling, or experimentally with focus groups and double-blind testing (isolating MSD PT2 as a variable for any change in reported likelihood to purchase a concert ticket, purchase merchandise, purchase music, or enter contracts). One of those experts reported that they were previously contacted by "the other side;" so, it is likely that

---

[4] All other purported damages are either attributed to *Moon,*other versions and performances of *Hurricane* (primarily the album version of *Hurricane*), or do not do not distinguish between the multiple versions of *Hurricane*.

**DEFENDANTS' MOTION IN LIMINE NO. 1**

MARTORELL LAW APC
Litigation & Trial Counsel

Plaintiff is and has been aware of these methods of proving a causal connection.[5]

To date, no such analysis concerning causation has been or is expected to be proffered by Plaintiff.

However, while the Copyright Act permits a copyright owner to recover "any profits of the infringer that are attributable to the infringement," 17 U.S.C § 504(b), a copyright holder "must establish the existence of a **causal link** before indirect profits damages can be recovered." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002) (emphasis added). Profits that are "only remotely or speculatively attributable" will not be awarded as damages. *Id.* (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985)).

Therefore, the Court should exclude all purported evidence of irrelevant and speculative damages. *See* Fed. R. Evid. 401-402, 403; *Makie*, 296 F.3d at 914; *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708. Claimed damages not limited to or apportioned to HURRICANEV1 or Listening Party 1 are irrelevant following the Court's MSJ Order. Claimed damages apportioned to HURRICANEV1 or Listening Party 1 with no evidence of causation are too speculative to be recovered in a copyright matter such as this one.

## II.   STATEMENT OF FACTS

### A. All Purported Uses of *80 Degrees* Occurred Before July 21, 2021.

80DEG18V is a video "believed to have been released on Instagram in 2018 (ARA003129). Rosario Decl., Exh. 2 at 4.

80DEG18 is "audio ripped from a YouTube fan leak at ARA009507" that was created "sometime between 2018 and 2021." Rosario Decl., Exh. 2 at 4, 5 n.1.

On July 21, 2024, the Complaint was filed with no allegations concerning *80 Degrees*. (ECF 1.) The Complaint acknowledges that the track became *Hurricane* by July 19, 2021, (*see* ECF 1 ¶ 46), and the undisputed language of text messages

---

[5] Defendants were assured by that expert that all appropriate ethical walls were in place to protect all parties' interests.

**DEFENDANTS' MOTION IN LIMINE NO. 1**

MARTORELL LAW APC
Litigation & Trial Counsel

produced by Plaintiff show the change occurred by July 29, 2020, (*see* ECF 228-1 at 16:8-23 (Plaintiff does not dispute that text messages it produced referred to the track as "Hurricanes")).

### B. Although Apportioning Some Revenues, Plaintiff's Experts do not Opine on How MSD PT2, HURRICANEV1, or Listening Party 1 *Caused* any Sales, Royalties, Licensing, or Contractual Revenue

On December 30, 2025, Defendants received Plaintiff's initial expert disclosures, which included the reports by (1) Mr. Bennett, (2) Professor Greene, and (3) Mr. Bania. *See* Rosario Decl., Exh. 1-2. None of these reports offer opinions concerning *how* MSD PT2, Hurricane, or Moon *caused* any sales, royalties, licensing, or contractual revenue. *See id.*

## III. ARGUMENT

The Court has the inherent power to grant a motion to exclude evidence that could be objected to at trial. *See Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984); *see also* Fed. R. Evid. 401, 402, 403. Relevant here, the Court may exclude a plaintiff from introducing evidence or argument related to defendants' profits where there is no causal nexus between the infringement and those claimed profits. *See Sedlik v. Drachenberg*, No. CV 21-1102 DSF (MRWx), 2024 WL 248581 (C.D. Cal. Jan. 11, 2024) (in copyright matter, granting in part defendant' motion in limine to exclude argument and evidence related to Defendants' profits).

### A. Damages Related to *Moon* and Versions of *Hurricane* Not Including the Sound Recording MSD PT2 are Irrelevant, Because those Works are no Longer at Issue

On February 26, 2026, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. (ECF 232.) The Court ruled in favor of Defendants and against Plaintiff as follows: (1) Plaintiff lacks standing concerning the musical composition MSD PT2, *id.* at 9, and (2) *Moon* and the album version of *Hurricane* do not contain the sound recording MSD PT2, *id.* at 13. The Court denied

MARTORELL LAW APC
Litigation & Trial Counsel

DEFENDANTS' MOTION IN LIMINE NO. 1

Defendants' motion to the extent Plaintiff's claim of copyright infringement of the sound recording IMSD PT2 is based on "80DEG18 and any other version of *80 Degrees*, HURRICANEV1, HURRICANELP1, 80DEG18V, and Listening Party1." (*Id.*)

While the Court did not explicitly rule on Listening Party 2, Listening Party 3, and subsequent performances, Plaintiff concedes that the sound recording MSD PT2 was removed before Listening Party 2. *See* Rosario Decl., Exh. 2 at 10 ("From 'Listening Party 2' the sample was replaced with an interpolation, featuring organ and synth bass playing similar parts to the original instruments featured in MSD18.").

