**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Evan Miller, State Bar No. 336473
EMiller@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Telephone: (323) 840-1200
Facsimile: (323) 840-1300

Attorneys for Defendants Ye f/k/a KANYE OMARI WEST; GETTING OUT OUR DREAMS, INC.; GETTING OUT OUR DREAMS II, LLC; YEEZY LLC; YEEZY SUPPLY LLC; and OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTIST REVENUE ADVOCATES, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>KANYE OMARI WEST a/k/a "YE;" *et al.*,<br><br>        Defendants. | Case No.: 2:24-cv-06018 MWC (BFMx)<br><br>Hon. Michelle Williams Court<br><br>**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE IRRELEVANT, UNRELIABLE, UNDISCLOSED, AND LEGAL-CONCLUSION TESTIMONY OF PLAINTIFF'S EXPERT JOE BENNETT ("MIL No. 2")**<br><br>FPTC Date:    April 3, 2026<br>Time:           1:30 p.m.<br>Courtroom:   6A<br><br>Action Filed:  July 17, 2024<br>Disc. Cutoff:  December 15, 2025<br>Trial:           April 20, 2026 |

MARTORELL LAW APC
Litigation & Trial Counsel

**DEFENDANTS' MOTION IN LIMINE NO. 2**

**MARTORELL LAW APC**
Litigation & Trial Counsel

## MOTION IN LIMINE NO. 2

Defendants KANYE OMARI WEST a/k/a YE, GETTING OUT OUR DREAMS, INC. a/k/a G.O.O.D. MUSIC, GETTING OUT OUR DREAMS II, LLC, YEEZY LLC, YEEZY SUPPLY LLC, and OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC. ("Defendants") respectfully submit this Motion in Limine for an order excluding the irrelevant, unreliable, undisclosed, and legal-conclusion testimony of Plaintiff's expert Joe Bennett.

### I.     INTRODUCTION

This motion should be granted because Joe Bennett's reports and subsequent declaration contain substantial categories of opinions that should never reach the jury. Some are now irrelevant because the Court's summary judgment order eliminated all composition claims and all claims concerning *Moon* and the album version of *Hurricane*. Some are pure legal conclusions. Some venture into apportionment, commercial success allocation, and settlement commentary that are not proper opinions, and are by Bennett's own admission, are outside his expertise. Some were never disclosed in a Rule 26 expert report at all, but instead appeared for the first time in a declaration after his report and deposition.

This motion is narrow. Defendants are not asking the Court to exclude Bennett wholesale. If Plaintiff wishes to present Bennett on the limited surviving sound recording issues tied to early versions of 80 Degrees and Hurricane, Defendants reserve their other objections, but this motion does not reach that far. It addresses only the categories of opinion that are plainly inadmissible on this record.

Defendants satisfied their meet-and-confer obligations before bringing this motion. Defense counsel met and conferred in good faith regarding the relief sought herein, but the parties were unable to resolve the issue informally. Miller Dec., ¶ 2.

### II.    RELEVANT BACKGROUND

Plaintiff disclosed Bennett as an expert on December 30, 2025. Miller Dec., Ex. 1 (Bennett Opening Report). In his opening report, Bennett opined, among other

---

1

things, that the final album version of *Hurricane* "contains a clear and obvious interpolation of MSD18," that *Moon21* supports an "assertion of derivative work status," and that *Moon21* "should be considered a derivative work" of earlier *Hurricane* versions and, "by extension," of MSD18. *Id.* at 2, 15-16, 19-23.

Bennett also offered express legal propositions. For example, he wrote that any co-writer of an earlier *Hurricane* version "would also therefore be considered a co-writer of HURRICANE21, because (I understand that) under US copyright law it is not possible to attribute individual musical elements to individual co-writers in a Musical Work." *Id.* at 16 & n.6.

His opening report further included a section entitled "Quantitative Analysis and Apportionment," in which he discussed "publishing splits," stated that lyrics represent an "industry-typical 50%" of a musical-work split, and offered apportionment tables for *Hurricane* and *Moon*. *Id.* at 23-27.

On January 16, 2026, Bennett served a rebuttal report. Miller Dec. Ex. 2 (Bennett Rebuttal Report). That report went further still. Bennett stated that he had "provided some background research relating to past settlements in the context of unauthorized sampling or interpolation of audio." *Id.* at 1. He then devoted pages 15 through 22 to purported "Case Studies on Apportionment," discussing reported settlement outcomes in *Ice Ice Baby*, *I'll Be Missing You*, and *Bitter Sweet Symphony*, and using those matters to suggest "prevailing industry outcomes." *Id.* at 15-22.

