**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Evan Miller, State Bar No. 336473
EMiller@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Telephone: (323) 840-1200
Facsimile: (323) 840-1300

Attorneys for Defendants Ye f/k/a KANYE OMARI WEST; GETTING OUT OUR DREAMS, INC.; GETTING OUT OUR DREAMS II, LLC; YEEZY LLC; YEEZY SUPPLY LLC; and OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTIST REVENUE ADVOCATES, LLC,<br><br>            Plaintiff,<br><br>vs.<br><br>KANYE OMARI WEST a/k/a "YE;" *et al.*,<br><br>            Defendants. | Case No.: 2:24-cv-06018 MWC (BFMx)<br><br>Hon. Michelle Williams Court<br><br>**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NUMBER 3 FOR PLAINTIFF TO POST SECURITY BOND**<br><br>FPTC Date:   April 3, 2026<br>Time:        1:30 p.m.<br>Courtroom:   6A<br><br>Action Filed:   July 17, 2024<br>Disc. Cutoff:   December 15, 2025<br>Trial:          April 20, 2026 |

MARTORELL LAW APC
Litigation & Trial Counsel

DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND

## PRE-TRIAL MOTION/MOTION IN LIMINE NUMBER 3

Defendants KANYE OMARI WEST a/k/a YE, GETTING OUT OUR DREAMS, INC. a/k/a G.O.O.D. MUSIC, GETTING OUT OUR DREAMS II, LLC, YEEZY LLC, YEEZY SUPPLY LLC, and OX PAHA INC. f/k/a MASCOTTE HOLDINGS, INC. ("Defendants") respectfully submit this Motion in Limine Number 1 for Plaintiff to Post Security Bond ("MIL No. 3").

### I.    INTRODUCTION

Plaintiff Artists Revenue Advocates, LLC ("Plaintiff" or "ARA") is a Delaware limited liability company.  Khalil Abdul Rahman, Sam Barsh, Dan Seef, and Josh Mease ("Artists") are ARA's non-voting Class B members; and, according to the deposition testimony of ARA Manager Britt Monts, ARA's sole voting Class A member is a "series" of Actio Capital L.P., a Delaware limited partnership.[1]

However, Plaintiff's Operating Agreement was produced with redactions obscuring the identity of the Class A member.  (*See* ECF 202-4.)  Defendants sought, but were denied, further responses concerning the identity of that member.  (*See* ECF 205 at 6 ("As Defendants provide only speculation regarding the relevance of the litigation funding, they are not entitled to that information."); *see also* ECF 202 at 6:18-20 ("the 'litigation funders' in this matter are the voting members of ARA.").)

In a copyright matter, the Court may issue an award of costs, including reasonable attorneys' fees, to the prevailing defendants.  *See* 17 U.S.C. § 505.  Given Plaintiff is part of a web of out-of-state entities formed to litigate this matter, however, there is significant risk that Defendants will not be able to collect any such award, even if the Court finds it entitled to the same after consideration of the merits.

[1] According to public filings, Actio Capital L.P. is one of several apparently interrelated "Actio Capital" entities, including: (1) Actio Capital Manager, LLC, a Delaware limited liability company (CRD No. 334372), with a principal place of business in Plano, Texas; (2)  Actio Capital L.P. – Series A, a Delaware limited partnership registered series (Private Fund ID No. 805-5750517258); (3) Actio Capital Investor Holdings, LLC, a Delaware limited liability company; (4) Actio Capital Holdings, LLC, a Delaware limited liability company; and (5) Actio Capital Genpar, LLC.  *See* Declaration of Christopher A. Rosario, filed herewith ("Rosario Decl.") Exh. 1.

1

DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND

For those reasons, Plaintiff respectfully requests that the Court exercise its inherent power and issue an order compelling Plaintiff to post a security bond, at or before the commencement of trial, in the amount of $1.9 million dollars.

## II.   STATEMENT OF FACTS

### A. The Artists Lured Defendants into Publishing *Hurricane* and *Moon* Before Purportedly Objecting to Defendants' Use of MSD PT2

From 2018 through 2021, the Artists shared on social media various versions of *Hurricane* (and *80 Degrees*).  (*See* ECF 232 at 2.)

During the clearance negotiations for MSD PT2, the Artists and their agents negotiated but intentionally delayed finalizing splits with Defendants.  (*See* ECF 228-1 at 17:12-18:10 (*Plaintiff's* Statement of Undisputed Facts in support of Defendants' MSJ) (Fact 32, disputed as incomplete but admitting the contents of the text messages) (On August 22, 2021, [Mr. Barsh]: . . . **But hopefully it won't be settled before it officially releases then they'll have absolutely no power.**  [Mr. Eames]: **Yeah, that's why Greg and I let it sit when no one is calling…we just want the record out**" (emphasis added)).)

