# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIST REVENUE ADVOCATES, LLC, | Case No.: 2:24-cv-06018 MWC (BFMx) |
| Plaintiff, | Hon. Michelle Williams Court |
| | **[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER** |
| vs. | |
| KANYE OMARI WEST a/k/a "YE;" *et al.*, | FPTC Date:        April 3, 2026 |
| | Time:             1:30 p.m. |
| Defendants. | Courtroom:       6A |
| | Action Filed:     July 17, 2024 |
| | Disc. Cutoff:     December 15, 2025 |
| | Trial:            April 20, 2026 |

1

# **TABLE OF CONTENTS**

1.   THE PARTIES AND PLEADINGS ................................................................. 3

2.   JURISDICTION ........................................................................................... 6

3.   TRIAL DURATION ..................................................................................... 6

4.   JURY TRIAL ............................................................................................... 6

5.   ADMITTED FACTS ..................................................................................... 6

6.   STIPULATED FACTS .................................................................................. 7

7.   PARTIES' CLAIMS AND DEFENSES ........................................................ 8

8.   REMAINING TRIABLE ISSUES .............................................................. 21

9.   DISCOVERY ............................................................................................. 22

10.   DISCLOSURES AND EXHIBIT LIST ....................................................... 24

11.   WITNESS LISTS ....................................................................................... 24

12.   MOTIONS IN LIMINE .............................................................................. 24

13.   BIFURCATION ......................................................................................... 26

14.   ADMISSIONS ........................................................................................... 28

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

## 1.    THE PARTIES AND PLEADINGS

### A. Parties

"Plaintiff" is Artist Revenue Advocates, LLC.

"Defendants" are Ye f/k/a Kanye Omari West; Yeezy LLC; Yeezy Supply LLC; Getting Out Our Dreams, Inc.; Getting Out our Dreams II, LLC; and Ox Paha Inc. f/k/a Mascotte Holdings, Inc.

"Stem Player Defendants" are Kano Computing Limited; Alexander Nelson Klein; Ashdust LLP; and, Stemplayer Ltd. An entry of default was entered against Ashdust LLP. Dkt. 34. Plaintiff's application for default judgment as to Kano Computing Limited and Alexander Nelson Klein was granted. Dkt. 78 (with Plaintiff to file an application within 10 court dates following adjudication or settlement).

"UMG Defendants" are UMG Recordings, Inc.; Universal Music Corp.; and Universal Music Group, Inc. The UMG Defendants are dismissed from the case. *See* Dkt. 217.

### B. Plaintiff's Complaint

#### Plaintiff's Proposed Language

On July 17, 2024, Plaintiff filed the Complaint (ECF 1), alleging that Defendants infringed the sound recording and musical composition MSD PT2 via the songs *Hurricane* and *Moon*. *See id.* ¶¶ 1, 10-26. The alleged infringements included the creation of derivative works, performance, distribution, and use of *Hurricane* and *Moon* during four listening parties, *id.* ¶¶ 46-49; in the album *Donda*, *id.* ¶ 51; in the promotion of *Hurricane* and *Moon* in connection with the sale of merchandise such as at the listening parties and through Yeezy x GAP collaboration, *id.* ¶¶ 58-66, and, in the Donda Stem Player, *id.* ¶¶ 71-74.

#### Defendants' Proposed Language

3

On July 17, 2024, Plaintiff filed the Complaint (ECF 1), alleging that 13 defendants infringed the sound recording and musical composition MSD PT2 via the songs *Hurricane* and *Moon*.  *See id.* ¶¶ 1, 10-26.  The alleged infringements included the performance, distribution, and use of *Hurricane* and *Moon* during four listening parties, *id.* ¶¶ 46-49; in the album *Donda*, *id.* ¶ 51; *id.* ¶¶ 58-66, and,  in the Donda Stem Player, *id.* at ¶¶ 71-74.

On March 31, 2025, the Court granted Plaintiff's request to apply for default judgment against Mr. Klein and Kano Computing Limited within 10 court days following adjudication or settlement of all answering defendants.  ECF 78.

On January 9, 2026, Plaintiff voluntarily dismissed the UMG Defendants as follows:

1. *without prejudice* as against UMG Recordings, Inc.;

2. *with prejudice* as against Universal Music Corp.; and,

3. *with prejudice* as against Universal Music Group, Inc.

ECF 217 at 2:2-9.

On February 26, 2026, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment.  ECF 232 ("Order").  The Order (1) granted summary judgment as to the musical composition MSD PT2 on the grounds that Plaintiff lacked standing, (2) granted summary judgment as to *Moon* and the album versions of *Hurricane* on the grounds that it did not contain the sound recording MSD PT2, (3) granted summary judgment as to Plaintiff's claims for attorneys' fees, and (4) denied summary judgment as to "80DEG18 and any other versions of *80 Degrees*, HURRICANEV1, HURRICANELP1, 80DEG18V, and Listening Party 1."  *Id.* at 9, 13-14, 14 n.4.

