UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                    Date: August 7, 2026

Title:   Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:
N/A                                              N/A

**Proceedings: (IN CHAMBERS) ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL (DKT. [357])**

Before the Court is Defendants Kanye Omari West a/k/a Ye, Yeezy LLC, Yeezy Supply LLC, and Ox Paha Inc. f/k/a Mascotte Holdings, Inc.'s (collectively, "Defendants") renewed motion for judgment of a matter of law and motion for a new trial. *See* Dkt. # 357-1 ("*Mot.*"). Plaintiff Artist Revenue Advocates, LLC ("Plaintiff") opposed, *see* Dkt. # 362 ("*Opp'n*"), and Defendants replied, *see* Dkt. # 365 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. After considering the papers, the Court **DENIES** Defendants' renewed motion for judgment as a matter of law and motion for a new trial.

I.      Background

This case arises out of Defendants' use of MSD PT2, a sound recording. *See* Dkt. # 293 ("*FPTC Order*"). Though Plaintiff initially alleged copyright infringement of both the sound recording and the musical composition of the relevant work, the Court dismissed the composition claims at summary judgment for lack of standing. *See* Dkt. # 232 at 7–9. Four artists—Khalil Abdul-Rahman, Sam Barsh, Dan Seeff, and Josh Mease (the "Artists")—created MSD PT2. *See FPTC Order* at 5–6. Plaintiff later attempted to acquire the rights to MSD PT2 from Mr. Rahman, though Defendants disputed whether Plaintiff had standing to assert copyright infringement. *See id.* at 20–21. Defendant Ye ultimately used MSD PT2 in an initial version of the song *Hurricane* off his album *Donda*. *See id.* at 6. Defendant Ye played that initial version at the *Donda* Listening Party in Atlanta,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                          Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

Georgia, on July 22, 2021 (the "Listening Party"). *See id.* Plaintiff claimed that it was entitled to profits related to use of MSD PT2 at the Listening Party, including for merchandise Defendants sold at the Listening Party and for a jacket which Defendant Ye debuted that evening. *See id.* at 3.

The parties tried the case before a jury from May 5, 2026, to May 12, 2026. *See* Dkts. # 312, 319, 320, 326, 331, 335. The jury returned a verdict for Plaintiff, finding all Defendants liable and apportioning damages as follows: $176,153 against Defendant Ye; $176,153 against Defendant Yeezy LLC; $41,625 against Defendant Yeezy Supply LLC; and $44,627 against Defendant Ox Paha Inc. f/k/a Mascotte Holdings, Inc. *See* Dkt. # 343 ("*Verdict*"). Defendants now move for judgment as a matter of law or, in the alternative, a new trial. *See generally Mot.*

II.      Defendants' Motion for Judgment as a Matter of Law

    A.      Legal Standard

The party moving for judgment as a matter of law must show that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [opposing] party on that issue." Fed. R. Civ. P. 50(a); *see* Fed. R. Civ. P. 50(b) (allowing for a renewed motion for judgment as a matter of law after trial). The Court will grant judgment as a matter of law under Federal Rule of Civil Procedure ("Rule") 50(b) "only if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). When evaluating such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). The Ninth Circuit has explained that a court "cannot disturb the jury's verdict if it is supported by substantial evidence," *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999), which is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion" from the same evidence, *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (internal quotation marks omitted). To bring a renewed motion for judgment as a matter of law following trial under Rule 50(b), a party must have brought a motion for judgment as a matter of law at trial. *See* Fed. R. Civ. P. 50(b); *see, e.g., Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 325 F. Supp. 3d 1115, 1118–19 (W.D. Wash. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                                   Date: August 7, 2026

Title:     Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

B.     Discussion[1]

i.     *Standing*

Defendants first contend that the Court should grant judgment as a matter of law because Plaintiff did not "possess the rights to the sound recording in MSD PT2." *Mot.* at 16. Defendants explain that Mr. Rahman was the sole owner of the sound recording. *See id.* Though Mr. Rahman attempted to transfer the rights to MSD PT2 in July 2024, the "Copyright Assignment Agreement was void because part of Mr. Rahman's consideration [for the transfer] (the musical composition rights) was unlawful and impossible to transfer," as Universal Music Publishing Group administered the composition rights. *See id.* Though Plaintiff "attempted to correct the error by swapping out the page purporting to transfer Mr. Rahman's musical composition rights," "swapping out the pages did not revive the void assignment papers and nobody signed the 'corrected' Copyright Assignment Agreement." *See id.* at 16–17.

Mr. Rahman, however, sufficiently transferred the sound recording rights to Plaintiff, granting Plaintiff standing. Mr. Rahman signed the "Copyright Assignment and Subscription Agreement" (the "Agreement"), which assigned the copyrights in the works listed in Schedule 1 attached to the document. *See* Dkt. # 356-22 at 1. Schedule 1 lists Mr. Rahman as transferring the rights to the sound recording of MSD PT2. *See id.* at 17. Mr. Rahman also signed Exhibit A to the Agreement, which incorrectly attempted to transfer the musical composition rights. *See id.* at 18.

Both Schedule 1 and Exhibit A list Mr. Rahman as transferring the rights to the sound recording of MSD PT2. *See id.* at 17–18 (transferring Registration Number SRu1568930). The two documents differ only when referring to the composition rights in the musical work, as Schedule 1 does not list Mr. Rahman as transferring those rights, while Exhibit A does. *See id.* Citing California Code of Civil Procedure, Defendants argue that because a single part of the Copyright Assignment Agreement "was unlawful and impossible to transfer," the entire document is void. *See Mot.* at 16.

