# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIST REVENUE ADVOCATES, LLC, | Case No. 2:24-cv-06018-MWC-BFM |
| Plaintiff, | |
| vs. | FINDINGS OF FACT AND CONCLUSIONS OF LAW (DEFENDANTS' EQUITABLE DEFENSES) |
| KANYE OMARI WEST AKA YE *ET AL*, | |
| Defendants. | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW (DEFENDANTS' EQUITABLE DEFENSES) - 1

## I.    INTRODUCTION

This case arises out of Defendants' use of MSD PT2, a sound recording.  *See* Dkt. # 293 ("FPTC Order").  Though Plaintiff initially alleged copyright infringement of both the sound recording and the musical composition of the relevant work, the Court dismissed the composition claims at summary judgment for lack of standing.  *See* Dkt. # 232 at 7–9.  Four artists—Khalil Abdul-Rahman, Sam Barsh, Dan Seeff, and Josh Mease (the "Artists")—created MSD PT2.  *See FPTC Order* at 5–6.  Plaintiff later acquired the rights to MSD PT2 from Mr. Abdul-Rahman, though Defendants disputed whether Plaintiff had standing to assert copyright infringement.  *See id*. at 20–21.  Defendant Ye ultimately used MSD PT2 in an initial version of the song *Hurricane* off his album *Donda*.  *See id*. at 6.  Defendant Ye played that initial version at the *Donda* Listening Party in Atlanta, Georgia, on July 22, 2021 (the "Listening Party").  *See id*.  Plaintiff claimed that it was entitled to profits related to use of MSD PT2 at the Listening Party, including for merchandise Defendants sold at the Listening Party and for a jacket which Defendant Ye debuted that evening.  *See id*. at 3.

The parties tried the case before a jury from May 5, 2026, to May 12, 2026.  *See* Dkts. # 312, 319, 320, 326, 331, 335.  The jury returned a verdict for Plaintiff, finding all Defendants liable and apportioning damages as follows: $176,153 against Defendant Ye; $176,153 against Defendant Yeezy LLC; $41,625 against Defendant Yeezy Supply LLC; and $44,627 against Defendant Ox Paha Inc. f/k/a Mascotte Holdings, Inc.  *See* Dkt. # 343.

On June 26, 2026, Defendants filed a motion for Determination of Equitable Affirmative Defenses and for Findings of Fact and Conclusions of Law.  The motion is **GRANTED**.

The Court now issues the following Findings of Fact and Conclusions of Law regarding Defendant's equitable affirmative defenses.

Any finding of fact deemed to be a conclusion of law is hereby incorporated into the Conclusions of Law. Any conclusion of law deemed to be a finding of fact is hereby incorporated into the Findings of Fact.

FINDINGS OF FACT AND CONCLUSIONS OF LAW (DEFENDANTS' EQUITABLE DEFENSES) - 2

# FINDINGS OF FACT

### A.    Jury Findings

1.  Ye infringed on Plaintiff's copyright.

2.  Yeezy LLC infringed on Plaintiff's copyright.

3.  Yeezy Supply infringed on Plaintiff's copyright.

4.  Ox Paha Inc. infringed on Plaintiff's copyright.

### B.    Court Findings

5.      In March 2018, the Artists created the music later known as MSD PT2 during a studio session in Los Angeles. Dkt 340-1. The United States Copyright Office issued separate registrations for the composition and the sound recording. 5/7/2026 (Day 4) Trial Tr. at 171:13–172:18; Meyer Decl. Exh. 17 (Trial Ex. 542) and Exh. 18 (Trial Ex. 543).

6.      Mr. Abdul-Rahman is the author and claimant of the sound recording copyright. 5/5/2026 (Day 2) Trial Tr. at 139:5–13. Mr. Abdul-Rahman transferred his sound recording rights in MSD PT2 to ARA in a written Copyright Assignment and Subscription Agreement. *Id*. at 139:20–140:2 (Abdul-Rahman); *id*. at 217:20-219:16 (Monts); Meyer Decl. Exh. 19 (Trial Ex. 550).