Therefore, because they no longer form the basis for recovery in this matter, the Court should exclude as irrelevant all evidence and argument concerning the alleged direct and "indirect" damages attributable to the musical composition MSD PT2, *Moon*, the album version of *Hurricane*, the "FLH Concert," and the "Donda 2 MIA Show." *See* Fed. R. Evid. 402. To the extent Plaintiff may be able to make some showing of relevance, the probative value of this evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. *See* Fed. R. Evid. 403. Specifically, if not excluded in total, the portions of Plaintiff's expert reports concerning this evidence should be stricken or redacted before being sent to the jury, if it is sent to the jury at all.

**B. Damages Related to *80 Degrees* are Irrelevant, Because All Purported Uses of *80 Degrees* Occurred Outside the Statute of Limitations**

The Court should exclude evidence and argument concerning damages attributable to 80DEG18, 80DEG18V, and any other version of *80 Degrees*, because there is no evidence that any of these alleged uses occurred within the three-year statute of limitations. *See* 17 U.S.C. § 507(d). The Complaint acknowledges that the track became *Hurricane* by July 19, 2021 (the edge of the limitations period), (*see*

6

ECF 1 ¶ 46), and evidence shows the change occurred by July 29, 2020, (*see* ECF 228-1 at 16:8-23 (Plaintiff does not dispute that text messages it produced referred to the track as "Hurricanes")). Notably, in apparent recognition of the statute of limitations, the Complaint contains no allegations concerning *80 Degrees*. (*See* ECF 1.) Moreover, Plaintiff's experts do not opine as to any damages purportedly flowing from any version of *80 Degrees*.

Therefore, the Court should exclude as irrelevant and potentially misleading all evidence of damages concerning *80 Degrees*, 80DEG18, and 80DEG18V. *See* Fed. R. Evid. 402, 403.

### C. Damages Related to HURRICANEV1 and Listening Party 1 (HURRICANELP1) are Irrelevant, Because Such Damages are Speculative and Unrecoverable Without a Showing of Causation

The Ninth Circuit has explained that "the copyright claimant must first show a causal nexus between the infringement and the gross revenue," **before** the alleged infringer bears the burden of apportioning the profits that were not the result of the infringement. *See Polar Bear Productions, Inc.*, 384 F.3d at 711 (citing 17 U.S.C. § 504(b). "[T]o conclude that a copyright plaintiff need only provide the company's gross revenue, without regard to the infringement, would make little practical or legal sense." *Id.* "Otherwise, the plaintiff in a copyright action against a multidivision, multi-product company such as General Mills, would need to do nothing more than offer an overall gross revenue number—like $11.5 billion—and sit back." *Id.*

That is exactly what Plaintiff is doing here—simply gathering and stating what it believes are Defendants gross revenues collected during a particular time period without grappling with the question of causation. Therefore, the Court should exclude as irrelevant and unsupported all argument and evidence concerning damages purportedly attributable to HURRICANEV1,

### 1. No Revenue is Attributable to the Unreleased HURRICANEV1

MARTORELL LAW APC
Litigation & Trial Counsel

7

As an initial matter, Plaintiff's Expert Dr. Bennett acknowledged that HURRICANEV1 was an unreleased audio file. *See* Rosario Decl., Exh. 2 at 24 (noting the demo was "Unreleased"). Dr. Bennett examined HURRICANEV1 only to demonstrate the supposed progression from MSD PT2 to the later versions of *Hurricane*. Plaintiff's damages expert, Mr. Bania, did not opine as to any damages that could be attributed to the unreleased demo HURRICANEV1.

Thus, any potential evidence regarding HURRICANEV1 would be particularly speculative and unsupported by any façade of causation.

### 2. Plaintiff has Not and is Not Expected to Proffer any Evidence of Causation Concerning Listening Party 1 / HURRICANELP1

More importantly, Plaintiff and its experts failed to provide any evidence (opinion or otherwise) to demonstrate that MSD PT2, HURRICANELP1, or Listening Party 1 *caused* any sales, licenses, or contractual revenues that could be apportioned for disgorgement.