At deposition, Bennett admitted that musicologists are not lawyers, judges, or jurors, and that they do not make "legally binding statements" or "opine on matters of law directly." Miller Decl. Ex. 4 (Bennett Dep.) at 125:1-126:20. He further admitted that his report did not directly compare *Moon21* to MSD PT2, and that "MSD PT2 and Moon are more different than MSD PT2 and Hurricane." *Id.* at 127:12-128:3, 129:1-14. When asked about apportionment and the causes of commercial success, Bennett conceded: "I'm not a royalties expert. I'm not a

MARTORELL LAW APC

Litigation & Trial Counsel

**DEFENDANTS' MOTION IN LIMINE NO. 2**

marketing expert," and he testified that he did not know how one would measure "celebrity and branding" by percentages. *Id.* at 189:12-191:9.

Two days after that deposition, Bennett submitted a declaration in opposition to Defendants' motion for summary judgment. Miller Dec. Ex. 3 (Bennett Declaration.) There, for the first time, Bennett offered new opinions about the extrinsic test, filtration, a supposed prior-art search, the originality and protectability of MSD PT2, the supposed absence of prior art, and the claimed impossibility of independent creation. *Id.*, ¶¶ 5(a)-(e), 8-9. Those new opinions do not appear as disclosed opinions in his opening or rebuttal reports.

The Court then granted in part and denied in part Defendants' motion for summary judgment. ECF No. 232 (MSJ Order) at 9-13. The Court held that Plaintiff lacks standing to pursue infringement of the musical composition of MSD PT2, granted summary judgment as to *Moon* and the album version of *Hurricane*, and left only limited sound recording claims as to early versions or events such as *80 Degrees*, *HURRICANEV1*, *HURRICANELP1*, *80DEG18V*, and Listening Party 1. *Id.* at 9, 12-13.

## III.    LEGAL STANDARD

Relevant evidence is admissible unless otherwise barred, and irrelevant evidence is inadmissible. Fed. R. Evid. 402. Even relevant evidence may be excluded if its probative value is substantially outweighed by dangers including unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time. Fed. R. Evid. 403.

Expert testimony is admissible only if the proponent establishes that it will help the trier of fact, is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702. The district court serves as gatekeeper and must ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-93, 597 (1993).

**DEFENDANTS' MOTION IN LIMINE NO. 2**

Although an expert may address an ultimate factual issue, an expert may not instruct the jury on the law or offer legal conclusions. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016–17 (9th Cir. 2004).

Separately, Federal Rule of Civil Procedure 26 requires a retained expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).  Rule 26(e) is a duty to supplement and is not a device to add new opinions after the deadline or after the opposing party exposes weaknesses in the original report. *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009).  Rule 37(c)(1) "gives teeth" to Rule 26 by barring the use at trial of information or opinions not properly disclosed, unless the failure was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001).

## IV.   ARGUMENT

### A. The Court Should Exclude Bennett's Composition-Based Opinions Concerning Moon, the Album Version of Hurricane, and Other Matters No Longer in the Case

The Court's operative summary judgment order has sharply narrowed the case.  Plaintiff no longer has any composition claim at all, and no claim remains as to *Moon* or the album version of *Hurricane*.  ECF 232 at 9, 12-13.  Those holdings alone render large portions of Bennett's opinions irrelevant under Rules 401 and 402, and dangerously confusing under Rule 403.

Yet, Bennett's disclosed opinions devote substantial attention to exactly those dismissed matters.  He opines that *HURRICANE21* contains an interpolation of *MSD18*, that *Moon21* is "compositionally derived" from *HURRICANEV1*, that *Moon21* should be considered a derivative work of earlier *Hurricane* versions and of *MSD18*, and that *HURRICANE21* and *MOON21* share allegedly copied melodic material.  Miller Dec., Ex. 1 at 2, 15-16, 19-23.  Those opinions are directed to composition theories and later versions that are not going to the jury under the

4

**DEFENDANTS' MOTION IN LIMINE NO. 2**

MARTORELL LAW APC

Litigation & Trial Counsel

MARTORELL LAW APC

Litigation & Trial Counsel

Court's present order.