On August 29, 2021, *Hurricane* and *Moon* were released on the album *Donda*. (ECF 1 ¶ 51.)  The Artists had registered their desired splits by September and have been collecting royalties since November 2021.  (*See* ECF 228-15-24 (Fact 28, disputed that the percentages reflect a fair contribution).)

The earliest purported objection to Defendants' use of MSD PT2 in *Hurricane* (or *80 Degrees*) and *Moon* is an email from Debra Wise sent on January 19, 2022, nearly five months after release of *Donda*.  *See* ECF 228-1 at 17:6-11 (Fact 31, Plaintiff referring to Meyer Decl. Exh. K); ECF 228-14 (Meyer Decl. Exh. K).

### B. ARA is an Out-of-State, Liability-Limiting Entity

ARA exists to litigate this case.  ARA was formed on July 11, 2024.  *See* Rosario Decl. Exh. 2.  Six days later, on July 17, 2024, ARA's Operating Agreement was purportedly executed.  (*See* ECF 202-4 (Amended and Restated Limited

DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND

Liability Company Agreement of Artist Revenue Advocates, LLC, dated July 17, 2024).)  *On that same day*, July 17, 2024, the Complaint was filed.  (ECF 1).

Plaintiff ARA is a Delaware limited liability company.  (ECF 1 ¶ 9.)  Under its Operating Agreement,[2] Class A members have voting rights while Class B members do not.  (*See* ECF 202-4 ¶ 3(a).)

The Class A member of ARA is apparently a "series" of Actio Capital L.P. a Delaware limited partnership.  (ECF 228-1 at 2:23-3:6 (Fact 2, undisputed by Plaintiff).)  The only "series" of Actio Capital L.P. registered with the Delaware Secretary of State is Actio Capital L.P. – Series A.  *See* Rosario Decl. Exh.3.

However, both Actio Capital L.P. and Actio Capital L.P. – Series A were not formed until August 2, 2024, nearly a month **after** this matter was initiated.  *See* Rosario Decl. Exhs. 4 & 5.

Notwithstanding, on March 23, 2025, Actio Capital Manager, LLC reported that Actio Capital L.P. – Series A controlled gross assets totaling $6.25 million.  *See* Rosario Decl. Exh. 1 at. 11 (Section 7.B.(1), ¶ 11).  Plaintiff and/or its Class A member appears to be funded by Risk Settlement Manager, LLC, a Delaware limited liability company, d/b/a Certum Group (CRD No.321759).[3]

## III.    ARGUMENT

Although "[t]here is no specific provision in the Federal Rules of Civil Procedure relating to security for costs," the Court has "inherent power to require

---

[2] According to records produced by third-party Docusign, Inc., the filename used for this document was "**Certum** Copyright Assignment Agreement. . . ."  Rosario Decl. Exh. 6 (emphasis added).  As noted in Footnote 3, *infra*, Risk Settlements Manager, LLC d/b/a **Certum Group** is an entity related to Actio Capital L.P.

[3] Individuals and entities apparently related to Actio Capital L.P. include: (1) Risk Settlements Manager, LLC, a Delaware limited liability company, d/b/a Certum Group (CRD No. 321759); (2) Risk Settlements Genpar, LLC, a Delaware limited liability company; (3) Joel Fineberg; (4) Fineberg Investments Ltd.; (5) David Diamond; (6) Kensington Gate LLC; (7) Flat Irons Law Group PLLC.  *See* Rosario Decl Exh. 1.  Mr. Fineberg is the co-founder and CEO of Certum Group and Fineberg Investments Ltd.  David Diamond is the managing director of Certum Group and Kensington Gate LLC.  At least eleven "Risk Settlements" entities are registered with the Delaware Secretary of State.

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**

MARTORELL LAW APC

Litigation & Trial Counsel

plaintiffs to post security for costs." *Simulnet East Associates v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994) ("We review for abuse of discretion the district court's order requiring security for fees and costs."). For the following reasons, the Court should exercise its inherent power and require Plaintiff to post before trial a security bond totaling $1.9 million.