**C. Defendants' Answer**

**<u>Plaintiff's Proposed Language</u>**

The Court struck many of the Defendants' initial affirmative defenses without leave to amend, including: (1) Failure to State a Claim; (2) Lack of Ownership; (3)

Invalid and/or Unenforceable Registration; (4) No Valid Copyrighted Work; (5) Ineffective Transfer of Rights; (6) Not Substantially Similar; (7) Not Original to Plaintiff; (8) Not Protectable; (9) Independent Creation; (10) Lack of Originality; (11) Otherwise Not Protected by Copyright; (12) Failure to Comply with Various Copyright Act Formalities; (13) Standing; (14) Deficient Copyright Applications; (15) Public Domain; (16) Innocent Infringement; (17) Extraterritorial Damages; (18) Untimely Registration; (19) Failure to Mitigate Damages; (20) Speculative Damages; (21) Responsibility of Third Parties; (22) Fair Use; (23) Plaintiff Not Responsible for Origin of Copyright; and (24) "Unknown Affirmative Defenses." Dkt. 92.

The Defendants have also withdrawn several of the affirmative defenses in their Amended Answer, including: Laches, De Minimis/Fair Use, Mistake/Fraud, First Sale Doctrine, Merger Doctrine, and Abandonment.

### Defendants' Proposed Language

On November 25, 2024, Defendants filed an Answer.  ECF 64.  The Court granted Plaintiff's Motion to Strike affirmative defenses asserted by Defendants, on May 16, 2025.  ECF 92

On May 23, 2025 Defendants filed a First Amended Answer.  ECF 95. Defendants alleged as affirmative defenses: (1) Laches, (2) Consent, Waiver, Acquiescence, and Estoppel, (3) Unclean Hands, (4) Statute of Limitations, (5) License, (6) Misuse of Copyright, (7) De Minimis/Fair Use, (8) Mistake; Fraud, (9) First Sale Doctrine, (10) Abandonment, (11) Scenes a Faire Doctrine, (11) Merger Doctrine. *Id.*

Defendants have withdrawn the affirmative defenses of: Laches, Mistake/Fraud, Fair Use, and First Sale Doctrine.  Contrary to Plaintiff's proposed language, Defendants have not withdrawn the De Minimis Doctrine (which is more properly part of Plaintiff's case in chief, but Defendants reserve the right to assert as an affirmative defense), Merger Doctrine, or Abandonment.

## 2.    JURISDICTION

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. § 1331 and 1338(a), and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391 and 1400(a).

## 3.    TRIAL DURATION

Plaintiff: The trial is estimated to take four (4) days. Defendants' request for enlargement of the trial to eight (8) days is in violation of the Court's scheduling order which provided an estimated four (4) days (Dkt. 71). As stated in the Court's order, "[a]ny requests for additional trial days must be made at the time of the deadline for Trial Filings (First Round). The Court will make a final determination on the days needed for trial at the FPTC." Dkt. 71 at 3 n.1.

Defendants: Defendants estimate trial will take eight (8) days.

## 4.    JURY TRIAL

The trial is to be a jury trial.

Plaintiff and Defendant shall serve and file "Agreed Upon Set of Jury Instructions and Verdict Forms" as well as the "Joint Statement re Disputed Instructions, Verdicts, etc." by no later than March 20, 2026.

## 5.    ADMITTED FACTS

The following facts were admitted by Plaintiff in response to Defendants' Requests for Admission ("RFA") and require no proof:

- Plaintiff's Supplemental Response to Defendants' RFA 14: "HURRICANE includes musical elements not found in the WORK."
- Plaintiff's Supplemental Response to Defendants' RFA 15: "HURRICANE includes the use of instruments not used in the WORK."

- Plaintiff's Supplemental Response to Defendants' RFA 16: "HURRICANE includes lyrics not found in the WORK."
- Plaintiff's Supplemental Response to Defendants' RFA 20: "MOON includes musical elements not found in the WORK."
- Plaintiff's Supplemental Response to Defendants' RFA 21: "MOON includes the use of instruments not used in the WORK."
- Plaintiff's Supplemental Response to Defendants' RFA 22: "MOON includes lyrics not found in the WORK."
- Plaintiff's Supplemental Response to Defendants' RFA 30: "the effective date of registration with the United States Copyright Office of the sound recording of the WORK is March 8, 2024."
- Plaintiff's Supplemental Response to Defendants' RFA 30: "the effective date of registration with the United States Copyright Office of the musical composition of the WORK is April 18, 2024."

## 6.   **STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

1.   Plaintiff Artist Revenue Advocates, LLC ("ARA") is a Delaware limited liability company.

2.   The Artists joined ARA in 2024 to, in part, shield their names from the public while conducting this lawsuit.

3.   The Artists collaborated amongst themselves on hundreds of jam sessions.

4.   On March 14, 2018, the Artists collectively created the MSD PT2 musical composition during a jam session at Mr. Rahman's studio.

5.   By March 20, 2018, Mr. Rahman created the MSD PT2 sound recording following the jam session.

6.   The Artists were credited on *Hurricane*.

7.    The Artist Mr. Rahman was credited on *Moon*.

8.    The earliest versions of *Hurricane* contain the sound recording of MSD PT2, including the version played at the *Donda* listening party in Atlanta, Georgia, on July 22, 2021.