To be sure, California Code of Civil Procedure explains that "[i]f any part of a single consideration for one or more objects . . . is unlawful, the entire contract is void." Cal. Civ.

---

[1] Defendants moved for judgment as a matter of law at trial, making their renewed motion proper under Rule 50(b). *See* Dkt. # 326 at 217:22–220:22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                    Date: August 7, 2026

Title:   Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

Proc. Code § 1608. But the same code also notes that "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Cal. Civ. Proc. Code § 1599; *see Liberty Mut. Ins. Co. v. Hoge*, 146 Fed. Appx. 118, 120 n.6 (9th Cir. 2005) (stating that "even assuming the paragraphs 12 and 21 are void, the agreement as a whole is valid"); *Ford Motor Co. v. Titan Enter. Inc.*, No. 2:14-cv-07701-RSWL (JCx), 2015 WL 1646408, at *3 (C.D. Cal. Apr. 13, 2015) ("If Defendant is correct in arguing that the export clause is an undue restraint of trade, the Court would sever the clause from the rest of the CPA Contract" (citing *Adair v. Stockton Unified Sch. Dist.*, 162 Cal. App. 4th 1436, 1450 (2008))). California courts also allow for severability when focusing on only consideration. *See Kec v. Super. Ct.*, 51 Cal. App. 5th 972, 979 (2020) ("Usually, where consideration is only partly illegal and the agreement is severable, the legal portion may be enforced." (internal quotation marks and citation omitted)). Because California law "takes a very liberal view of severability," and the references in the contract transferring the sound recording rights and the composition rights are distinct, severability is appropriate here. *See Adair*, 162 Cal. App. 4th at 1460; *see also Baeza v. Super. Ct.*, 201 Cal. App. 4th 1214, 1230 (2011) (stating that "if the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (internal quotation marks and citation omitted)). Thus, under California rules of contract interpretation,[2] Plaintiff has ownership of the sound recording in MSD PT2 and, thus, standing.

        *ii.*    *Express License*

Defendants next assert that the Court should grant judgment as a matter of law in their favor because they received an express oral license to use the MSD PT2 sound recording. *See Mot.* at 17–18. Defendants highlight a February 7, 2022, email from Mr. Rahman's attorney, Debra Wise, which states that "[t]he production terms for both Hurricane and Moon stated in your email of today's date were discussed and agreed upon." *See id.* (quoting Dkt. # 356-18 at 2). Greg Johnson, Mr. Rahman's manager, replied that "[n]ow we did discuss with Khalil and [Boogz] the [p]roducer fees and points which are

---

[2] *See Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) ("Federal courts 'rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy.'" (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                              Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

fine . . . ."   *See id.* (quoting Dkt. # 356-18 at 2).   Ciara Reed, an attorney negotiating clearance terms for Defendants, wrote earlier on February 7, 2022, to list various terms, including: $10,000 for Mr. Rahman for his production of *Hurricane*, along with an eight percent publishing royalty and one percent producer royalty, and $7,500 for Mr. Rahman's co-production of *Moon*,[3] along with a ten percent publishing royalty and 1.25 percent producer royalty.   *See id.* at 18 (citing Dkt. # 356-18 at 2).   The parties had earlier discussed that Mr. Rahman would compensate Mr. Meese, Mr. Seeff, and Mr. Barsh using his compensation from Defendants.   *See* Dkt. # 356-18 at 4.   Defendants also note that the initial discussions between Mr. Johnson and Free Maiden, one of Defendants' representatives—which these emails purportedly ratified—occurred prior to the July 22, 2021, listening party.   *See Mot.* at 18 (citing Dkt. # 315 at 255:9–11).

Mr. Johnson, however, also testified that he and Free Maiden did not reach an agreement on the relevant phone call.   *See* Dkt. # 315 at 255:9–257:1.   Mr. Johnson explained at trial that he and Free Maiden could not have reached an agreement, since the parties—including the songwriters—had not agreed on "splits."   *See id.* at 256:2–15.   This knowledge stemmed from Mr. Johnson's twenty-five years in the music industry and experience negotiating "splits."   *See id.* at 256:17–23.   Ms. Wise also stated in her February 7, 2022, email that "[t]he publishing splits for both Hurricane and Moon were not agreed upon by anyone at any time."   *See* Dkt. # 356-18 at 2.   Moreover, Defendant Ye confirmed at trial that he later removed "the sample after the first listening party" on July 22, 2021, because "the sample was not cleared . . . ."   *See* Dkt. # 320 at 117:1–4.

This testimony offered the jury a sufficient basis to conclude that Defendants lacked an express license to use the sample of MSD PT2.   Even assuming *arguendo* that the jury could find an express license, there is also sufficient evidence to conclude that no express license existed.   Judgment as a matter of law is inappropriate "where, as here, both parties have presented substantial evidence to support their contentions."   *See Twin City Fire Ins. Co. v. Phila. Life Ins. Co.*, 795 F.2d 1417, 1423 (9th Cir. 1986); *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1070 (N.D. Cal. 2005) (explaining that judgment as a matter of law is appropriate where there is "only one reasonable conclusion as to the verdict"); *see also id.* ("Where there is sufficient conflicting evidence, or if reasonable minds could differ over the verdict, judgment after the verdict is improper."

---

[3] *Moon* is another song off the *Donda* album, though the song is no longer at issue in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-06018-MWC-BFM                              Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*


(citations omitted)).   Because there is sufficient evidence to conclude that no express license existed, judgment as a matter of law is inappropriate.