### Ye Used MSD PT2 in *Hurricane* at the Listening Party

7.      By September 2018, Mr. Abdul-Rahman learned that Ye was using MSD PT2 in a song then called "*80 Degrees*." 5/5/2026 (Day 2) Trial Tr. at 129:15–25; 131:5–9; Martorell Decl. Exh. 5 (Trial Ex. 49).

8.      The earliest versions of *Hurricane*, including the version played at the July 22, 2021, Listening Party, contained portions of the MSD PT2 sound recording. Dkt. 340-1.

9.      *Hurricane* was highly anticipated for years and widely known as the lead single from the *Donda* album, making it probable for the Artists to believe it might be performed at the Listening Party. 5/6/2026 (Day 3) Trial Tr. at 185:11–186:4, 197:19–22 (Greene).

FINDINGS OF FACT AND CONCLUSIONS OF LAW (DEFENDANTS' EQUITABLE DEFENSES) - 3

10. Ye was "singing over [was] the MSD PT2 sound recording" at the July 22, 2021, Listening Party. 5/6/2026 (Day 3) Trial Tr. at 96:8-11 (Ye).

11. MSD PT2 was used through 100 percent of the runtime of *Hurricane* at the listening party. *Id*. at 156:10-12.

**No Agreement Was Reached Before the Listening Party**

12. In 2020 and again in 2021, Greg Johnson, the Artists' publishing administrator, communicated with Ye's representatives. 5/5/2026 (Day 2) Trial Tr. at 251:8–256:15; Meyer Decl. Exh. 10 (Trial Ex. 63); Exh. 11 (Trial Ex. 65); Exh. 12 (Trial Ex. 66); Exh. 13 (Trial Ex. 69).

13. Several months before *Donda* was released, Defendants' representative Free Maiden told Mr. Johnson there was a "possibility" MSD PT2 might be used on an upcoming album and offered the Artists 8 to 10 percent in songwriting credit. 5/5/2026 (Day 2) Trial Tr. at 254:11-255:4. Mr. Johnson rejected that proposal, telling Mr. Maiden he did not think those terms would pass muster and that he would need to speak with the writers. *Id*. at 255:1–7.

14. Shortly before the Listening Party, Mr. Johnson had another conversation with Free Maiden and BoogzDaBeast (a music producer) regarding producer fees and an advance. 5/5/2026 (Day 2) Trial Tr. at 255:9–256:15. Mr. Johnson was clear that no agreement was reached, that nothing had been memorialized, and that any producer deal had to be in writing. *Id*. at 255:22–256:15. In his opinion, a producer agreement could not be finalized without also resolving the underlying writer splits because the master had to come in "cleared." *Id*. at 256:2–15; 5/6/2026 (Day 3) Trial Tr. at 14:12–25–15:9; 64:2–7.

15. The Artists' side understood that Defendants were resisting meaningful splits and that no final deal had been reached: "Greg's been dealing with splits – it's been a challenge for sure. They initially didn't want to give more than 10%. More than 10 for the entire sample??? Yes believe it or not, Greg basically said fuck off." Martorell Decl. Exh. 20 (Trial Ex. 88); see also Meyer Decl. Exhs. 20 (Trial Ex. 5023) and 21 (Trial Ex. 5034).

FINDINGS OF FACT AND CONCLUSIONS OF LAW (DEFENDANTS' EQUITABLE DEFENSES) - 4

16. That understanding is consistent Mr. Johnson's trial testimony that the parties had "zero deal." 5/6/2026 (Day 3) Trial Tr. at 38:13–21.

**The February 2022 Emails Confirmed There Was No Deal**

17. After the Listening Party, no agreement was reached.

18. Mr. Johnson wrote to Mr. Maiden on September 22, 2021, asking him to "connect me with Kanye's atty so we can get an agreement in place." No agreement in principle existed at that time and no producer agreement had been sent. Meyer Decl. Exh. 14 (Trial Ex. 111); 5/5/2026 (Day 2) Trial Tr. at 260:20–261:18.