First, because the revenue could only arguably be attributable to the album versions of *Hurricane* and *Moon* (which is also too speculative a theory), Plaintiff's experts did not even attempt to apportion to Listening Party 1 / HURRICANELP1 the total revenue collected by UMG for sales and streams of the works, see Rosario Decl. Exh. 1 at 11-13, publishing royalties from Sony Publishing, BMI, SoundExchange, and KN Rights, *see id.* at 13-14, revenue from sales of the Donda Stem Player, *see id.* at 19, and revenue from the Yeezy x Gap collaboration, *see id.* at 20-22. Failure to apportion the gross claimed damages to the particular infringements at issue is fatal. *See Polar Bear Productions, Inc.*, 384 F.3d at 713 (vacating judgment where the "damages claim. . . cannot total to the overall $2.1 million verdict, nor can they be fairly segregated from the whole").

Second, even when Plaintiff attempted to apportion potential revenue streams to Listening Party 1 / HURRICANELP1 (the selectively ripped audio of Listening Party 1) they did not attempt a showing of causation. This is an independently fatal

**DEFENDANTS' MOTION IN LIMINE NO. 1**

MARTORELL LAW APC
Litigation & Trial Counsel

flaw precluding the question from reaching the jury.  *See Polar Bear Productions, Inc.*, 384 F.3d at 716 ("Because Polar Bear failed to demonstrate a nonspeculative causal link between the trade show promotion and the increased revenue from Expedition watches, we conclude that the district court erred in allowing the jury to consider the claim of profits associated with the brand premium calculation.").

However, like the theory of the plaintiff in *Polar Bear* that "the infringement at the trade shows created excitement about the product and an association between Expedition watches and outdoor sports, that the excitement and association generated at the tradeshows somehow translated into consumers purchasing Timex's products, and that consumer enthusiasm permitted Timex to increase prices and generate more revue," *Polar Bear Productions, Inc.*, 384 F.3d at 714, Plaintiff here also appears to theorize that Defendants' use of MSD PT2 (vis-a-vis *Hurricane* and *Moon*) at Listening Party 1 created excitement and an association for all of Defendants' music, merchandise, and potential contractual relationships; that the excitement and association somehow translated into consumers' purchasing tickets, merchandise, and music, and Apple entering into a contract with Defendants; and, that the excitement and association permitted Defendants to generate more revue.

The *Polar Bear* Court rejected such a baseless causation theory.  *See Polar Bear Productions, Inc.*, 384 F.3d at 714 ("even taking this circumstantial evidence in the light most favorable to the jury verdict, we conclude as a matter of law that the evidence and requisite causal connection is woefully insufficient.").

Plaintiff cures none of the shortcomings apparent in *Polor Bear*.  There is no actual consumer data, interviews or polls, and there is no experimental data (such as focus groups or double-blind tests isolating the alleged infringement as a cause for reporting higher likelihood to purchase tickets, merchandise, music, or to enter contracts).  There is no indication consumers expected *Hurricane* (let alone a version containing MSD PT2) would be performed before they purchased tickets.  There is no indication purchases were made during or shortly following *Hurricane*.  There is

MARTORELL LAW APC
Litigation & Trial Counsel

9

**DEFENDANTS' MOTION IN LIMINE NO. 1**

no indication that any of the merchandise features the lyrics or notes of *Hurricane*, or any other symbolism tied to HURRICANELP1 or Listening Party 1.  There is no consideration of what role Plaintiff Ye's eleven prior studio albums, 72 prior Grammy nominations, and 22 Grammy wins played in spurring sales.

To rely on Plaintiff's theory based solely on temporal proximity is to raise to the level of causation every simultaneously occurring detail.  Even limiting ourselves the arena in which the performance occurred, the potential influences could and likely do include the time of day, the hue of the lights, the volume of the music, whether alcohol was served, the celebrity and historical fame of the performers, the dance choreography, the quality of the performance, the quality of the merchandise, the brand name of the merchandise, and myriad of other factors.  Plaintiff does not dispel any of these possibilities because they do not address causation.

Therefore, the Court should exclude as irrelevant and impermissibly speculative all argument and damages purportedly related to Listening Party 1 / HURRICANELP1.  The nominally apportioned amounts include:

(1) ticket sales revenue related to the first listening party, *see* Rosario Decl., Exh. 1 at 15 (referring to the first listening party as "Donda ATL Show 1");

(2) in-person merchandise revenue from the first listening party, *see id.* at 16-17; and,

(3) purported Apple livestream revue flowing from the first listening party, *see id.* at 18-19.

The rest of the damages are not apportioned to the relevant infringements.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' MIL No. 1 and Order excluded argument and evidence concerning damages purportedly attributable to (1) *Moon* and versions of *Hurricane* that do not include the sound recording MSD PT2, (2) any version of *80 Degrees*, and (3) HURRICANEVI and Listening Party 1.

**DEFENDANTS' MOTION IN LIMINE NO. 1**

Dated:  March 6, 2026

**MARTORELL LAW APC**

By:    /s/ Eduardo Martorell
        Eduardo Martorell
        Christopher A. Rosario
        Evan Miller
        *Attorneys for Defendants*

11
**DEFENDANTS' MOTION IN LIMINE NO. 1**