Allowing Plaintiff to present those opinions would create exactly the type of confusion Rule 403 is meant to prevent. The jury would hear extended testimony about dismissed claims, later works not presently at issue, vocal melodies and lyrics irrelevant to the remaining sound recording claims, and Bennett's "lineage" theory linking *Moon* and the final *Hurricane* back through intermediate versions.  That would invite a mini-trial on matters the Court has already removed from the case.

The motion should therefore be granted to exclude any Bennett opinion, testimony, demonstrative, or argument concerning: (1) alleged infringement of the musical composition of MSD PT2; (2) whether *Moon* is derived from, similar to, or infringes MSD PT2; and (3) whether the album version of *Hurricane* is compositionally derived from, similar to, or infringes MSD PT2.  At minimum, unless and until the scope of the case changes, Plaintiff should be barred from mentioning those opinions before the jury.

### B.  The Court Should Exclude Bennett's Legal Conclusions

Bennett repeatedly crosses the line from musicological analysis into legal instruction.  That is impermissible.

His opening report states that a co-writer of one *Hurricane* version "would also therefore be considered a co-writer of HURRICANE21, because (I understand that) under US copyright law it is not possible to attribute individual musical elements to individual co-writers in a Musical Work."  Miller Decl. Ex. 1 at 16 & n.6.  His opening report also states that *Moon21* "should be considered a derivative work" and that the asserted similarities strengthen "the inference of derivative work status under U.S. copyright law." *Id.* at 21-23.  His rebuttal report likewise invokes copyright-law concepts by discussing prior art and commonplace elements, asserting that "substantial" is a term of art in copyright law, and addressing legal authorship and ownership concepts while simultaneously disclaiming that musicology determines those legal issues.  Miller Dec., Ex. 2 at 9-13, 15.

DEFENDANTS' MOTION IN LIMINE NO. 2

Those are legal conclusions, not musicological opinions. Under Ninth Circuit law, an expert may not "give an opinion as to her legal conclusion." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). That rule applies squarely here.

Bennett's own deposition confirms the point. He testified that musicologists "don't provide legal advice," are "not lawyers," are "not judges," are "not jurors," and "don't make legally binding statements or opine on matters of law directly." Miller Dec., Ex. 4 at 125:18-126:20. He also acknowledged that whether *Moon21* is a derivative work of MSD PT2 "seems to me that that's a legal question." *Id.* at 133:17-134:11.

The Court should therefore exclude any Bennett testimony or argument that states, implies, or instructs the jury about legal consequences under copyright law, including any assertion concerning "derivative work status," co-authorship, co-writer rights, joint works, ownership consequences, or what copyright law purportedly permits or requires.

### C. The Court Should Exclude Bennett's Apportionment, Commercial Success, Publishing Split, and Other Case Settlement Opinions

Bennett's apportionment and settlement opinions are independently inadmissible under Rules 401, 403, and 702.

First, they are irrelevant to the claims left for trial. The remaining claims concern whether certain early recordings or performances recaptured the actual sounds fixed in MSD PT2. ECF 232 at 12-13. Bennett's discussions of publishing splits, industry-typical lyric allocations, the relative importance of lyrics, and settlement allocations in other famous music disputes do not help the jury determine that question.

Second, even aside from relevance, Bennett's own record shows that these opinions are outside his expertise and unsupported by a reliable method. His opening report includes apportionment tables and states that lyrics represent an

"industry-typical 50%" share of a musical work split based on what he "understand[s] from counsel." Miller Dec., Ex. 1 at 23-27. His rebuttal report then layers on anecdotal discussions of settlement outcomes in unrelated disputes, including *Ice Ice Baby*, *I'll Be Missing You*, and *Bitter Sweet Symphony*, supposedly to show "prevailing industry outcomes." Miller Dec., Ex. 2 at 15-22.

However, Bennett admitted at deposition that he is "not a royalties expert" and "not a marketing expert," and that he would not know how to measure things like "celebrity and branding" by percentage. Miller Dec., Ex. 4 at 189:12-191:9. He similarly testified that he would only comment on such matters qualitatively and did not know how one would generate quantitative measurements for them. *Id.* at 190:1-16.