### A. The Court May Order a Security Bond According to the Procedure of California Code of Civil Procedure section 1030

"Typically federal courts, either by rule or by case-to-case determination, follow the forum state's practice with regard to security for costs, as they did prior to the federal rules; this is especially common when a non-resident is involved." *Simulnet East Associates*, 37 F.3d at 574 (internal citation and quotation marks omitted). "Here, the forum state's practice is set forth in California Code of Civil Procedure section 1030, which requires a court to order a security bond when a defendant shows that: (1) the plaintiff resides out of state and (2) there is a reasonable possibility that the defendant will prevail on the merits." *Pittman ex rel. L.P. v. Avish Partnership*, 526 Fed.Appx. 591, 593 (9th Cir. 2013) (citing Code Civ. Proc. § 1030(a)-(c)).

### 1. Plaintiff ARA is a Foreign Corporation

A security bond may be required of a plaintiff who "resides out of the state, *or is a foreign corporation*." Code Civ. Proc. § 1030(a) (emphasis added). Both "foreign corporation" and "foreign limited liability company" are defined as entities formed under out-of-state laws. *See* Cal. Corp. Code §§ 171 ("'Foreign corporation' means any corporation other than a domestic corporation. . ."); 171.03; 17701.02 ("'Foreign limited liability company' means an unincorporated entity formed under the law of a jurisdiction other than this state and denominated by that law as a limited liability company.")

Thus, as a Delaware limited liability company, Plaintiff ARA is a foreign entity subject to posting a security bond under Code of Civil Procedure section 1030.

*MARTORELL LAW APC*
*Litigation & Trial Counsel*

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**

*See* Code Civ. Proc. § 1030(a); ECF 1 ¶ 9; ECF 228-1 at 2:17-22 (Fact 1).

Notwithstanding, per meet and confer efforts, Defendants anticipate Plaintiff will ignore the disjunctive "or" and argue that ARA does not "reside[] out of the state," because some of its Class B members may reside in California. Presumably, Defendants will rely on authorities concerning jurisdiction and venue to do so.

However, it is well-settled in California that "residence" "is a term of varying import and its statutory meaning depends upon the context and purpose of the statute in which it is used." *Myers v. Carter*, 178 Cal.App.2d 622, 625 (1960). California distinguishes the determination of "residence" for purposes of venue, jurisdiction, and security bonds under section 1030. *See, e.g., Duncan v. Kihagi*, 68 Cal.App.5th 519, 539 (2021) (citing cases for each type of determination).

Instead, in the context of California Code of Civil Procedure section 1030, California courts take a practical rather than legalistic view of "residence." *See id.* at 626 (explaining that the purpose of section 1030 "is best served by construing the phrase 'resides out of State' as referring to actual residence, rather than domicile.").

Thus, while counsel was unable to find any authorities examining the residence of an entity in the context of section 1030 (likely because that is not the language applicable to entities), it is reasonable to conclude that California courts would determine Plaintiff's residence according to its place of formation and principal place of business, rather than by the residence or domicile of its non-voting members (who would not be personally liable for any attorneys' fees award).

Therefore, even if the Court were to examine ARA's "residence" according to California courts' standards for individuals, the Court should also conclude that Plaintiff is an out-of-state resident because it is a Delaware limited liability company.

## 2. Defendants Have a Probability of Prevailing on the Merits

The Court has already ruled in favor of Defendants on (1) the musical composition MSD PT2 generally, (2) the sound recording MSD PT2 in *Moon*, and (3) the sound recording MSD PT2 in the album version of *Hurricane*. (ECF 232.)

5

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**

MARTORELL LAW APC
Litigation & Trial Counsel

As to the remaining pre-album versions of *Hurricane*, *see* ECF 232 at 13 ("80DEG18 and any other versions of *80 Degrees*, HURRICANEV1, HURRICANELP1, 80DEG18V, and Listening Party 1"),[4] Defendants have several meritorious defenses that have a reasonable possibility of prevailing.

For example, the statute of limitations bars suit concerning any alleged infringements before July 17, 2021. *See* 17 U.S.C. § 507(b); ECF 1 (filed July 17, 2024). Thus, claims as to 80DEG18, 80DEG18V, and any other versions of *80 Degrees* are time-barred. *See* ECF 228-18 (Initial Report of Joe Bennet) at 5 (indicating 80DEG18V was "believed to have been released on Instagram in 2018"), 6 n.1 (indicated 80DEG18 was created "sometime between 2018 and 2021"); *see also* ECF 1 ¶ 46 (recognizing that, by July 19, 2021, iterations of the song were called *Hurricane*).[5]

Second, Plaintiff (who stands in the shoes of the Artists) should be estopped from alleging infringement against Defendants. *See Interscope Records v. Time Warner, Inc.*, CV 10-1662 SVW (PJWx), 2010 WL 11505708, *11 (C.D. Cal. June 28, 2010) ("To assert a valid estoppel defense, Defendants must allege: (1) that Plaintiffs know of Defendants allegedly infringing conduct; (2) that Plaintiffs intended that their conduct would be acted on or acted in such a way that Defendants had a right to believe it was intended; (3) that Defendants were ignorant of the true facts (i.e. that the use was not permitted); and (4) that Defendants relied to their detriment on Plaintiff's conduct.") (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir. 1960)).