## 7.    PARTIES' CLAIMS AND DEFENSES

**Plaintiff's Claims:**

    **a. Plaintiff plans to pursue the following claims against Defendant:**

- <u>Claim 1</u>: Plaintiff has one claim for copyright infringement. Defendants contend it is five separate claims of copyright infringement. The parties dispute the elements of the claim.

    **Defendants' Position:**

Following the Court's February 26, 2026, Order (ECF 232), there are six infringement claims that remain unresolved:

<u>Claim 1</u>: Defendants infringed the sound recording MSD PT2 in 80DEG18, in violation of 17 U.S.C. § 501;

<u>Claim 2</u>: Defendants infringed the sound recording MSD PT2 in 80DEG18V, in violation of 17 U.S.C. § 501;

<u>Claim 3</u>: Defendants infringed the sound recording MSD PT2 in any other versions of *80 Degrees*, in violation of 17 U.S.C. § 501;

<u>Claim 4</u>: Defendants infringed the sound recording MSD PT2 in HURRICANEV1, in violation of 17 U.S.C. § 501;

<u>Claim 5</u>: Defendants infringed the sound recording MSD PT2 in Listening Party 1, in violation of 17 U.S.C. § 501;

<u>Claim 6</u>: Defendants infringed the sound recording MSD PT2 in HURRICANEPL1, in violation of 17 U.S.C. § 501.

    **b. The elements required to establish Plaintiff's claims are:**

- <u>Claim 1</u>: Copyright Infringement

***ARA's Position:***

For a claim of copyright infringement, a plaintiff must prove (1) that it owns a valid copyright in a work; and (2) that the defendant copied protected aspects of the work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir.), *cert. denied sub nom Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 141 S. Ct. 453, 208 L. Ed. 2d 145 (2020), *reh'g denied*, 141 S. Ct. 946, 208 L. Ed. 2d 482 (2020). To qualify for copyright protection and satisfy the first element, "a work must be original to the author." *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). To satisfy the second element, the plaintiff may prove copying "'circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying.'" *Skidmore*, 952 F.3d at 1064 (*quoting Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)). The Ninth Circuit employs a two-part test for determining whether the defendant's work is substantially similar to the plaintiff's work. *Id*. The first part is the extrinsic test, which compares objective similarities of specific expressive elements in the works. *Id*. Because infringement liability arises only where there is substantial similarity in protectable expression, "'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.'" *Id*. (*quoting Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). The second part is the intrinsic test, evaluates similarity of expression "'from the standpoint of the ordinary reasonable observer, with no expert assistance.'" *Id*. (*quoting Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008)).

A copyright plaintiff also must show a causal nexus between the infringement and the gross revenue of the infringer that it seeks in damages. *E.g., Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 712, *as amended on den. of reh'g and reh'g en banc* (9th Cir. 2004) (copyright plaintiff seeking to recover the defendant's profits has a "statutory obligation to demonstrate a causal nexus between the infringement and the

profits sought"); *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002) (party must establish causal nexus between the infringement and the gross revenue).

The infringer bears the burden of apportioning the profits of the infringer that are attributable to the infringement and those attributable to factors in addition to use of plaintiff's work. *Frank Music Corp*., 772 F.2d 505 at 518 (9th Cir. 1985) (*citing Sheldon v. Metro-Goldwyn Pictures, Inc*., 309 U.S. 390, 405–06, 60 S. Ct. 681, 686–87, 84 L. Ed. 825 (1939) (*Sheldon II*); and *Universal Pictures Co. v. Harold Lloyd Corp*., 162 F.2d 354, 377 (9th Cir. 1947)).

### *Defendants' Position:*

To prove each instance of infringement, Plaintiff must prove that:

1. Plaintiff Artist Revenue Advocates, LLC ("Plaintiff" or "ARA") is the owner of a valid copyright;

   a. ARA's work is original;

   b. ARA received a valid assignment of the copyright;

2. Defendants Ye; Getting Out Our Dreams, Inc. a/k/a G.O.O.D. Music; Getting Out Our Dreams II, LLC; Yeezy LLC; Yeezy Supply LLC; and, Ox Paha Inc. f/k/a Mascotte Holdings, Inc. actually copied original expression from the copyrighted work; and,

   a. Defendants' actual copying is more than de minimis.

*See* Ninth Circuit Manual of Model Civil Jury Instructions §§ 17.5, 17.6 (Sept. 2025); *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 877 (9th Cir. 2016) ("to establish its infringement claim, Plaintiff must show that the copying was greater than de minimis."); *id.* at 883 ("A straightforward reading of the third sentence in § 114(b) reveals . . . : A new recording that mimics the copyrighted recording is not an infringement, even if the mimicking is very well done, so long as there was no actual copying."); *id.* at 887 ("the 'de minimis' exception applies to actions alleging infringement of a copyright to sound recordings.").