### iii.    *Implied License*

Defendants also argue that judgment as a matter of law is warranted because the Court did not present Defendants' implied license instruction to the jury.  *See Mot.* at 21. Defendants first proposed the following instruction:  "Implied licenses arise in a variety of circumstances.  For example, an implied license may arise where the copyright owners: (1) were aware of the allegedly infringing uses, (2) did not object to the allegedly infringing use, and (3) accepted royalties arising from the allegedly infringing use."  *See* Dkt. # 281 at 39.   The Court was instead inclined to provide a version of Ninth Circuit Model Instruction 17.26, but Defendants later asked for an instruction modifying Model Instruction 17.26 to list that (1) "plaintiff made a particular work and delivered it to the defendant," (2) defendants "demonstrated an intent to use the author's work," and (3) the plaintiff intended defendant copy, distribute, use, modify, or retain the plaintiff's work. *See* Dkt. # 335 at 12–13.  The Court ultimately adopted Model Instruction 17.26, charging the jury that it should find an implied license only if Defendants proved that (1) "defendants requested that the authors create a work"; (2) "the authors made that particular work and delivered it to the defendants"; and (3) "the authors intended that the defendants copy, distribute, use, modify, or retain [Plaintiff's] work."  *See* Dkt. # 340 at 51.

The Court properly instructed the jury.  The Ninth Circuit Model Instruction relies on *Effects Associates, Inc. v. Cohen* and *Asset Marketing Systems, Inc. v. Gagnon*, *see Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* § 17.26 (2025) (citing 908 F.2d 555, 558–59 (9th Cir. 1990) and 542 F.3d 748, 754–57 (9th Cir. 2008), respectively).  *Effects Associates* refers to the "nonexclusive license" defense as a "narrow exception to the writing requirement" of 17 U.S.C. § 204, *see* 908 F.2d at 558, and other Ninth Circuit cases have reaffirmed that courts construe the implied license defense narrowly, *see, e.g.*, *A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1026 (9th Cir. 2001).

At trial, Defendants argued that the Court should instead craft a jury instruction that invokes *Evox Productions, LLC v. Yahoo Inc.*, *see* Dkt. # 335 at 6 (citing No. 2:20-cv-02907-MEMF(JEMx), 2023 WL 5506894 (C.D. Cal. July 28, 2023)), which states that "[i]n evaluating whether a copyright owner granted a license to non-commissioned works,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                                    Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

district courts examine whether totality of the parties' conduct indicates an intent to grant a license to the work," *Evox Prods.*, 2023 WL 5506894, at *4 (internal quotation marks and citations omitted)).   Thus, the second and third prongs of Defendants' proposed instruction focus on only the parties' intent.  *See* Dkt. # 335 at 12–13.  But intent alone cannot sufficiently establish an implied license.  *See Furie v. Infowars, LLC*, 401 F. Supp. 3d 952, 968–69 (C.D. Cal. 2019) (quoting 3 Nimmer on Copyright § 10.03[A][7] (2019) for the proposition that "an implied license requires more than a general intent of the author regarding disposition of his work . . . .").   Further, the *Evox* court explained that "no precedent shows that mere knowledge of infringement and failure to promptly object, absent other facts, is sufficient to show the intent to create an implied license."  *See id.* at *5.  That is because "[t]he Supreme Court has made clear that 'there is nothing untoward' about a copyright owner 'waiting to see' whether a lawsuit is in the copyright owner's interest after discovering evidence of infringement."   *See id.* at *4 (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 655 (2014)).  And the *Evox* court highlighted that even a failure to warn "of possible infringement cannot be interpreted by [the plaintiff] as consent to use the [content], and no precedent would support such an interpretation." *Id.* at *5.

The facts of this case demonstrate that Defendants' proposed instruction was inapt. Though Defendants recount that "the Artists have been compensated for the contribution of MSD PT2 to Defendants through their crediting on *Hurricane* and *Moon* and their collection of royalties related to *Hurricane* and *Moon*," *see Mot.* at 20 (citations omitted), both Mr. Johnson and Defendant Ye testified that the sample had not been "cleared" at the time of the listening party.  *See* Dkt. # 315 at 255:9–257:1 (testimony of Greg Johnson); Dkt. # 320 at 117:1–4 (testimony of Defendant Ye).  Nor had the Artists received royalty payments for the sound recording of MSD PT2 prior to the Listening Party.  *See* Dkt. # 315 at 201:14–204:17.

Although Defendants highlight the Artists celebrating the use of MSD PT2, Defendants' authority does not establish that these actions alone would create an implied license.  In *In re Pandora Media, LLC Copyright Litigation*, the District Court declined to adopt the Special Master's "rules or principles from implied license cases . . . ."  *See* No. 2:22-cv-00809-MCS-MAR, 2025 WL 3049577, at *4 n.1 (C.D. Cal. Sept. 22, 2025).  Even if the Special Master appropriately applied Ninth Circuit precedent, the plaintiffs in that case "admitted that they intended to convey all rights necessary for their record companies and distributors to license streaming services like Pandora," "knew for years that their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-06018-MWC-BFM                                Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*