19. On January 19, 2022, the Artists' legal counsel Debra Wise advised Defendant's representative that the Artists were the original authors of the preexisting work, that derivative use required their approval because "they have exclusive rights", that their work was used in Hurricane and Moon "without the express agreement of all of the original copyright owner(s)" and rather "unlawfully, unreasonably, and frankly, disrespectfully (24 writers?)", which she continued is "unauthorized adaptation of my Clients' work constitut[ing] copyright infringement, and that "to avoid the infringement outcome my Clients would agree to Kanye receiving 50% . . . and we would retain 50% . . ." 5/7/2026 (Day 4) Trial Tr. at 157:16–19; Martorell Decl. Exh. 21 (Trial Ex. 116).

20. On February 7, 2022, Mr. Johnson responded to the Defendants' side: "I told you from day one we would never agree to your proposed 10 or so percent regarding writer share," while noting only that producer fees and points had been discussed. Martorell Decl. Exh. 21 (Trial Ex. 116). In Mr. Johnson's mind, this did not create a deal, because the sound recording terms could not be separated from unresolved writer splits and had to be folded into a written producer agreement. 5/6/2026 (Day 3) Trial Tr. at 14:12–15:9; 24:18–24.

21. Ms. Wise confirmed the same point. She testified that the February 7, 2022, exchange did not contain "an agreement in here that could stand on its own" because the underlying composition first had to be licensed. 5/7/2026 (Day 4) Trial Tr. At 149:12–22. She

further testified that the Artists never received a long-form producer agreement, never received short form producer agreement, and never received a request for wire instructions for any purported advance for that matter. *Id*. at 149:23–150:6. When asked whether the statements in her email reflected a completed deal, Ms. Wise responded: "No, there's not a deal there because you have to read the next paragraph," where she stated rather explicitly that "[t]he publishing splits for both Hurricane and Moon were not agreed upon by anyone at any time." 5/7/2026 (Day 4) Trial Tr. at 167:11–16; Martorell Decl. Exh. 21 (Trial Ex. 116).

**The Artists Continued Their Attempts to Resolve the Matter After the Listening Party**

22.    Mr. Johnson and Ms. Wise continued trying to obtain a written agreement and continued reaching out after the July 22, 2021, Listening Party. 5/6/2026 (Day 3) Trial Tr. at 69:1–19. Mr. Johnson later contacted Universal and Def Jam (affiliated with Ye through distribution and marketing) because Defendants' side was not responding, writing in December 2023 that the Artists "would prefer to settle the matter with you as opposed to filing an action." 5/6/2026 (Day 3) Trial Tr. at 16:17–18:25; Meyer Decl. Exh. 15 (Trial Ex. 140).

23.    After February 2022, neither Mr. Johnson nor his team was able to reach anyone on Defendants' side who could engage substantively. 5/6/2026 (Day 3) Trial Tr. at 15:24–16:8. He turned to Universal and Def Jam only because Defendants' side had stopped responding and he was trying to identify someone who could actually address clearance. *Id*. at 17:1–9. Ms. Wise "absolutely" had difficulty reaching someone who could speak for Ye. 5/7/2026 (Day 4) Trial Tr. at 153:8–12.

**No Payment, No Clearance, and No Authorization**

24.    The Artists were never paid for the July 22, 2021, Listening Party-use of the MSD PT2 sound recording. Mr. Abdul-Rahman received no royalties for the sound recording of Hurricane. 5/5/2026 (Day 2) Trial Tr. at 201:14–16.

FINDINGS OF FACT AND CONCLUSIONS OF LAW (DEFENDANTS' EQUITABLE DEFENSES) - 6

25.     No one was paid for the use of the master at the Listening Party and Mr. Johnson would have known if Mr. Abdul-Rahman had been paid. 5/6/2026 (Day 3) Trial Tr. at 24:12–17.

26.     Michael Allen Eames, publishing administrator for Mr. Seeff and Mr. Barsh, likewise testified that the Artists did not receive money in connection with the July 22, 2021, Listening Party and that, if the composition had been properly cleared, he would have been involved in issuing the license and receiving funds. 5/7/2026 (Day 4) Trial Tr. at 172:20–173:10.