That should end the matter. Rule 702 requires helpful, reliable expert testimony grounded in the witness's actual expertise and a reliable methodology. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589-93. Bennett's settlement anecdotes regarding other cases, publishing-split commentary, and commercial success allocation opinions do not satisfy that standard. They are also typical Rule 403 material. They would confuse the jury, invite side litigation over unrelated disputes, and encourage decision by analogy to reported settlements rather than by the evidence and instructions in this case.

Accordingly, the Court should exclude any Bennett opinion, testimony, exhibit, or argument concerning apportionment, commercial success, industry-typical publishing or lyric splits, settlement percentages or reallocations in other cases, or similar commentary outside the record.

### D. The Court Should Exclude the Opinions Bennett First Advanced in His February 6, 2026 Declaration Because They Were Not Properly Disclosed Under Rule 26

Bennett's February 6, 2026 declaration is an improper vehicle for new expert opinions. Rule 26 required Bennett's expert report to contain a complete statement

MARTORELL LAW APC
Litigation & Trial Counsel

of the opinions he would express. Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26(e) does not permit a party to use a later declaration to repair omissions or shore up a report after the other side has challenged it. *Luke*, 323 F. App'x at 500. When opinions are not properly disclosed, Rule 37(c)(1) bars their use unless the failure was substantially justified or harmless. *Yeti by Molly, Ltd.*, 259 F.3d at 1106-07.

That is exactly what happened here. In his post-report, post-deposition declaration, Bennett newly asserted that he applied the "extrinsic test" throughout, that he used "filtration," that he conducted a prior-art search, that MSD PT2 is original and protectable, that he found no prior art supporting commonplace treatment, and that the similarities could not have arisen by independent creation. Miller Dec., Ex. 3 ¶¶ 5(a)-(e), 8-9. Those are not mere clerical corrections. They are substantive opinions and methodological assertions aimed at plugging holes Defendants identified in summary judgment briefing.

The timing makes the prejudice even clearer. Bennett was deposed on February 4, 2026. Miller Dec., Ex. 4. Only after that deposition did Plaintiff file Bennett's declaration with these expanded opinions. Miller Dec., Ex. 3. Defendants therefore had no fair opportunity to examine him on those opinions in deposition.

The deposition record underscores that these were not simply opinions already fully disclosed in his reports. Bennett testified that he had done additional "metadata research" after his reports, and he discussed prior-art work in ways that post-dated the reports themselves. Miller Decl. Ex. 4 at 57:24-61:7. That is not permissible supplementation. It is exactly the sort of late-stage expansion that Rule 26 forbids and Rule 37(c)(1) polices.

The Court should therefore exclude at trial any Bennett opinion not properly disclosed in his opening or rebuttal reports, including the declaration opinions concerning the extrinsic test, filtration, prior art searching, originality, protectability, commonplace elements, and supposed absence of prior art. Plaintiff should not be permitted to bring those opinions to the jury through direct examination,

MARTORELL LAW APC

Litigation & Trial Counsel

8

demonstratives, or attorney argument.

**V.     CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter an order: (1) excluding any Joe Bennett testimony, opinion, exhibit, demonstrative, or argument concerning alleged infringement of the musical composition of MSD PT2, including any opinion concerning *Moon*, the album version of *Hurricane*, or any dismissed composition theory; (2) excluding any Joe Bennett legal conclusions or legal-opinion testimony, including any testimony concerning "derivative work status," co-authorship, co-writer rights, joint-work doctrine, ownership consequences, or what United States copyright law purportedly provides; (3) excluding any Joe Bennett opinion concerning apportionment, commercial success, publishing splits, industry-typical lyric shares, or settlement allocations or outcomes in other music disputes; and (4) excluding any Joe Bennett opinion not properly disclosed in his Rule 26 reports, including the new opinions first advanced in his February 6, 2026 declaration.

Defendants further request that Plaintiff, Plaintiff's counsel, and all witnesses be ordered not to refer to any such excluded matters in voir dire, opening statement, witness examination, argument, or exhibits without first obtaining leave outside the presence of the jury.

Dated:  March 6, 2026                                   **MARTORELL LAW APC**


                                                        By:   /s/ Evan Miller
                                                            Eduardo Martorell
                                                            Christopher A. Rosario
                                                            Evan Miller
                                                            *Attorneys for Defendants*

MARTORELL LAW APC

Litigation & Trial Counsel

**DEFENDANTS' MOTION IN LIMINE NO. 2**