The first two elements of estoppel are shown by the Artists' sharing of the allegedly infringing works on social media, often tagging Defendant Ye's personal

---

[4] Plaintiff's expert acknowledges that 80DEG18 and HURRICANEV1were unreleased.

[5] The evidence (or lack thereof) will show that no versions of *80 Degrees* were created or released during the two days between the limitations period and the First Listening Party where *Hurricane* was performed.

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**

MARTORELL LAW APC
Litigation & Trial Counsel

account. The second and third element is demonstrated by internal text messages showing the Artists' plan to avoid settling splits before *Hurricane* and *Moon* released. The third element is further demonstrated by emails showing Defendants' understanding that the song had already been cleared (through the acknowledged deal with Khalil Abdul Rahman). The fourth element is shown by Defendants' production of a music video and official release of *Hurricane* and *Moon*.

Third, as argued in their Motion for Summary Judgment, the Artists granted Defendants an implied license to use MSD PT2 to create and exploit new works, like *Hurricane* and its early versions titled *80 Degrees*. *See* ECF 219-1 at 17:3-19:15. Though ultimately holding that "a reasonable jury could find that Defendants lacked an implied license to MSD PT2," the Court acknowledged that an implied license may arise outside the usual three factor test. *See* 232 at 9-11.

To be sure, the Ninth Circuit has recognized an implied license where the copyright holder (1) knew of the allegedly infringing uses, (2) did not object, and (3) collected royalties. *See Evox Productions, LLC v. Chrome Data Solutions, LP* ("*Evox Productions*")*,* No. 22-35113, 2023 WL 1879479, *3 (9th Cir. Feb. 10, 2023) (Mem.) (affirming district court's holding that an implied license was granted by "not objecting to … reports of … active sublicenses and accepting royalty payments for those sublicenses.") ("until November 2014, Chrome paid Evox for the Webnet sublicense, and Evox never objected. Webnet therefore had an implied license to use Evox images until November 2014."); *see also Evox Productions LLC v. Chrome Data Solutions, LP*, No. 3:16-cv-00057-JR, 2021 WL 7081390, *1 (D. Or. Nov. 27, 2021) (adopting magistrate's "finding that Plaintiff granted Defendant an implied license by not objecting to Defendant's reports of its active sublicenses and accepting royalty payments for those sublicenses.").

Finally, the evidence will show that Defendants were granted an express, oral license to use MSD PT2.

Based on these defenses, Defendants have a probability of success on the

7

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**

merits, justifying this Court's Order for a bond under CCP section 1030.

### 3. The Court May Require the Bond Posted in 14 Days

Per meet and confer efforts, Defendants anticipate that Plaintiff will argue that the Court may not require the bond be posted in less than thirty days. *See* Code Civ. Proc. § 1030(d) ("The plaintiff shall file the undertaking not later than 30 days after service of the court's order . . . or within a greater time allowed by the court.")

This argument fails for two reasons. First, the Court is not bound by the statute because it is acting pursuant to its own inherent authority—the statute is referred to for guidance. *See Simulnet East Associates*, 37 F.3d at 574. Second, *California Courts may diverge downwardly from the 30 day requirement. See Shannon v. Sims Service Center, Inc.*, 164 Cal.App.3d 907, 915 (1985) ("There is no statutory prohibition against the court shortening time for compliance on a showing of good cause, as was the case here.").

The *Shannon* court affirmed dismissal for failure to post a bond, where the trial court ordered plaintiff to post the bond *thirteen days later, at the date and time trial was set to begin. See Shannon*, 164 Cal.App.3d at 909, 917.

Therefore, at the hearing on this motion, the Court may order Plaintiff to post a bond fourteen days later, at the date and time trial is set to begin. Good cause exists for shortening the time to post a bond because: (1) this will ensure that Plaintiff has assets within the jurisdiction of this Court before substantial costs are incurred at trial and (2) the analysis of Defendants' likelihood of success on the merits and likelihood of collecting attorneys' fees has changed dramatically since the Court's February 26, 2027 Order, just eight days ago.