### c. Key Evidence Plaintiff Relies on for Each Claim

***ARA's Position:***

- Claim 1:

Key evidence establishing that Plaintiff owns and Defendants infringed the copyright in MSD PT2 includes: Evidence from the Artists (testimony) of creation of MSD PT2 and copyright registrations of same, the Assignment of the composition interests of Mease, Barsh and Seeff to Plaintiff, Defendants' admissions that early versions of *Hurricane* included the actual sound recording of MSD PT2 (including versions of *80 Degrees* and the version of *Hurricane* played at the listening party in Atlanta, Georgia on July 22, 2021), that *Hurricane* was based on MSD PT2, and that *Moon* was based on *Hurricane*. The expert opinions of Joe Bennett and Judith Finnell on musical similarity, and the testimony of the four Artists, Greg Johnson, Britton Monts, and Michael Eames, in addition to Ye.

Key evidence establishing damages includes financial data produced by Defendants, UMG, GAP, Bravado and Balenciaga, testimony of Ye and Joseph Karre, and the expert opinions of Kevin Greene, James Jenkins, Joe Bennett, and Doug Bania.

In response to Defendants' positions below, the testimony of the four Artists, Greg Johnson, Britton Monts, Michael Eames, and Defendants will show that Defendants admitted to having access to MSD PT2, used the sound recording wholesale in early versions of *Hurricane*, and removed the sound recording only to replace it with their own reply when they learned they had no permission from the Artists to use MSD PT2 so to avoid having to pay them fair compensation. Despite the Artists' urging beginning in 2020, Defendants refused to make a fair offer that would reflect the value of MSD PT2. The Artists continued to negotiate through their counsel and representatives but to no avail. The parties never reached agreement and Defendants effectively disappeared after profiting from the use of MSD PT2 and collecting accolades and awards.

11

Further, having been the lead song on the *Donda* album that was leaked and teased for over three years since 2018, albeit as *80 Degrees*[1], *Hurricane* was the most anticipated and streamed song. Of the 32 tracks on the *Donda* album, *Hurricane* was the lead single upon release. It garnered Ye a Grammy for Best Melodic Rap Performance, which helped Ye tie Jay-Z for the most Grammy wins by a rapper. Its first publication dates back to September 2018 when Ye previewed the track by posting the video of himself singing *80 Degrees* over the MSD PT2 sound recording, sparking interest as his next album entitled *Yandhi* was scheduled to release a couple weeks later. Because Ye scrapped and never released *Yandhi*, various versions of *80 Degrees* and *Hurricane* continued to leak, building further excitement and anticipation as Ye announced the release of the *Donda* album in 2021.

***Defendants' Position*:**

**Claim 1 (80DEG18).** The purported infringement is beyond the three-year statute of limitations. The Complaint was filed on July 17, 2024. Plaintiff concedes that 80DEG18 was ripped from a Youtube fan leak. Plaintiff made no allegations in the Complaint concerning *80 Degrees*. Notwithstanding, text messages and emails show that the Artists lured Defendants into creating and releasing *Hurricane* and *Moon* before voicing an objection. Social media posts and text messages show that the Artists were aware of the allegedly infringing uses. All Artists collected royalties for *Hurricane* and *Moon* through their publishers. Testimony will show that Greg Johnson and Khalil Abdul Rahman granted an express oral license to use MSD PT2 and/or an implied license; and, that Defendants reasonably relied on those oral representations and believed that the sample was cleared. Defendants relied on the Artists' representations and social media posts to their detriment. Finally, ARA's

---

[1] Defendants explain that the *Hurricane* and *80 Degrees* "titles are thematically linked in that a hurricane can only form when temperatures reach 80 degrees Fahrenheit." (Dkt. 219-1, pg. 6).

supposed Class A member did not exist at the time this action was filed and the relevant agreements were signed.

**Claim 2 (80DEG18V).**  The purported infringement is beyond the three-year statute of limitations.  The Complaint was filed on July 17, 2024.  Social media posts show that 80DEG18V was released in 2018.  Plaintiff made no allegations in the Complaint concerning *80 Degrees*.  Notwithstanding, text messages and emails show that the Artists lured Defendants into creating and releasing *Hurricane* and *Moon* before voicing an objection.  Social media posts and text messages show that the Artists were aware of the allegedly infringing uses.  All Artists collected royalties for *Hurricane* and *Moon* through their publishers.  Testimony will show that Greg Johnson and Khalil Abdul Rahman granted an express oral license to use MSD PT2 and/or an implied license; and, that Defendants reasonably relied on those oral representations and believed that the sample was cleared.  Defendants relied on the Artists representations and social media posts to their detriment.  Finally, ARA's supposed Class A member did not exist at the time this action was filed and the relevant agreements were signed.

**Claim 3 (any other versions of *80 Degrees*).**  The purported infringement is beyond the three-year statute of limitations.  The Complaint was filed on July 17, 2024.  Plaintiff made no allegations in the Complaint concerning *80 Degrees*.  Plaintiff has not indicated what other versions of *80 Degrees* it intends to rely on.  Notwithstanding, text messages show that the track had evolved into *Hurricane* by July 29, 2020.  Text messages and emails show that the Artists lured Defendants into creating and releasing *Hurricane* and *Moon* before voicing an objection.  Social media posts and text messages show that the Artists were aware of the allegedly infringing uses.  All Artists collected royalties for *Hurricane* and *Moon* through their publishers.  Testimony will show that Greg Johnson and Khalil Abdul Rahman granted an express oral license to use MSD PT2 and/or an implied license; and, that Defendants reasonably relied on those oral representations and believed that the sample was

cleared.  Defendants relied on the Artists representations and social media posts to their detriment.  Finally, ARA's supposed Class A member did not exist at the time this action was filed and the relevant agreements were signed.