Routines were streaming on Pandora, yet never objected," "encouraged Pandora to stream their Routines," and "accepted royalties for years without ever claiming to be owed anything more."  *See In re Pandora Media, LLC*, No. 2:22-cv-00809-MCS-MAR, 2025 WL 3049880, at *15 (C.D. Cal. July 1, 2025) (citations omitted).  Here, by contrast, the Artists made no such admission and had no accepted any royalties—let alone for years— prior to Defendants using MSD PT2 at the Listening Party.  In *UMG Recordings, Inc. v. Disco Azteca Distributors*, the Court cited acceptance of royalty payments as giving rise to an irrevocable implied license.  *See* 446 F. Supp. 2d 1164, 1177–78 (E.D. Cal. 2006).  In *Field v. Google Inc.*, the plaintiff conceded that he knew how the defendant would use his copyrighted works, knew how to prevent such use based on common industry practice, and "made a conscious decision to permit" that use.  *See* 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006).  In *Evox Productions v. Chrome Data Solutions, LP*, the plaintiff did not object to the defendant's reports of its active sublicenses and instead accepted payments for those sublicenses.  *See* No. 22-35113, 2023 WL 1879479, at *3 (9th Cir. Feb. 10, 2023).  And in *Experexchange, Inc. v. Doculex, Inc.*, the defendants provided plaintiff royalty reports that listed products exceeding the scope of the relevant licensing agreement, and the plaintiffs continued to accept royalty payments for those products, repeatedly renewed the licensing agreement, and encouraged the defendants to incorporate the plaintiff's software into additional products.  *See* No. C-08-03875 JCS, 2009 WL 3837275, at *24 (N.D. Cal. Nov. 16, 2009).  None of these cases resemble Plaintiff's.

Moreover, it would be perverse to establish that an artist cannot celebrate the use of their work without granting a license for that use.  That standard would create a catch-22 for any artist—either they highlight their role in creating successful work and release the rights to sue for infringement, or they cannot claim credit for that work without immediately disparaging it as illegal, which could undermine the work's success and their later compensation.

As the Court explained at trial, Defendants have failed to present Ninth Circuit authority supporting their position on this instruction.  *See* Dkt. # 335 at 109:7–16.  Because there was no evidence of compensation for the sound recording—instead, only the composition—and Defendants failed to offer authority that celebration of a work is sufficient, the Court was "bound to use the three factors that the Ninth Circuit has identified" and that are consistent with Model Instruction 17.26.  *See id.* at 109:11–24.

Under controlling law—on which the Court instructed the jury—the finder of fact could find the absence of an implied license.  Defendant Ye testified that he did not request

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                                Date: August 7, 2026

Title:     Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

the Artists create MSD PT2 or deliver it following his request.  *See* Dkt. # 320 at 89:22–24.  Accordingly, because Defendants have failed to establish the first factor of the relevant test, judgment as a matter of law would contravene Ninth Circuit precedent.

> iv.    *Joint Authorship*

Lastly, the Artists were not joint authors alongside Defendants.  Defendants' motion refers only in passing to this argument, *see Mot.* at 7, though their reply brief highlights that Mr. Rahman "knew that Defendants were going to use [MSD PT2] in *Hurricane*," did not object to the use of MSD PT2 before the Listening Party, and "intentionally avoided finalizing splits with the Defendants."  *See Reply* at 12–13.  To show joint authorship, a party must establish that "(1) an author 'superintend[ed] the work by exercising control;' (2) 'putative coauthors . . . ma[d]e objective manifestations of a shared intent to be coauthors;' and (3) 'the audience appeal of the work turn[ed] on both contributions' such that 'the share of each in its success cannot be appraised.'"  *Wake Up and Ball LLC v. Sony Music Ent. Inc.*, 119 F. Supp. 3d 944, 952 (D. Ariz. 2015) (quoting *Aalmuhammed v. Lee*, 202 F. 3d 1227, 1232 (9th Cir. 2000)).

At trial, the Court instructed the jury on joint authorship.  *See* Dkt. # 340 at 44.  Still, the jury found Defendants liable, and there is sufficient evidence to support the jury's verdict.  For example, Defendant Ye testified that prior to this lawsuit he did not know the Artists, had not met them, never communicated with them, had never worked with them, had never recorded with them, and did not ask them to create any musical work.  *See* Dkt. # 320 at 89:9–24.  Defendants highlight only Mr. Rahman's knowledge of the potential use of MSD PT2 and failure to object, but offer no authority showing that knowledge of this kind would establish joint authorship, nor do the elements of the relevant test contemplate that possibility.  Without more, the Court cannot deem the jury's rejection of the joint authorship unreasonable such that it warrants judgment as a matter of law in Defendants' favor.

III.   Defendants' Motion for New Trial

A.    Legal Standard

Rule 59(a) allows a court to grant a new trial "on all or some of the issues . . . for any reason for which a new trial heretofore has been granted in an action at law in federal

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-06018-MWC-BFM                              Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*


court."  Fed. R. Civ. P. 59(a)(1)(A).  A party must move for a new trial no later than 28 days after the entry of the judgment.  Fed. R. Civ. P. 59(b).  Appropriate grounds for a new trial include "claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (internal quotation marks and citation omitted).

The Ninth Circuit has further provided that the trial court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Molski*, 481 F.3d at 730 (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).  The court "can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."  *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) (citations omitted).  Still, a court must provide "respect for the collective wisdom of the jury," which "certainly suggests that in most cases, the judge should accept the findings of the jury, regardless of [her] own doubts in the matter."  *Est. of Brown v. Lambert*, 478 F. Supp. 3d 1006, 1018 (S.D. Cal. 2020) (quoting *Landes*, 833 F.2d at 1371).  But "[i]f having given full respect to the jury's finding, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that [s]he will grant a new trial."  *Landes*, 833 F.2d at 1371–72 (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806, at 48–49 (1973)).