27.     No one from Ye's team ever paid royalties to the Artists.  5/7/2026 (Day 4) Trial Tr. at 154:5–12 (Wise).

28.     No one on the Artists' side ever agreed to a license authorizing Ye's use of the sound recording (SR). Mr. Johnson answered directly: "No, there was no license either on the SR, which we're here for today, or the underlying copyright." 5/6/2026 (Day 3) Trial Tr. at 24:17–24.

29.     Ye never signed a license agreement permitting use of MSD PT2. 5/6/2026 (Day 3) Trial Tr. at 90:23–25. And Ye did not know the Artists, had never worked with them, had never communicated with them, had never asked them to create a work for him, and had never even heard of them. 5/6/2026 (Day 3) Trial Tr. at 89:3–90:6.

**Ye Concedes MSD PT2 Was Not Cleared**

30.     After the Listening Party, Ye removed the MSD PT2 sample from *Hurricane* because the sample was not cleared. 5/6/2026 (Day 3) Trial Tr. at 116:19–117:4. Before performing over MSD PT2, Ye had not asked anyone whether the music was cleared and that no one had told him it was cleared. *Id.* at 94:7–13.

31.     There was no signed agreement, no producer agreement, no request for wire instructions, no payment, repeated objections to the proposed terms, and repeated testimony that no sound recording deal could be finalized without clearing the underlying writer splits. 5/6/2026 Trial Tr. (Day 3) at 14:12-15:9 (Johnson); 38:13-21 (Johnson); 5/7/2026 (Day 4) Trial Tr. at 149:12–150:6 (Wise).

## III.   CONCLUSIONS OF LAW

### A.   Estoppel

32.    To prove equitable estoppel, Defendants must establish all four of the following elements: (1) the plaintiff knew of the defendant's infringing conduct; (2) the plaintiff intended its conduct to be acted upon, or acted in such a way that the defendant had a right to believe it so intended; (3) the defendant was ignorant of the true facts; and (4) the defendant relied on the plaintiff's conduct to his detriment. *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960); *see also United States v. King Features Ent., Inc.*, 843 F.2d 394, 399–400 (9th Cir. 1988).

33.    Plaintiff knew of Defendants' infringing conduct because *Hurricane* was highly anticipated for years and it was widely known as the lead single from the *Donda* album, making it probable for the Artists to believe it might be performed at the Listening Party. 5/6/2026 (Day 3) Trial Tr. at 185:11–186:4, 197:19–22 (Greene).

34.    The Artists did not intend their conduct to be acted upon, or to be acted in such a way that the Defendants had a right to believe they so intended.

35.    Mr. Johnson rejected Mr. Maiden's offer of 8–10% of the songwriting splits before the Listening Party. 5/5/2026 (Day 2) Trial Tr. at 254:18–256:15 (Johnson); Trial Ex. 88.

36.    Ms. Wise explicitly called Defendants' use of MSD PT2 "unauthorized" and that Defendants' use of MSD PT2 constituted "copyright infringement."  Ms. Wise wrote: "Without the express agreement of all of the original copyright owner(s), copyright protection will not extend to any part of the work(s) (80 Degrees, Hurricane and/or Moon) in which my Clients' composition has been used unlawfully, unreasonably and, frankly, disrespectfully (24 writers?). Thus, as it stands, this unauthorized adaptation of my Clients' work constitutes copyright infringement."  Trial Ex. 116.

37.    Mr. Johnson and Ms. Wise also tried to reach Defendants' representatives repeatedly but received no response. Meyer Decl. Exh. 15 (Trial Ex. 140) (ARA 000075-77);

FINDINGS OF FACT AND CONCLUSIONS OF LAW (DEFENDANTS' EQUITABLE DEFENSES) - 8

5/6/2026 (Day 3) Trial Tr. at 15:21–19:25 (Johnson). They conveyed rejection of the 8-10% offer and characterized Defendants' use as infringement.

38.    Ye never met, communicated with, or heard of any of the Artists. 5/6/2026 (Day 3) Trial Tr. at 89:9–90:25 (Ye).

39.    Ye knew the true facts.  He removed the MSD PT2 sample from the commercial release of *Hurricane* "because the sample was not cleared." 5/6/2026 (Day 3) Trial Tr. at 116:19–117:4 (Ye).