### B. The *Simulnet* Discretionary Factors Weigh in Favor of a Bond

To avoid depriving a plaintiff of access to the courts by a security bond requirement, the Court should balance:

(1) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the

8

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**

MARTORELL LAW APC

Litigation & Trial Counsel

security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, from the nondomiciliary plaintiff's perspective.  And just as factors such as the absence of attachable property within the district or the conduct of the parties bear on a defendant's legitimate need for the prophylaxis of a bond, so too, a plaintiff's ability to post surety for costs must weigh in the balance when the third figure of the equation is tabulated.

*Simulnet East Associates, supra*, 37 F.3d at 576 (quoting *Aggarawal v. Ponce School of Medicine*, 745 F.2d 723, 727-728 (1st Cir. 1984)).

As explained in Section III.A.2, *supra*, Defendants are likely to prevail on the merits of their several affirmative defenses.  The statute of limitations is an absolute bar to any alleged infringements occurring before July 17, 2021—i.e. all instances of *80 Degrees*, including 80DEG18 and 80DEG18V.  As to the remaining alleged infringements (HURRICANEV1, Listening Party 1, and HURRICANELP1 [the audio ripped from Listening Party 1]), (1) HURRICANEV1 was never released or publicly performed, and (2) Defendants' evidence fits squarely into (a) the Ninth Circuit's established test for estoppel and (b) into a fact pattern recognized by the Ninth Circuit to establish an implied license.  While the Court's Order on Defendants' MSJ makes no explicit ruling regarding Listening Party 2, Plaintiff's expert and the Artists admit that the sound recording MSD PT2 did not appear in that version of *Hurricane*.

From the Defendants' perspective, a bond is reasonable because: (1) Plaintiff is an out-of-state entity with no known assets in California; (2) Plaintiff's Class A member and funding sources have been actively hidden throughout this case; and (3) given Defendants' complete success on the sound recording claim(s),[6] Defendants

---

[6] While styled as a single claim for infringement, the Complaint alleges infringement of two distinct copyrights—the sound recording and musical composition MSD PT2.  These broad categories are further multiplied by Plaintiff's inclusion of alleged infringements via multiple versions of *Hurricane* and *Moon* at multiple times.  Defendants have already prevailed on most.

MARTORELL LAW APC

Litigation & Trial Counsel

9

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**

are likely to recover attorney's fees. *Cf. Shannon*, 164 Cal.App.3d at 913 (Section 1030 "is intended to secure costs in light of the difficulty of enforcing a judgment for costs against a person who is not within the court's jurisdiction.").

From the Plaintiff's perspective, a bond is not unreasonable because: (1) public filings indicate that ARA's supposed Class A member controls assets of $6.25 million; and, (2) Plaintiff has successfully avoided positively identifying its Class A member and funders, thereby concealing the ability to pay any attorneys' fees award.

Thus, each of the *Simulnet* factors weigh in favor of requiring a bond.

### C. The Bond Should Be in the Amount of $1.9 Million to Cover Defendants' Incurred and Anticipated Costs (i.e Attorneys' Fees)

A prevailing defendant may recover its costs, including reasonable attorneys fees. *See* 17 U.S.C. 505. Here, Defendants have already incurred costs and attorneys fees totaling approximately $1.15 million. *See* Rosario Decl. ¶ 10. Defendants expect to incur additional costs and attorneys fees through trial and post-trial briefing totaling approximately $750,000. *See id*.

The rates of Defendants' counsel are reasonable, and significantly less than the rates the Court found reasonable for Plaintiff's counsel in this matter. (*See* Rosario Decl. ¶ 10; *see also* ECF 111 at 5; ECF 138 at 5 (affirming rates of $1,000-1,850).) The hours already billed by Defendants' counsel and the hours expected to be billed through trial and post-trial briefing are also reasonable.

Therefore, the Court should order the bond in the amount of $1.9 million.

### IV. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' MIL No. 1 and order Plaintiff to post before the beginning of trial on April 20, 2026, a bond of $1.9 million in any manner allowed by the Civil Local Rules 65-2 through 65-10. Otherwise, this matter may be dismissed for failure to comply.

///

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**

MARTORELL LAW APC
Litigation & Trial Counsel

Dated:  March 6, 2026

**MARTORELL LAW APC**


By:   /s/ Christopher A. Rosario
        Eduardo Martorell
        Christopher A. Rosario
        Evan Miller
        *Attorneys for Defendants*

MARTORELL LAW APC

Litigation & Trial Counsel

11

**DEFENDANTS' PRE-TRIAL MOTION/ MOTION IN LIMINE NO. 3 FOR SECURITY BOND**