**Claim 4 (HURRICANEV1).**  Plaintiff concedes that HURRICANEV1 is an unreleased audio file.  Text messages and emails show that the Artists lured Defendants into creating and releasing *Hurricane* and *Moon* before voicing an objection.  Social media posts and text messages show that the Artists were aware of the allegedly infringing uses.  All Artists collected royalties for *Hurricane* and *Moon* through their publishers.  Testimony will show that Greg Johnson and Khalil Abdul Rahman granted an express oral license to use MSD PT2 and/or an implied license; and, that Defendants reasonably relied on those oral representations and believed that the sample was cleared.  Defendants relied on the Artists representations and social media posts to their detriment.  Finally, ARA's supposed Class A member did not exist at the time this action was filed and the relevant agreements were signed.

**Claim 5 (Listening Party 1).**  Plaintiff's experts do not opine on causation between Listening Party 1 and any damages.  Attributable costs render profits nonexistent.  Text messages and emails show that the Artists lured Defendants into creating and releasing *Hurricane* and *Moon* before voicing an objection.  Social media posts and text messages show that the Artists were aware of the allegedly infringing uses.  All Artists collected royalties for *Hurricane* and *Moon* through their publishers.  Testimony will show that Greg Johnson and Khalil Abdul Rahman granted an express oral license to use MSD PT2 and/or an implied license; and, that Defendants reasonably relied on those oral representations and believed that the sample was cleared.  Defendants relied on the Artists representations and social media posts to their detriment.  Finally, ARA's supposed Class A member did not exist at the time this action was filed and the relevant agreements were signed.

**Claim 6 (HURRICANELP1).**  Plaintiff's experts do not opine on causation between HURRICANELP1 and any damages.  Attributable costs render profits

14

nonexistent. HURRICANELP1 is a copy made by Plaintiffs ripped from Listening Party 1. Text messages and emails show that the Artists lured Defendants into creating and releasing *Hurricane* and *Moon* before voicing an objection. Social media posts and text messages show that the Artists were aware of the allegedly infringing uses. All Artists collected royalties for *Hurricane* and *Moon* through their publishers. Testimony will show that Greg Johnson and Khalil Abdul Rahman granted an express oral license to use MSD PT2 and/or an implied license; and, that Defendants reasonably relied on those oral representations and believed that the sample was cleared. Defendants relied on the Artists representations and social media posts to their detriment. Finally, ARA's supposed Class A member did not exist at the time this action was filed and the relevant agreements were signed.

**Defendant's Affirmative Defenses:**

*Plaintiff's Position:*

Plaintiff disagrees that Defendants' defense of "statute of limitations" is relevant as Plaintiff is only pursuing infringement claims within the statute of limitations.

*Defendants' Position***:**

a. **Defendant plans to pursue the following affirmative defenses:**

- Defense 1: Statute of Limitations
- Defense 2: Estoppel/Waiver/Consent
- Defense 3: Express Oral License
- Defense 4: Implied License
- Defense 5: Copyright Misuse
- Defense 6: Scenes a faire
- Defense 7: Unclean Hands

If the Court determines that the De Minimis Doctrine should not be tried by the jury as part of its determination of copying, then the De Minimis defense should also be tried on briefing after the jury verdict. *Cf. Corbin v. Time Warner Entertainment-*

15

*Advance/Newhouse Partnership*, 821 F.3d 1069, 1079-1080 (9th Cir. 2016) ("We have followed the Supreme Court's lead, similarly referring to the *de minimis* doctrine as a 'rule' or '[d]octrine' and not as an affirmative defense.").

**b. The elements required to establish Defendant's affirmative defenses are:**

- **Defense 1:** Statute of Limitations.  The parties dispute the elements of this affirmative defense.

*ARA's Position***:**

The applicable statute of limitations is three years for copyright infringement. 17 U.S.C. § 507. The discovery rule applies to copyright infringement claims. *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1238 (9th Cir. 2022) ("the discovery rule of accrual of copyright claims is alive and well").

*Defendants' Position:*

Defendants must prove by a preponderance of the evidence:

1. This action was commenced more than three years after the claim for infringement accrued.

*See* 17 U.S.C. § 507(b).  The claim "accrues when the copyright holder knows or reasonably should have known that an infringement occurred."  *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1238 (9th Cir. 2022).

- **Defense 2:** Estoppel/Waiver/Consent.  The parties dispute the elements of this affirmative defense.

*ARA's Position***:**

To prove waiver, Defendants must show that there was clear, decisive and unequivocal conduct by the Artists which indicated a purpose to waive the legal rights involved. *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-603 (9th Cir. 1995).

To prove acquiescence, Defendants must show that the Artists, by affirmative word or deed, conveyed their consent to Defendants with respect to the use of their intellectual property. "Estoppel by acquiescence includes the two elements of laches

... and adds (3) affirmative conduct inducing the belief that [the plaintiff] has abandoned its claim against the alleged infringer, and (4) detrimental reliance by infringer." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 956 (N.D. Cal. 2015) (*quoting E & J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994)).