      B.     <u>Discussion</u>

            i.     *Implied License Instruction*

Defendants first argue that the Court's implied license jury instruction warrants a new trial.  For the same reasons that Defendants are not entitled to judgment as a matter of law based on this jury instruction, *see supra* Section II.B.iii, they are not entitled to a new trial.  To be sure, a comment to Model Instruction 17.26 acknowledges that although the instruction "accurately captures one recurring set of implied license facts, implied license arise in a wide variety of circumstances, including many . . . for which the elements of an implied license defense will be different."  *See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* § 17.26 (2025).  But, as explained above, Defendants offer no authority—from the Ninth Circuit or its district courts—mirroring the

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-06018-MWC-BFM                          Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*


facts of this case.  *See supra* Section II.B.iii.  Instead, Defendants asked the Court to contravene Ninth Circuit authority in favor of crafting a special jury instruction, one which focuses only on the parties' intent, even though intent alone is insufficient to establish an implied license.  *See Furie*, 401 F. Supp. 3d at 968–69 (quoting 3 Nimmer on Copyright § 10.03[A][7] (2019).  Defendants attempt to recast the Ninth Circuit's controlling test, stating that the third element of the test "expressly addresses [the] necessary intent," while the other two elements "simply require an overt act of each party objectively addressing that intent . . . ."  *See Mot.* at 23.  Had the Ninth Circuit wished to frame the relevant test as Defendants do—"intent three ways"—Model Instruction 17.26 and its associated comment may have provided such a suggestion.  Instead, however, the instruction references intent only once and does not contemplate displacing the relevant elements with only an intent-based inquiry.

For a court to grant a new trial based on an erroneous jury instruction, the moving party must show "by a preponderance of the evidence[] that the jury instruction was legally erroneous and that the error had prejudicial [effect]."  *See Droplets, Inc. v. Yahoo! Inc.*, 658 F. Supp. 3d 754, 771 (N.D. Cal. Mar. 1, 2023) (citing *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir. 2002)).  The Court's instruction was not legally erroneous, as Defendants offered no Ninth Circuit authority supporting their preferred instruction.  *See* Dkt. # 335 at 109:7–16.  Though Defendants highlighted cases where a plaintiff's knowledge of a defendant's use of their work, receipt of benefits from that use, and encouragement of that use were far more extensive, *see supra* Section II.B.iii, those cases were too distinct from this one to warrant a special jury instruction contravening the Ninth Circuit's long-held implied license test.

Moreover, Defendants may not have prevailed under their final proposed instruction.  The third element of Defendants' test—that plaintiff intended defendant copy, distribute, use, modify, or retain the plaintiff's work, *see* Dkt. # 335 at 12–13—runs counter to Mr. Johnson's testimony that, on a phone call preceding the Listening Party, he and Free Maiden explicitly failed to agree on Defendants' authorization to use MSD PT2.  *See* Dkt. # 315 at 255:9–257:1.  Ms. Wise confirmed the same several months after the listening party, *see* Dkt. # 356-18 at 2, and Mr. Johnson offered testimony that they could not have reached an agreement for Defendants to use MSD PT2 since the parties had not agreed on "splits."  *See* Dkt. # 315 at 256:2–15.  Defendant Ye also explained that he removed MSD PT2 after the first listening party because he knew it "was not cleared . . . ."  *See* Dkt. # 320 at 117:1–4.  To be sure, Defendants likely would not have proposed the special jury

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-06018-MWC-BFM                                Date: August 7, 2026

Title:     Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*


instruction had they not believed it to be more favorable than the Model Instruction.  But since the Court has established that Model Instruction 17.26 was not legally erroneous, the Court cannot grant a new trial.  *See Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (noting that a jury instruction must be erroneous or inadequate to warrant a new trial (citations omitted)).

> ii.     *Damages and Verdict Form*

> a.     *Evidence of Damages*

Defendants contend that the Court should grant a new trial because "Plaintiff was permitted to present speculative damages theories . . . ." *Mot.* at 25.  They argue that "Plaintiff presented no evidence of causation such as consumer surveys, experiments, focus groups, or other reliable evidence showing that the allegedly infringed sound recording caused the revenue or profits claimed." *Id.*  This argument mirrors Defendants' first motion *in limine*, which the Court denied without prejudice to Defendants objecting at trial.  *See* Dkt. # 279 at 9.

The jury instructions explained the jurors' task in determining damages.  17 U.S.C. § 504(b) allows a copyright owner to recover "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).  The same provision offers that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.*  Accordingly, the Court instructed the jury that it could award damages for the Defendants' profits "only if [the jury found] that the plaintiff showed a causal relationship between the infringement and the profits generated indirectly from the infringement." *See* Dkt. # 340 at 56.  The jury could determine Defendants' profit "by deducting all expenses from defendants' gross revenue," with gross revenue equaling a "defendant's receipts from the use or sale of a product or work containing or using the copyrighted work." *Id.*  "Expenses are all operating costs, overhead costs, and production costs incurred in producing the defendants' gross revenue." *Id.*  The jury instruction placed the burden of proof regarding Defendants' gross revenue on Plaintiff, while it placed the burden of proof regarding Defendants' expenses on Defendants. *Id.*  This instruction mirrored Ninth Circuit Model Instruction 17.36. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-06018-MWC-BFM                              Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*


*Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* § 17.36 (2025).