40.    The Defendants did not rely on the Artists' conduct to their detriment.  Ye knew the MSD PT2 sample was not cleared when he staged the Listening Party.

41.    Defendants' estoppel defense fails.

**B.    Waiver**

42.    Waiver requires "the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *King Features*, 843 F.2d at 399. Copyright waiver "occurs only if there is an intent by the copyright proprietor to surrender rights in his work." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001). Abandonment requires "evidence of intentional surrender—not merely silence, delay, or negotiating posture." *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998).

43.    The Artists asserted their rights; they did not surrender them.

44.    Mr. Johnson affirmatively reached out to Defendants in an effort to negotiate a deal. 5/5/2026 (Day 2) Trial Tr. at 259:7–15, 260:21–261:18 (Johnson). There is no evidence of the Artists ever ignoring a request from Defendants.

45.    Mr. Johnson expressly rejected Defendants' proposed deal terms before the July 22, 2021, Listening Party, telling Ye's representative Mr. Maiden that the offered 8–10 percent was unacceptable and that any agreement would need to be in writing. 5/5/2026 (Day 2) Trial Tr. at 254:12–256:15 (Johnson).

46.     Mr. Johnson and Ms. Wise repeatedly testified it was not possible to license the sound recording without also having a deal on splits for the songwriters. 5/6/2026 (Day 3) Trial Tr. at 14:23–15:1 (Johnson); 5/6/2026 (Day 3) Trial Tr. at 85:17–86:3 (Johnson).

47.     There was no intent by the Artists to surrender rights in their work.

48.     Defendants' waiver defense fails.

**C.     Unclean Hands**

49.     An unclean hands defense requires a defendant to prove (1) that the plaintiff engaged in wrongful conduct that "in some measure affect[s] the equitable relations between the parties in respect to [the claims] brought before the court for adjudication," and (2) that the plaintiff's wrongful conduct personally injured the defendant. *Dream Games of Arizona, Inc. v. P.C. Onsite*, 561 F.3d 983, 990 (9th Cir. 2009); *Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ.*, 621 F.3d 981, 986 (9th Cir. 2010). The defense is "recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Dream Games*, 561 F.3d at 990-91.

50.     Neither the negotiating posture of Mr. Johnson nor any delay in settling splits constitutes wrongful conduct.  A sound recording deal cannot close without first clearing the composition. 5/5/2026 (Day 2) Trial Tr. at 254:18–256:15 (Johnson); 5/6/2026 (Day 3) Trial Tr. at 145:22–146:1 (Bennett).  A production deal cannot be concluded without agreement on splits, because the two are intertwined as a matter of basic industry practice. 5/5/2026 (Day 2) Trial Tr. at 256:3–15 (Johnson); 5/6/2026 (Day 3) Trial Tr. at 14:23–15:1 (Johnson), 85:17–86:3 (Johnson); 5/7/2026 (Day 4) Trial Tr. at 149:12–22, 166:2–12 (Wise).

51.     Before Ye monetized the song at the Listening Party, the Artists affirmatively rejected Ye's proposed terms. 5/5/2026 (Day 2) Trial Tr. at 254:12–256:15 (Johnson); Meyer Decl. Exh. 20 (Trial Ex. 5023).  A copyright owner who deliberately times enforcement has not engaged in inequitable conduct.  "There is nothing untoward about waiting to see whether an

infringer's exploitation undercuts the value of the copyrighted work." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 682 (2014).

52.    Defendants' unclean hands defense fails.

**IV.    CONCLUSION**

53.    Defendants' equitable defenses of estoppel, waiver, and unclean hands fail.

54.    Plaintiff is ordered to prepare, serve, and file a proposed judgment within 3 court days.  Plaintiff shall also lodge a Word version with chambers concurrently with filing. Objections to the proposed judgment are due 5 court days after the proposed judgment is filed. The Court will enter the judgment thereafter.

**IT IS SO ORDERED.**

DATED:  August 7, 2026

_____
Honorable Michelle Williams Court
UNITED STATES DISTRICT JUDGE

FINDINGS OF FACT AND CONCLUSIONS OF LAW (DEFENDANTS' EQUITABLE DEFENSES) - 11