To prevail on an estoppel defense, Defendants must prove (1) that the Artists knew of Defendants' infringing conduct; (2) that the Artists either intended that Defendants rely on their conduct or acted in a way that gave Defendants the right to believe the Artistsintended them to rely; (3) that Defendants were ignorant of the true facts; and (4) that Defendants relied on the Artists' conduct to Defendants' detriment. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, No. CV143466MMMJPRX, 2015 WL 12752881, at *6 (C.D. Cal. Aug. 27, 2015).

***Defendants' Position*:**

Defendants must prove by a preponderance of the evidence:

1. The copyright authors knew of defendants' allegedly infringing conduct;

2. The copyright authors intended that their conduct (demonstrating assent to and celebration of the use of the Work) would be acted on or acted in such a way that defendants had a right to believe it was intended;

3. That defendants were ignorant of the true facts (i.e. that the use was not permitted); and,

4. That defendants relied to their detriment on the copyright authors' conduct. *See Interscope Records v. Time Warner, Inc.*, No. CV 10-1662 SVW (PJWx), 2010 WL 505708, *11 (C.D. Cal. June 28, 2010) (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).

- **Defense 3**: <u>Express Oral License.</u> The parties dispute the elements of this defense.

***ARA's Position*:**

The elements for an express license are laid out in the Ninth Circuit's model jury instructions:

To show the existence of an express license, the defendant has the burden of proving that they received an express license to use the plaintiff's copyrighted work.

If the defendant proves this, the burden shifts to the plaintiff to show that the defendant's use of the plaintiff's copyrighted work exceeded the scope of the license. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.27 (Dec. 2023).

**Defendants' Position:**

Defendants must prove by a preponderance of the evidence:

1. Defendants received from the Artists or their agents an express oral license to copy, distribute, or use MSD PT2;

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.27 (Dec. 2023).

- **Defense 4**: Implied License.  The parties dispute the elements of this defense.

**ARA's Position:**

An implied license is granted when (1) a person (the licensee) requests the creation of work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work. *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) (internal quotations omitted). Implied licenses are found "only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).

**Defendants' Position:**

Defendants must prove by a preponderance of the evidence:

1. The Artists were aware of the allegedly infringing uses;

2. The Artists did not object to the allegedly infringing uses; and,

3. The Artists accepted royalties arising from the allegedly infringing uses.

*See* Comments of Ninth Circuit Manual of Model Civil Jury Instructions § 17.26 (Dec. 2023 ("Although this model instruction accurately captures one recurring set of implied license facts, implied licenses arise in a wide variety of circumstances, including many. . . for which the elements of an implied licenses defense will be different."); *Evox Productions, LLC v. Chrome Data Solutions, LP*, No. 22-35113, 2023 WL 18749479, *3 (9th Cir. Feb. 10, 2023) (Mem.) (affirming district court's holding that an implied license was granted by "not objecting to … reports of … active sublicenses and accepting royalty payments for those sublicenses.").

As argued in more detail concerning the proposed jury instruction for Implied License, the three elements accepted by the Ninth Circuit in *Evox Productions* and the three elements of the *Effects* test accomplish the same goal of proving both the licensee's and the licensor's objective manifestations of intent to enter into the implied license.

- **Defense 5**: Copyright Misuse. The parties dispute the elements of this defense.

*ARA's Position*:

The doctrine of copyright misuse prohibits a party from using its copyright to secure an exclusive right not granted by the Copyright Office and which is contrary to public policy. *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1033 (N.D. Cal. 2011) (*citing Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520 (9th Cir. 1997)). The doctrine precludes the enforcement of the copyright during the period of misuse. *Id*. It does not require the defendant to have been injured by the misuse. *In re Napster, Inc. Copyright Litigation*, 191 F. Supp. 2d 1087, 1107 (N.D. Cal. 2002) (*citing Lasercomb America Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990)).

*Defendants' Position*:

Defendants must prove by a preponderance of the evidence:

1. Plaintiff is attempting to use their copyright to obtain some power over other, non-copyrighted goods or services.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.25 (Dec. 2023); *Softketeers, Inc. v. Regal West Corporation*, No. 8:19-CV-00519-JWH (JDEx), 2022 WL 17968835, *14 (C.D. Cal. Dec. 22, 2022) (citing *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 957 (9th Cir. 2018)); *Disney Enterprises, Inc. v. Redbox Automated Retail, LLC*, No. CV 17-08655 DDP (AGRx), 2018 WL 1942139, *6 (C.D. Cal. Feb. 20, 2018).

- **Defense 6**: Scenes-a-Faire. The parties dispute the elements of this defense.

***ARA's Position*:**

The doctrine of scenes-a-faire provides Defendants with an affirmative defense to copyright infringement "if the expression embodied in the work necessarily flows from a commonplace idea." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000).

***Defendants' Position*:**

Defendants must prove by a preponderance of the evidence:

1. MSD PT2 is comprised of common or trite musical elements, or of commonplace elements that are firmly rooted in a genre's tradition.