Plaintiffs offered sufficient causal evidence for the jury to reach its damages verdict. Doug Bania, Plaintiff's primary damages expert, testified that he calculated damages based on distinct revenue streams: (1) sales of tickets to the Listening Party; (2) Apple's payment to livestream the Listening Party; (3) merchandise Defendants sold at the Listening Party; and (4) sales of the Yeezy x GAP jacket Ye first wore and publicized at the Listening Party. *See* Dkt. # 326 at 32:3–22. For each revenue stream, Mr. Bania explained his data sources and any estimates he made. *See, e.g.*, *id.* at 35–38 (discussing ticket sales to Listening Party). He also described how he attributed a portion of the gross revenue to *Hurricane* specifically, *see, e.g.*, *id.* at 38:2–6, and he relied on Dr. Joe Bennett's testimony to further refine the damages calculation to address only what MSD PT2 contributed to *Hurricane*, *see, e.g.*, *id.* at 38:22–25; *see also* Dkt. # 320 at 158:4–7 (finding a fifty percent "apportionment rate" appropriate for MSD PT2). In other contexts, like when discussing the Yeezy x GAP jacket, Mr. Bania excluded jackets of different colors, applied an attribution rate corresponding to Defendant Ye's contract with GAP, and accounted for the presence of a *Donda* Deluxe album. *See* Dkt. # 326 at 45:16–47:18. Across multiple revenue streams, Mr. Bania clarified why his estimates were likely conservative. *See, e.g.*, *id.* at 35:18–25 (discussing streaming data); 37:2–10 (discussing ticket sales). Ultimately, Mr. Bania determined that $564,046 was an appropriate damages figure. *See id.* at 28:20–24. Plaintiff also supported its damages argument with the testimony of Professor Kevin Greene, who determined that *Hurricane* was the lead single off the *Donda* album and illustrated the connection between the music at issue and the merchandise that Defendants ultimately sold. *See* Dkt. # 320 at 185:8–19.

Though Defendants cite a lack of consumer surveys, experiments, and focus groups, they misunderstand Plaintiff's burden. The Ninth Circuit has outlined that a copyright plaintiff must "do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement." *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004). "The result is that a plaintiff seeking to recover indirect profits must formulate the initial evidence of gross revenue duly apportioned to relate to the infringement." *Id.* (internal quotation marks and citation omitted). Plaintiff's expert testimony meets that standard. And Defendants offer no authority showing that Plaintiff's evidence was inapt for damages calculations of this kind. Nor have Defendants shown that a copyright plaintiff must provide consumer

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                              Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

surveys, experiments, and focus groups, rather than expert testimony of the kind Plaintiff provided. Other courts similarly situated have deemed evidence like Plaintiff's to be sufficient for proving copyright damages. *See, e.g.*, *Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co., Ltd.*, No. 21-cv-06536-EMC, 2024 WL 2193323, at *16 (N.D. Cal. May 15, 2024) ("There is substantial evidence supporting the jury's award for copyright infringement damages because Moonbug provided unrebutted expert testimony as to the damages calculation, and the jury's award was reasonably within the range of the testimony."); *see also Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 08-CV-2307-H (POR), 2010 WL 3718859, at *6 (S.D. Cal. Sept. 20, 2010) (noting that "[a] plaintiff in a copyright case can present evidence to allow a jury to draw a reasonable inference as to the appropriate amount of damages" (citation omitted)). Because the jury's damages findings were reasonable based on Plaintiff's expert testimony, Defendants have not shown that they are entitled to a new trial.

> b.      *Verdict Form*

Defendants next argue that "[t]he damages problems were compounded by the verdict form," which "did not require the jury to identify its damages calculation, the revue base it used, and the apportionment method it accepted," preventing "meaningful review of the jury's calculation." *See Mot.* at 25. But Defendants offer no authority suggesting that a general verdict form is inappropriate in a copyright case. *See generally Mot.*; *Reply*; *see also Williams v. Gaye*, 895 F.3d 1106, 1118 n.4 (9th Cir. 2018) (using what were "functionally general verdict forms" in a copyright action). There is also no requirement that a jury show each step in its damages calculation. *See, e.g.*, *Atlas Flooring, LLC v. Porcelanite S.A. DE C.V.*, 425 Fed. Appx. 629, 633 (9th Cir. 2011) ("Atlas is not required to demonstrate how the jury reached the damages amount. It is enough that a rationale for the jury's division of the damages total can be derived from the record." (citing *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 365 (1962))); *Mewawalla v. Middleman*, No. 21-cv-09700-EMC, 2025 WL 1918671, at *10 (N.D. Cal. July 11, 2025) ("The Court need not discern the exact calculation of the jury, but it appears the jury was conscientious and mindful of the trial evidence in awarding the damages.").

Still, Defendants contend that it is impossible to discern whether the damages award was joint and several or cumulative. *See Mot.* at 25–26. But the jury's verdict reflects the evidence, *see Verdict*, undermining any claim that the jury did not understand how to apportion damages, *see Rodriguez v. Am. Cyanamid Co., Inc.*, 116 F.3d 485, 485 (9th Cir.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-06018-MWC-BFM                                    Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

1997) ("A district judge should grant a motion for new trial only if the jury verdict is not supported by substantial evidence." (citation omitted)); *Munguia v. Grelyn of Maui,* LLC, No. 09-00058 HG-BMK, 2011 WL 1364026, at *29 (D. Haw. Apr. 8, 2011) ("A jury's damages verdict is entitled to substantial deference and must be upheld unless it is clearly unsupported by the evidence." (internal quotation marks and citations omitted)). Defendants' dissatisfaction with that verdict does not warrant granting a new trial.