*See Skidmore as Trustee for Randy Craig Wolfe v. Led Zepplin*, 952 F.3d 1051 1069-1071 (9th Cir. 2020).

- **Defense 7**: Unclean Hands. The parties dispute the elements of this defense.

***ARA's Position*:**

To prevail on an unclean hands defense, Defendants must show that ARA engaged in misconduct that relates to the claims that ARA is asserting. *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 870 (9th Cir. 2002); *Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009). To invoke

this doctrine, Defendants must prove by clear and convincing evidence that ARA engaged in wrongfulness, willfulness, bad faith, or gross negligence. *POM Wonderful, LLC v. Coca Cola Company*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) (*citing Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982)).

   ***Defendants' Position*:**

   Defendants must prove by a preponderance of the evidence:

   1. Inequitable conduct by the Plaintiff or the Artists;
   2. Plaintiffs or the Artists conduct directly relates to the infringement claim asserted against Defendants; and,
   3. Plaintiff or the Artists' conduct injured Defendants.

*See Taylor Holland LLC v. MVMT Watches, Inc.*, No. 2:15-cv-03578-SVW-JC, 2016 WL 6892097, *11 (C.D. Cal. Aug. 11, 2016) (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987).

## 8. <u>REMAINING TRIABLE ISSUES</u>

The parties dispute which issues remain in the case due to the pending motion for reconsideration. In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

- Assuming, *arguendo*, that the pending motion for reconsideration is denied, the remaining issue is:

   **ARA's Position:** (1) whether first version of *Hurricane*, played at the listening party in Atlanta, Georgia on July 22, 2021 is substantially similar to Plaintiff's copyrighted work, *MSD PT2*; and (2) the amount of damages owed to Plaintiff

   **Defendants' Position:**

   - whether the version of *Hurricane* performed at the July 22, 2021 listening party in Atlanta, Georgia contains actual

copying of the copyrighted sound recording MSD PT2; and, if so,

- what revenues of Defendants are apportionable to the audio performance of *Hurricane*;
- what revenues attributable to *Hurricane* are apportionable to Defendants' infringement of MSD PT2;
- what costs are associated with those revenues;
- whether a particular infringement occurred outside the statute of limitations;
- whether Defendants held an express license to use MSD PT2;
- whether Defendants held an implied license to use MSD PT2;
- whether Plaintiff is estopped (or waived/consented) from asserting copyright infringement against Defendants;
- whether Plaintiff is misusing their copyright; and,
- whether Plaintiff is prevented from recovery by the doctrine of unclean hands.

- If the pending motion for reconsideration is granted, there will be numerous additional issues. The parties dispute what those additional issues will be.

9. **DISCOVERY**

All discovery is complete.

**ARA's Position:**

It appears that at least one subpoenaed party (Docusign) produced only to Defendants. Plaintiff only discovered that Defendants obtained a copy of the Docusign production when Defendants attached it to their motion in limine filed several months after the discovery cut-off (Dkt. 251 at 3). It is unclear whether the Docusign documents were produced prior to the fact discovery deadline imposed by this Court

of December 15, 2025, as the documents were not produced to Plaintiff at all. Further, Defendants' apparent planned use of the Docusign production is an attempt to circumvent the Court's order precluding Defendants from compelling information regarding funding. *See* Dkt. 205 at 7 (denying Defendants' motion to compel such discovery, the Court clarified that "Nor is this copyright action one of the 'special litigation contexts' in which litigation funding discovery would be relevant."). In addition to the clear non-relevance of the Docusign production or any information disclosed by the production, the use of this type of information is highly prejudicial under Federal Rules of Evidence 402 and 403. This information should therefore be excluded as both irrelevant and prejudicial.

**Defendants' Position:**

The Copyright Assignment Agreement ("Agreement") that Plaintiff contends transferred the rights to MSD PT2 was dated the same day this case was initiated. That Agreement contained at least 6 different Docusign Envelope IDs related to the individuals supposedly signing those documents.  So, to test whether the Agreement was actually executed before the filing of the Complaint, and thus whether Plaintiff had standing at the time this case was intiated, Defendants subpoenaed records from DocuSign, Inc.  The fact that the documents included "Certum" in a file name was neither sought for nor expected.

On November 14, 2025, Defendants served Plaintiff with a Notice of Subpoena to DocuSign, Inc.  The Subpoena to DocuSign, Inc. demanded production of documents related to six Docusign Envelope IDs that appeared in the Copyright Assignment Agreement.

*Plaintiff neither objected nor moved to quash the subpoena.*

On December 3, 2025, DocuSign, Inc. made its first productions of documents; and, it made a supplemental production on December 11, 2025.

While not intending to withhold documents, Defendants never received a request from Plaintiff for these third-party records.  The writing of this subsection is

23

the first time Defendants became aware these documents were not produced by DocuSign, Inc. to Plaintiff.

## 10. DISCLOSURES AND EXHIBIT LIST

All disclosures under FED. R. CIV. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1 ("Joint Exhibit List").  In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including the grounds therefor.

## 11. WITNESS LISTS

Witness lists of the parties were filed with the Court on March 6, 2026. Defendants identified several entities they intend to issue trial subpoenas to, but do not yet know the identities of the individuals who may be designated as persons most knowledgeable.