Lastly, the Court hewed closely to the requirements of Rule 49(b)(1), which allows for general verdict forms. *See* Fed. R. Civ. P. 49(b)(1). That rule notes that "[t]he court must give the instructions and explanations necessary to enable the jury to render a general verdict and answer the questions in writing, and must direct the jury to do both." *See id.* As detailed *supra* Section III.B.ii.a, the Court provided the jury detailed instructions as to how it should calculate damages. Thus, a new trial is unnecessary.

           iii.    *Evidentiary Rulings*

              a.    *Exclusion of Experts*

Defendants first argue that the Court must grant a new trial because Defendants' experts should have had the opportunity to testify. The Court explained its reasoning for excluding Defendants' experts in its April 1, 2026, order regarding the parties' motions *in limine*. *See* Dkt. # 279 at 2–8. "[A] Rule 59 motion should . . . not be used to 'relitigate old issues, to advance new theories, or to secure a rehearing on the merits.'" *Gomez v. City of Torrance*, No. CV 07-790 ODW (SHx), 2010 WL 1710330, at *5 (C.D. Cal. Apr. 23, 2010) (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)); *see Woodall v. Walt Disney Co.*, No. 2:20-cv-3772-CBM-E, 2025 WL 3691857, at *11 (C.D. Cal. Dec. 10, 2025) ("In effect, Plaintiff seeks reconsideration of the Court's prior rulings excluding certain evidence which is not a proper basis for a motion for a new trial." (citing *S.D. Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865-AJB-JMA, 2018 WL 4091734, at *1, *7 (S.D. Cal. Aug. 23, 2018))).

Beyond its procedural shortcomings, Defendants' argument also fails on the substance. Regarding Renee Howdeshell, Defendants maintain that they did not bear the initial burden of proof as to deductible expenses, making disclosure of Ms. Howdeshell's opinions timely. *See Mot.* at 27. Though Defendants cite one district court case in support, *see Mattel, Inc. v. MGA Ent., Inc.*, No. CV 04-9049 DOC (RNBx), 2011 WL 13128409, at

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                              Date: August 7, 2026

Title:     Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

*11 (C.D. Cal. Jan. 26, 2011), the plain language of 17 U.S.C. § 504(b) and the weight of authority undermine that case's conclusion, *see* 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); *see, e.g.*, *Oracle Am., Inc. v. Google Inc.*, 131 F. Supp. 3d 946, 951 (N.D. Cal. 2015) (noting that the defendant had "the burden to prove that its claimed deductible expenses actually helped generate the revenue sought by the copyright owner" (citing *Petrella*, 572 U.S. at 677)); *Gardner v. CafePress Inc.*, No. 3:13-cv-1108-GPC-JLB, 2014 WL 6890934, at *6 (S.D. Cal. Dec. 4, 2014) ("While expenses may be deducted from gross revenue, the burden of proof for deductible expenses is on the infringer." (citation omitted)).  Thus, disclosure of Ms. Howdeshell's opinions was untimely, and exclusion of those opinions was proper.

Next, Defendants assert that the Court's motion *in limine* ruling "ignored examples from Ms. [Cedar Boschan's] report and deposition testimony that concerned disgorgement damages and the sound recording." *Mot.* at 27 (citations omitted).  This argument again seeks reconsideration of the Court's previous order, which is improper in a motion for a new trial.  *See Gomez*, 2010 WL 1710330, at *5; *Wooddall*, 2025 WL 3691857, at *11. Defendants offer the Court no basis to depart from the Court's previous analysis, which identified that Ms. Boschan did not focus on the sound recording.  *See* Dkt. # 279 at 6. That reasoning noted:

> Because Ms. Boschan's opinion centers on the composition of MSD PT2 rather than the sound recording, the Court must exclude her opinion.  She explains that "while the complaint I cited in the 'Documents Relied Upon' section alleges infringement of a sound recording, we understand from Defendant's [*sic*] counsel that the parties and experts acknowledge that the Plaintiff's infringement claim is now solely for the alleged infringement of a musical work (the 'Work'), **not the infringement of the recordings**." *See* Dkt. # 256-1 at 23 (emphasis added).  Though Defendants pluck various references to recordings from Ms. Boschan's report out of context, the Court cannot ignore her report relied on the idea that infringement of the sound recordings was not at issue. Perhaps her interpretation of Defendants' counsel's guidance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                              Date: August 7, 2026

Title:   Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

was incorrect, but that does not correct the confusion that would result from a jury hearing conclusions stemming from a faulty premise.

*Id.*

Defendants provide no argument regarding the exclusion of their other two experts beyond asserting that exclusion "substantially impaired Defendants' ability to respond to Plaintiff's theories." *See Mot.* at 27. To be sure, Defendants may have presented a stronger case had they relied on these experts. But Dr. Nathaniel Sloan's opinions were not the product of reliable principles and methods, *see* Dkt. # 279 at 3–6, and Ray Daniels' opinion lacked a sufficient basis, *see id.* at 7–8. The potential prejudice to Defendants does not absolve the Court of its obligation to act as a gatekeeper to ensure that all expert testimony is reliable and relevant. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145 (1999). Accordingly, the Court cannot grant a new trial on these grounds.

> b.     *Admission of Exhibit 12*

Defendants also contend that the Court erroneously admitted Exhibit 12, which they assert lacked proper authentication. *See Mot.* at 27–28. "To obtain a new trial based on erroneous evidentiary rulings, the moving party must show that the ruling[s] were both 'erroneous' and 'substantially prejudicial.'" *K.J.P. v. Cnty. of S.D.*, 621 F. Supp. 3d 1097, 1144 (S.D. Cal. 2022) (quoting *Ruvalcaba v. City of L.A.*, 64 F.3d 1323, 1328 (9th Cir. 1995)). Defendants fail on both prongs.

Plaintiffs properly authenticated the video. "[T]he foundation allowed to authenticate video recordings is simply testimony by a witness with knowledge that the photo, videotape or motion picture accurately represents the scene or activity depicted." *Lifschultz v. City of San Juan Capistrano*, No. 8:19-cv-01497-JVS(ADSx), 2024 WL 5439279, at *3 (C.D. Cal. Nov. 18, 2024). Mr. Seeff's testimony confirmed that the video accurately represented MSD PT2 from the Listening Party. *See* Dkt. # 315 at 26:45–27:21.