Only the individual and entity witnesses identified on the lists will be permitted to testify (other than solely for impeachment).

## 12. MOTIONS IN LIMINE

Motions *in Limine* or law and motion matters were filed with the Court on March 6, 2026. The parties have met and conferred on the motions *in limine*. The following motions *in limine* are pending:

- ARA Motion *in Limine* No. 1: Exclude Opinions Of Expert Renee Howdeshell
- ARA Motion *in Limine* No. 2: Exclude Opinions Of Dr. Nathaniel Sloan Ph.D.
- ARA Motion *in Limine* No. 3: Exclude Opinions Of Cedar Boschan

- ARA Motion *in Limine* No. 4: Preclude Striking Jurors Based On Race, Religion Or Creed
- ARA Motion *in Limine* No. 5: Exclude Defendants' Expert Ray Daniels
- Defendants' Motion *in Limine* No. 1: Exclude Irrelevant And Speculative Damages
- Defendants' Motion *in Limine* No. 2: Exclude Testimony Of Plaintiff's Expert Joe Bennett
- Defendant's Motion *in Limine* No. 3: Plaintiff To Post Security Bond
- Defendants' Motion *in Limine* No. 4: Exclude The Testimony, Opinions, Report, And Argument Of Plaintiff's Rebuttal Expert Judith Finell

**ARA's Position:**

Plaintiff objects to Defendants' late filing of a fifth motion in limine. As the Court's Amended Civil Trial Order makes clear, the deadline to file motions in limine was March 6, 2026. Defendants have had the reports of Prof. Greene and Mr. Bania since December 30, 2025. Defendants have known since February 17, 2026 that Prof. Greene would be made available to finish his deposition; and have known since February 26, 2026 that Mr. Bania fell ill and could not complete this deposition. Yet, Defendants did not inform Plaintiff that they will be filing a fifth motion in limine until March 17, 2026. Should Defendants be belatedly allowed to file a fifth motion in limine, Plaintiff reserves grounds to object on additional grounds based on substance, particularly because Plaintiff understands that Defendants will be relying on these experts' reports which they have had in their possession since December 30, 2025.

**Defendants' Position:**

Defendants are contemplating a fifth motion in limine to exclude the reports and testimony of Plaintiff's experts Kevin Greene and/or Doug Bania. Mr. Bania initially appeared for deposition on February 26, 2026. However, over Defendants' objections, Mr. Bania and Plaintiff suspended the deposition. Mr. Bania did not

appear again for deposition until March 12, 2026, when it was finally concluded after the deadline to file written motions in limine.  Mr. Greene appeared for deposition on February 17, 2026.  He claimed to be unable to proceed with the deposition after approximately 4.5 hours and therefore Plaintiff offered to have Mr. Greene come back for Volume II of his deposition.  The motion in limine would be based upon Plaintiff's failure to timely make Mr. Greene and Mr. Bania available for their full deposition before the close of expert discovery, and for the failure of Mr. Greene and Mr. Bania's reports and testimony to meet the minimum requirements set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## 13.   <u>BIFURCATION</u>

Bifurcation of the following issues for trial is ordered.  There are certain equitable defenses that will be tried on briefing after the jury verdict, including:

- Unclean Hands
- Estoppel/Waiver/Consent
- Copyright Misuse

The parties dispute whether other matters should be tried to the jury or tried on briefing after the jury verdict.

**Defendants' Position:**

Implied license is not an equitable remedy and should be tried to the jury.  The Ninth Circuit considered and rejected the characterization of implied license as equitable in nature:

> *Plaintiff argues that an implied license is an equitable remedy*, akin to estoppel, for which Cohen does not qualify because he hasn't paid in full the agreed-to price for the footage.  *We reject this argument.* Plaintiff cites no authority for the proposition that an implied license is equitable in nature; *it seems to be a creature of law, much like any other implied-in-fact contract.*

*Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990) (emphasis added).

26

If the Court determines that the De Minimis Doctrine should not be tried by the jury as part of its determination of copying, then De Minimis should also be tried on briefing after the jury verdict. *Cf. Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership*, 821 F.3d 1069, 1079-1080 (9th Cir. 2016) ("We have followed the Supreme Court's lead, similarly referring to the *de minimis* doctrine as a 'rule' or '[d]octrine' and not as an affirmative defense.").

Following judgment in this matter, Defendants will submit a request for costs and attorneys' fees pursuant to 17 U.S.C. § 505. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) ("Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."). The Ninth Circuit has identified several nonexclusive considerations concerning attorney's fees in copyright matters:

> "The Supreme Court [has] identified the following non-exclusive list of factors to guide the award or denial of attorney's fees: 'frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.'" [Citation.] We have "added as additional considerations: the degree of success obtained, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." [Citation.] These factors "may be considered but are not exclusive and need not all be met." [Citation.]

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017). "[B]ecause copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them…. Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* (quoting *Fogerty*, 510 U.S. at 527).

**14.**   **ADMISSIONS**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pre-Trial Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

IT IS SO ORDERED.

Dated:                                    _____

_____

                              HON. MICHELLE WILLIAMS COURT

                                   United States District Judge