Even assuming *arguendo* that Plaintiffs had not authenticated the video, Defendants have not identified the prejudice stemming from Exhibit 12's admission. *See Mot.* at 27–28; *Reply* at 16. Defendants do not allege any discrepancies between Exhibit 12's depiction of events and Defendants' version of those events. *See Mot.* at 27–28; *Reply* at 16. Nor do Defendants describe the impact of admitting Exhibit 12 on the case. *See Mot.* at 27–28;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                          Date: August 7, 2026

Title:      Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

*Reply* at 16.  Without Defendants showing that exhibit's admission was "substantially prejudicial," the Court cannot grant a new trial.  *See Ruvalcaba*, 64 F.3d at 1328.

c.      <em>Corrective Instruction Regarding Exhibit 422</em>

Defendants argue that the Court should grant a new trial because the Court erroneously sustained Plaintiff's objection to Exhibit 422 during Defendants' closing argument but denied Defendants' "request for a corrective instruction to the jury that Exhibit 422 was in fact admitted and Defendants' counsel had done nothing improper." *See Mot.* at 28.  Their argument depends on the ruling being so prejudicial that the jury could not deem Defendants' counsel credible.  *See Reply* at 16.  The Court sustained Plaintiff's objection because Defendants appeared to display a document which the Court had excluded that morning.  *See* Dkt. # 335 at 256:17–257:1 (noting that Exhibit 422 was "also Exhibit 5887," which was last in time and which Defendants failed to authenticate earlier that morning); *see also id.* (admonishing the parties for failing to meet and confer to prevent unnecessary document duplication); *see also id.* (explaining to Defendants' counsel that Defendants "were permitted to show the part of the trial transcript and argue what you needed to argue with respect to that document").  Still, the Court corrected any confusion by sending Exhibit 422 to the jury for deliberations.  *See* Dkt. # 347:9–24.

Defendants offer no authority showing that sustaining an objection in closing argument is so prejudicial to a party that it warrants a new trial.  *See Mot.* at 28; *Reply* at 16.  To the extent that there was any prejudice stemming from sustaining the objection initially, that initial ruling did not prevent the jurors from considering Exhibit 422 for the entirety of its deliberations.  Thus, Defendants have not demonstrated substantial prejudice requiring a new trial.  *See K.J.P.*, 621 F. Supp. 3d at 1144.

d.      <em>Exclusion of Remote UMG Witness</em>

Lastly, Defendants assert that they are entitled to a new trial because the Court should have allowed remote testimony from a UMG representative.  *See Mot.* at 28. Several weeks before trial commenced, the Court ordered the parties to meet and confer regarding remote testimony, explaining that courtroom technology constraints limited the parties' ability to authenticate exhibits using remote witnesses.  *See* Dkt. # 288 at 13:9–17. Defendants failed to meet and confer on the issue before trial.  *See* Dkt. # 312 at 16:20– 17:14.  On the fourth day of trial, Defendants requested remote testimony, despite having

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                        Date: August 7, 2026

Title:     Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

only fifteen minutes remaining to present their case.  *See* Dkt. # 326 at 260:5–261:6.  The Court again noted that remote testimony would hamper the parties' ability to authenticate documents.  *See id.*  Despite those discussions, Defendants still attempted to call a UMG witness to testify remotely.  *See* Dkt. # 335 at 26:12–23.  Though Defendants maintained that they would not attempt to authenticate any documents, Plaintiff anticipated questioning the witness about documents.  *See id.*  As a result, the Court did not allow the UMG witness to testify remotely.  *See id.* at 26:12–28:2.

Defendants attempt to cast the need for remote testimony as a "compelling circumstance" stemming from the medical emergency of Carla Miller, the UMG representative.  *See Mot.* at 28.  But Defendants' counsel acknowledged at trial that they had planned for Ms. Miller to testify remotely.  *See id.* at 27:1–3 ("No, we said that Carla Miller was in New York and she was going to testify via Zoom . . . ."); *see also id.* at 27:13–20.  Thus, Ms. Miller's medical emergency had no bearing on whether a UMG representative would testify remotely.  Moreover, Defendants do not explain the prejudice stemming from being unable to call a UMG representative beyond a passing reference to their inability to present "evidence supporting the producer deal with Mr. Rahman."  *See Mot.* at 28.  Accordingly, a finding of substantial prejudice is unwarranted, and the Court cannot grant a new trial based on Defendants' inability to call a UMG representative.

### e.     *Additional Grounds Lacking Argument*

Defendants refer in passing to the Court "erroneously allow[ing] improper character evidence against Ye and Yeezy," the Court "erroneously denying Defendants' request for corrective instructions regarding . . . Plaintiff's arguments that Defendants did not provide trial exhibits," and the Court "exercis[ing] unequal control of the witnesses and counsel."  *See Mot.* at 5.  Still, they do not further elaborate on these arguments in their motion.  *See generally Mot.*  Where a party fails to argue their position in an opening brief, the party waives the argument.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (citing *Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1100 (9th Cir. 2007)).  Because the Court cannot guess the basis for these contentions, it can only deny a motion for new trial on these grounds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-06018-MWC-BFM                           Date: August 7, 2026

Title:    Artist Revenue Advocates, LLC v. Kanye Omari West a/k/a "Ye" *et al.*

IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' renewed motion for judgment as a matter of law and motion for a new trial.  The August 7, 2026, hearing is **VACATED**.

**IT IS SO ORDERED.**

                                                                        :
                                                    **Initials of Preparer**   TJ

---